IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOCELYN SAMUELS,<br>    131 M Street, NE<br>    Washington, D.C. 20507,<br><br>    *Plaintiff*,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States,<br>    1600 Pennsylvania Avenue, NW<br>    Washington, D.C. 20500,<br><br>U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br>    131 M Street, NE<br>    Washington, D.C. 20507,<br><br>    and<br><br>ANDREA R. LUCAS, in her official capacity as Acting Chair of the Equal Employment Opportunity Commission,<br>    131 M Street, NE<br>    Washington, D.C. 20507,<br><br>    *Defendants*. | Case No. _____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

**INTRODUCTION**

1.      Defendant Donald J. Trump illegally removed Plaintiff Jocelyn Samuels from her position as a Commissioner of the U.S. Equal Employment Opportunity Commission ("EEOC" or the "Commission") and in doing so undermined the EEOC's historic independence and interfered with its statutorily mandated duties to protect workers from discrimination, at a time when workers

around the country are particularly vulnerable to discrimination. Defendant Trump's efforts to hamstring the EEOC are consistent with and further his Administration's efforts to turn back the clock on decades of established precedent protecting workers and job applicants from discrimination, but they are contrary to law.

2. Congress created the EEOC as part of the Civil Rights Act of 1964 to serve as a bipartisan, multi-member, independent commission of experts, not as a vehicle for any president's political agenda. Congress ensured the Commission's independence by mandating that no more than three of the five Commissioners may be members of the same political party and by staggering the members' five-year terms. By requiring that at least two of the five Commissioners are not members of the president's political party, Congress intended for the Commission's work to be informed by a diversity of viewpoints. At the same time, the law ensures that the president can shape the composition of the Commission by granting the president authority to appoint a new member each year, with the advice and consent of the Senate. The statute also sets a three-member quorum for the Commission and helps to preserve that quorum by providing that Commissioners shall serve past the expiration of their terms until their successors are appointed and qualified, with limits on the maximum length of this holdover period.

3. Commissioner Samuels began her tenure as an EEOC Commissioner when Defendant Trump nominated her, and the Senate confirmed her by a bipartisan vote, in 2020. President Biden renominated Commissioner Samuels in 2021, and the Senate confirmed her, again by a bipartisan vote, for a second term expiring July 1, 2026.

4. Congress did not grant the president authority to remove EEOC Commissioners at will. Rather, the EEOC's structure, mission, and functions, along with the terms set for Commissioners, demonstrate Congress's intent to provide the Commission continuity, stability,

and insulation from political pressure exerted by the president. Because the Commissioners perform predominantly quasi-judicial and quasi-legislative functions, these restrictions on the president's removal authority are constitutional.

5. When Defendant Trump directed the EEOC to remove Commissioner Samuels from her position on January 27, 2025, he lacked cause to do so, and therefore, Commissioner Samuels's removal was illegal. The removal of Commissioner Samuels, along with the removal of fellow Democratic Commissioner Charlotte Burrows on the same day, constitutes the first time in the EEOC's almost 61-year history that a president has sought to remove a member of the Commission prior to the expiration of their term. Defendants EEOC and EEOC Acting Chair Andrea R. Lucas have prevented Commissioner Samuels from performing her duties as a Commissioner in the wake of her removal.

6. As a result of these removals, the Commission now has only two active Commissioners. Without a quorum, the EEOC is unable to undertake any activity that requires a Commission vote—including policy guidance and approval of certain litigation recommendations and federal sector appeals—and cannot fully execute its statutory mandate to vindicate the rights of individuals subject to workplace discrimination and help employers meet legal requirements and prevent discrimination.

7. Defendant Trump's illegal removal of Commissioner Samuels, as carried out by Defendants EEOC and Lucas, has significant and damaging consequences for the work of the Commission, the enforcement of the nation's anti-discrimination laws, and the rights and interests of both workers and employers. While the President may accept these results, his actions to incapacitate the EEOC are contrary to the rule of law and harmful to the American workforce.

8. Commissioner Samuels seeks declaratory relief against all Defendants and injunctive relief against Defendants EEOC and Lucas to enable her to perform her duties as a Commissioner as a remedy for Defendants' harmful and illegal actions and to ensure that the EEOC can resume its congressionally-mandated work as Congress intended.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1361.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e).

## PARTIES

11. Plaintiff Jocelyn Samuels is a Commissioner of the EEOC, confirmed by a bipartisan vote of the United States Senate to a five-year term expiring July 1, 2026.

12. Defendant Donald J. Trump is sued in his official capacity as President of the United States.

13. Defendant U.S. Equal Employment Opportunity Commission is an independent federal agency headquartered in Washington, D.C., at 131 M Street, NE, Washington, D.C. 20507.

14. Defendant Andrea R. Lucas is the Acting Chair of the EEOC. She is sued in her official capacity.

## STATUTORY BACKGROUND

15. The Civil Rights Act of 1964 is the most sweeping civil rights legislation enacted in our Nation's history. A core component of the Civil Rights Act is Title VII, the seminal federal law that bans discrimination in employment on the basis of race, color, religion, sex, or national origin. 42 U.S.C. §§ 2000e *et seq*.

16. In Section 705 of Title VII, 42 U.S.C. § 2000e-4, Congress created the EEOC.

17. Congress set forth the composition of the Commission and the terms of the Commissioners as a bipartisan, five-member entity: "There is hereby created a Commission to be known as the Equal Employment Opportunity Commission, which shall be composed of five members, not more than three of whom shall be members of the same political party. Members of the Commission shall be appointed by the President by and with the advice and consent of the Senate for a term of five years." 42 U.S.C. § 2000e-4(a).

18. Congress staggered the terms so only one member's term would end each year, Public Law 88-352, § 705(a), thus preserving continuing expertise for the Commission as a whole and enabling the president to nominate successors for Commissioners whose terms expire during his tenure.

19. In its 1972 Amendment to Section 705(a), Congress added a Holdover Clause to the law, which specifies in part that "all members of the Commission shall continue to serve until their successors are appointed and qualified, except that no such member of the Commission shall continue to serve (1) for more than sixty days when the Congress is in session unless a nomination to fill such vacancy shall have been submitted to the Senate, or (2) after the adjournment sine die of the session of the Senate in which such nomination was submitted." Public Law 92-261, § 8(d). The statute thus provides that all members of the Commission continue to serve until their successors are appointed and qualified, with limits on the maximum length of the holdover period.

20. Since the EEOC's inception, Congress has required a three-member quorum. 42 U.S.C. § 2000e-4(c); Public Law 88-352, § 705(a).

21. Congress has set forth numerous functions of the EEOC that are quasi-legislative or quasi-judicial.

22. The Commission's quasi-legislative functions include reporting to Congress "on the cause of and means of eliminating discrimination and such recommendations for further legislation as may appear desirable." 42 U.S.C. § 2000e-4(e). Additionally, the Commission holds hearings, conducts studies and drafts reports related to employment discrimination, and disseminates guidance about Congressional enactments.

23. The Commission's quasi-judicial functions at inception included the duty to investigate employment discrimination charges. If it finds cause to believe discrimination has occurred, the EEOC is required to serve as a conciliator between the employer and employee. 42 U.S.C. §§ 2000e-4(g); 2000e-5(b), 2000e-8(a).

24. The Commission's quasi-judicial functions expanded significantly in 1978, when, as part of Reorganization Plan No. 1, the EEOC was given adjudicatory authority over discrimination complaints filed by federal employees. 42 U.S.C. § 2000e-16(c); 92 Stat. 3781. In 1990, Congress also gave the Commission responsibilities to adjudicate claims involving employment discrimination under Sections 501 and 505 of the Rehabilitation Act. 29 U.S.C. §§ 791, 794(a). Employees have the right to appeal decisions of the Commission to federal court. 42 U.S.C. § 2000e-16(c).

25. It is inherent in the structure and duties of a bipartisan independent agency such as the EEOC that its Commissioners are not subject to at-will removal by the president. However, this constraint does not limit the president's ability to control executive functions of the agency. The president is authorized to select the Chair of the Commission, who oversees operational aspects of the EEOC's work and selects its senior career leaders. The president also controls the EEOC's budget and thereby influences EEOC policies. The president further selects the General Counsel of the agency, whom Congress charged with the conduct of litigation. And because the

terms of the Commissioners are staggered, the president has the opportunity to ensure that a majority of Commissioners are members of his party during his term in office.

## FACTUAL ALLEGATIONS

26. Commissioner Samuels was first nominated as an EEOC Commissioner by Defendant Trump on March 16, 2020, and was confirmed by a bipartisan vote of the United States Senate on September 23, 2020, for a term expiring July 1, 2021. President Biden named Commissioner Samuels Vice Chair of the Commission on January 20, 2021, then nominated her for a second term on April 12, 2021. On July 14, 2021, the Senate confirmed Commissioner Samuels by a bipartisan vote for a term expiring July 1, 2026. Commissioner Samuels served as Vice Chair of the Commission from January 20, 2021, to January 20, 2025, then as a Commissioner until Defendant Trump removed her on January 27, 2025.

27. Prior to her appointment as EEOC Commissioner, Commissioner Samuels had a long and distinguished career as a civil rights and equal employment opportunity expert. She has worked in both Republican and Democratic administrations within the federal government, serving, among other roles, as: Acting Assistant Attorney General of the Civil Rights Division of the U.S. Department of Justice; Principal Deputy to the Assistant Attorney General for Civil Rights; Director of the Office for Civil Rights in the United States Department of Health and Human Services; and Labor Counsel to Senator Edward M. Kennedy. Outside of government service, she was Vice President for Education and Employment at the National Women's Law Center and the Executive Director and Roberta A. Conroy Scholar of Law at the Williams Institute at the UCLA School of Law. In each of these roles, Commissioner Samuels has worked to combat illegal discrimination and promote compliance with civil rights laws.

28.     On January 20, 2025, Defendant Trump began his term as the 47th President of the United States.  That same day, he issued executive orders that purported to adopt positions of the federal government on issues that affect discrimination in the workplace, including Executive Order 14151, entitled "Ending Radical and Wasteful Government DEI Programs and Preferencing," which targets diversity, equity, inclusion, and accessibility efforts, and Executive Order 14168, entitled "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government," which adopted a binary definition of sex that negatively affects LGBTQI+ people.

29.     On January 21, 2025, Commissioner Samuels, along with the two other Democratic EEOC Commissioners, Charlotte Burrows and Kalpana Kotagal, issued a statement on these executive orders.  Among other things, the Commissioners reiterated the role of the EEOC in advancing equal opportunity in the workplace.  The statement noted that the "slate of civil rights related Executive Orders and recissions undermines those goals and ignores the day-to-day reality of discrimination for many working people."

30.     With respect to Executive Order 14151, the Commissioners stated: "Complying with workplace civil rights laws requires employers to make proactive efforts to address barriers to equal opportunity.  Common sense practices, such as monitoring hiring and promotions decisions, skills-based hiring, standardized interview practices, and robust recruitment, remain lawful and important ways to promote the goals of our nation's laws and founding principles.  These and other diversity, equity, inclusion and accessibility practices seek to include all workers according to their talents and abilities.  Significantly, these practices exclude none — they simply give all workers a fair shot to succeed.  Barring adoption of these practices can only result in legal risk to employers and lost opportunities to vulnerable communities."

31. Regarding Executive Order 14168, the Commissioners stated: "[L]ike all workers, LGBTQI+ workers — including transgender workers — are protected by federal law and entitled to the full measure of America's promise of equal opportunity in the workplace. Congress authorized the EEOC to hold employers accountable if they discriminate or permit a hostile work environment on protected grounds, and the agency will continue to fulfill this important Congressional mandate. To exclude any group of workers from these protections contravenes both the law and this mandate."

32. In making these statements, the Commissioners were objecting to the Administration's incorrect interpretation of Title VII and defending the rights of LGBTQI+ federal workers, including those at the EEOC, to protection from a hostile work environment.

33. On January 21, 2025, Defendant Trump issued Executive Order 14173, entitled "Ending Illegal Discrimination and Restoring Merit-Based Opportunity," which in part rescinded Executive Order 11246. Executive Order 11246, which was signed by President Johnson on September 21, 1965, prohibited employment discrimination by federal contractors based on race, color, religion, sex, sexual orientation, gender identity, or national origin. Executive Order 11246 led to the creation of the Office of Federal Contract Compliance Programs ("OFCCP") within the Department of Labor to enforce the provisions of the Executive Order. Because the EEOC and OFCCP both have had the mission of preventing discrimination in the workplace—the EEOC by preventing discrimination by all employers over a certain size and the OFCCP by preventing discrimination by federal government contractors—the agencies had worked alongside each other for decades, using their complementary tools to advance equal employment opportunity across the country.

34. Given the EEOC's decades-long experience with Executive Order 11246 and the OFCCP, Commissioner Burrows, Commissioner Samuels, and Commissioner Kotagal issued a statement on January 22, 2025, criticizing the recission of Executive Order 11246: "Protecting America's workers from discrimination, harassment and retaliation is not a partisan issue—it's an American value . . . . The equal employment principles embodied in [Executive Order] 11246 have stood the test of time and remained in place through both Democratic and Republican administrations.  But by rescinding [Executive Order] 11246, this Administration has removed a source of protection against discrimination for the millions of Americans working for companies that receive federal dollars.  We should be standing up for Americans, not weakening their civil rights."

35. On the evening of January 27, 2025, at 10:39 p.m., Commissioner Samuels received an email from Trent Morse, the Deputy Director of the White House Office of Presidential Personnel.  Addressing Commissioner Samuels by her first name, Mr. Morse stated that he was writing on behalf of Defendant Trump and directed her to the "letter" below his introductory line, which was additional text pasted into the email.

36. The email notified Commissioner Samuels "that effective as of this date," she was removed from the office of Commissioner of the EEOC.  It also notified her of the purported authority for her removal and the reasons for it.

37. The email asserts that Defendant Trump was authorized to remove Commissioner Samuels pursuant to his power under Article II of the Constitution and the lack of explicit removal language in the text of Title VII.  The "conduct" cited as the basis for her removal includes her alleged efforts "to impose an expansive and improper DEI agenda on America's workplaces," her involvement in "enacting or enforcing the Biden Administration's radical Title VII guidance," and

her commitment to "furthering a series of race-based initiatives that are themselves mired in racism." The email also highlighted the statement of Commissioner Samuels and the two other Commissioners criticizing Defendant Trump's Executive Orders.

38. As is stated explicitly in the email, the "conduct" described reflects differences in policy views between President Trump and Commissioner Samuels. The email states that "heads of agencies within the Executive Branch must share the objectives of my administration and its commitment to serving the will of the American people," and that in Defendant Trump's "judgment, the Equal Employment Opportunity Commission is not presently fulfilling its responsibility to the American people and has not been operating in a manner consistent with the objectives of my administration."

39. Defendants EEOC and Lucas cut off Commissioner Samuels's access to EEOC systems, email, and offices on or before January 29, 2025, and Commissioner Samuels has not been able to perform her duties as Commissioner since that date. Around the same time, the EEOC human resources office took other steps to effectuate Commissioner Samuels's removal, including informing Commissioner Samuels's staff that their employment was being terminated as a consequence of Commissioner Samuels's removal; requiring Commissioner Samuels to return her EEOC equipment; and processing the federal personnel document, the SF-50 form, to officially document her departure.

40. In that same January 27, 2025, email, Defendant Trump also notified Commissioner Burrows that he was removing her from her position as EEOC Commissioner for similar reasons.

41. With the removals of Commissioners Burrows and Samuels, the only active members of the Commission are Defendant Lucas and Commissioner Kotagal, and so the Commission lacks a quorum. The absence of a quorum prevents the Commission from acting on

any matter that requires a full Commission vote, such as certain federal sector appellate decisions and the approval of certain lawsuits and amicus briefs that the Office of General Counsel seeks to file.

## CLAIM FOR RELIEF

**Ultra Vires Action in violation of Title VII of the Civil Rights of Act of 1964, 42 U.S.C. § 2000e-4**

42. Plaintiff repeats and incorporates by reference each of the foregoing allegations as if fully set forth herein.

43. Commissioner Samuels is entitled to retain her role as EEOC Commissioner because she was appointed and confirmed to a five-year term that was not scheduled to end until July 1, 2026.

44. Defendant Trump had neither authority nor cause to remove Commissioner Samuels prior to the expiration of her term.

45. Congress insulated the EEOC from at-will removal by the president. This is reflected in the ways in which Congress structured the EEOC and the quasi-legislative and quasi-judicial functions that Congress has assigned to the EEOC both in its original formation and in subsequent modifications.

46. The structural components of the EEOC that qualify it as an independent agency and thus provide removal protections for its Commissioners include:

    a. The Commission is a five-member bipartisan commission, no more than three of whose members can be members of the same political party, thus ensuring that Senate-confirmed Commissioners have different political affiliations, no matter which party occupies the White House;

    b. Commissioners serve five-year, staggered terms;

   c. The governing statute does not grant the president the right to remove a Commissioner but instead contains a Holdover Clause providing that Commissioners shall continue to serve until their successors are appointed and qualified, with limits on the maximum length of the holdover period.

 47. The functional components of the EEOC that identify it as an independent agency and thus provide removal protections for its Commissioners include:

   a. The Commission serves quasi-legislative functions such as conducting hearings, issuing reports to Congress and the public, issuing guidance to help EEOC investigators and the public understand Congressional enactments, and performing and disseminating technical employment-related studies;

   b. The Commission has quasi-judicial functions such as adjudicating federal government employees' discrimination claims and claims involving employment under the Rehabilitation Act.

 48. Defendant Trump lacked cause to remove Commissioner Samuels. The issues he identified in his January 27, 2025, email constitute policy disagreements between him and Commissioner Samuels. By mandating bi-partisan membership on the Commission, Congress deliberately structured the agency to accommodate likely policy differences between the president and some Commissioners.

 49. There is a substantial and continuing controversy between Commissioner Samuels and the Defendants, and a declaration of rights under the Declaratory Judgment Act is both necessary and appropriate to establish that Commissioner Samuels is a Commissioner of the EEOC.

50.     Injunctive relief against Defendants EEOC and Lucas is necessary and appropriate to permit Commissioner Samuels to perform her duties as Commissioner.  Moreover, recognizing that Commissioner Samuels is a Commissioner would restore a quorum to the Commission, enabling it to perform the full scope of its authorities as intended by Congress.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

a. Declare that the removal of Commissioner Samuels was unlawful, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-4; that Commissioner Samuels remains a Commissioner of the EEOC, having been appointed by the President, and confirmed by the Senate to a five-year term ending on July 1, 2026; and that she cannot be removed by the President prior to the expiration of her term without cause;

b. Enjoin Defendants EEOC and Lucas from blocking Commissioner Samuels's access to her office  or in any way treating Commissioner Samuels as having been removed, from impeding in any way her ability to fulfill her duties as a Commissioner of the EEOC, and from denying or obstructing her authority or access to any benefits, or resources of the office;

c. Direct Defendants EEOC and Lucas and their subordinates, agents, and employees to provide Commissioner Samuels with access to the necessary government facilities and equipment so that she may carry out her duties during her term as a Commissioner of the EEOC;

d. Issue a writ of mandamus ordering Defendants EEOC and Lucas to refrain from blocking Commissioner Samuels's access from her office or in any way treating Commissioner Samuels as having been removed, from impeding in any way her ability to fulfill her duties as a Commissioner of the EEOC, from denying or obstructing her

authority or access to any benefits or resources of the office, and requiring them to provide Commissioner Samuels with access to the necessary government facilities and equipment so that she may carry out her duties during her term as a Commissioner of the EEOC; and

e. Grant any other relief this Court deems appropriate.

Dated: April 9, 2025               Respectfully submitted,

/s/ Victoria S. Nugent

Victoria S. Nugent (D.C. Bar No. 470800)
**DEMOCRACY FORWARD FOUNDATION**
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
vnugent@democracyforward.org

Lisa J. Banks (D.C. Bar No. 470948)
Carolyn L. Wheeler (D.C. Bar No. 1028645)
Bonnie L. Henry (D.C. Bar No. 1780382)
Marilyn Gabriela Robb (D.C. Bar No. 1686757)
**KATZ BANKS KUMIN LLP**
11 Dupont Circle, NW
Washington, D.C. 20036
(202) 299-1140
Banks@katzbanks.com
Wheeler@katzbanks.com
Henry@katzbanks.com
Robb@katzbanks.com

Jon M. Greenbaum (D.C. Bar No. 489887)
**JUSTICE LEGAL STRATEGIES PLLC**
P.O. Box 27015
Washington, D.C. 20038
(202) 601-8678
jgreenbaum@justicels.com

*Attorneys for Plaintiff Jocelyn Samuels*