## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Jocelyn Samuels**, | |
| *Plaintiff,* | |
| v. | **Civil Action No. 1:25-cv-01069-TSC** |
| **Donald J. Trump**, et al., | |
| *Defendants,* | |
| and | **Oral Argument Requested** |
| **Choices Pregnancy Centers of Greater Phoenix, Inc.**<br>10555 North 58th Drive<br>Glendale, AZ 85302 | |
| and | |
| **Christian Employers Alliance**, on behalf its members<br>6101 Associated Boulevard<br>Everett, WA 98203-7167 | |
| *Proposed Intervenor-Defendants.* | |

### Proposed Intervenor-Defendants Choices Pregnancy Centers of Greater Phoenix, Inc. and Christian Employers Alliance's Motion to Intervene

Under Federal Rule of Civil Procedure 24(a) and (b), Choices Pregnancy Centers of Greater Pheonix (Choices) and Christian Employers Alliance (CEA) move to intervene as defendants.

This case is an attempt to set aside the President's removal from office of former EEOC Commissioner Jocelyn Samuels. As Commissioner, Samuels was key in advancing several mandates that burden religious organizations and pro-life employers, including Choices Pregnancy Centers of Greater Pheonix (Choices) and members of Christian Employers Alliance (CEA). Movants Choices and CEA seek

leave to intervene under Federal Rule of Civil Procedure 24 to defend the President's removal of Samuels. This motion is timely because this removal challenge has just begun. Choices and CEA have a strong interest in ensuring that the President can keep Samuels out of office so that they can protect themselves from the mandates that she supported and she will reinforce if she returns to office. Intervention is appropriate because federal officials controlling EEOC are in some ways adverse to Choices and CEA, and so Movants meet the inadequacy requirement of Rule 24.

As further set forth in the accompanying memorandum, and based on the attached declarations, Choices and CEA thus satisfy the requirements under Rule 24 to intervene as of right as defendants, and in the alternative they seek intervention on a permissive basis.

Counsel for Choices and CEA contacted counsel for Plaintiff and counsel for Defendants on April 22, 2025, to ascertain the parties' positions on this motion. LCvR 7(m). On April 23, 2024, counsel for Plaintiff stated that Plaintiff opposes this motion, and counsel for Defendants stated that Defendants take no position on the motion to intervene.

In conformity with Local Civil Rule 7(j), an original of the pleading setting forth the claim for which intervention is sought accompanies this motion—a proposed answer (Exhibit E). In conformity with Local Rule 7(b), this motion is also accompanied by a proposed order. Choices and CEA request oral argument on this motion to intervene unless this Court is able to grant the motion without argument. LCvR 7(f).

## EXHIBIT LIST

Exhibit A.    Declaration of Margaret Iuculano, President, Christian Employers Alliance

Exhibit B.    Declaration of Marc Burmich, President & CEO, Choices Pregnancy Centers of Greater Phoenix, Inc.

Exhibit C.    Declaration of Jeff Booher, CEO of Predictive Fitness, Inc.

Exhibit D.    Declaration of Kimberley Fletcher, President of Moms for America

Exhibit E.    Proposed Intervenor-Defendants Choices Pregnancy Centers of Greater Phoenix, Inc. and Christian Employers Alliance's Proposed Answer to Plaintiff Jocelyn Samuels' Complaint

## CONCLUSION

This Court should grant this motion and allow CEA and Choices to intervene as defendants. The Court should not assess the legality and constitutionality of these removals without hearing from the very employers that the removals are designed to protect.

Respectfully submitted this 24th day of April, 2025.

*/s/ Matthew S. Bowman*

**Matthew S. Bowman**
D.C. Bar No. 993261
**Natalie D. Thompson***
D.C. Bar No. 90026665
**Alliance Defending Freedom**
440 First Street NW, Suite 600
Washington, DC 20001
Telephone: (202) 393-8690
Facsimile: (202) 347-3622
mbowman@ADFlegal.org
nthompson@ADFlegal.org

**Julie Marie Blake**
D.C. Bar No. 998723
VA Bar No. 97891
**Alliance Defending Freedom**
44180 Riverside Parkway
Lansdowne, Virginia 20176
Telephone: (571) 707-4655
Facsimile: (571) 707-4790
jblake@ADFlegal.org

*Counsel for Proposed Intervenor-Defendants Choices
Pregnancy Centers of Greater Phoenix, Inc. and
Christian Employers Alliance*

*\*Application for admission to the Bar of this Court
pending*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 24, 2025, a copy of the foregoing was served via the Court's electronic case filing system to:

Jon M. Greenbaum
**Justice Legal Strategies PLLC**
P.O. Box 27015
Washington, DC 20038-7015
202-601-8678
Email: jgreenbaum@justicels.com

Lisa J. Banks
Marilyn Gabriela Robb
**Katz Banks Kumin LLP**
11 Dupont Circle NW, Suite 600
Washington, DC 20036
202-299-1140
Fax: 202-299-1148
Email: banks@katzbanks.com
Email: robb@katzbanks.com

Victoria S. Nugent
**Democracy Forward**
P.O. Box 34553
Washington, DC 20043
202-862-1393
Email: vnugent@democracyforward.org

*Attorneys for Plaintiff Jocelyn Samuels*

and served via email to *Jeremy.S.Newman@usdoj.gov* for Defendants pursuant to his consent in writing to accept service of this motion by email, which does not waive the right to insist on proper formal service of the complaint and summons.

*/s/ Matthew S. Bowman*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Jocelyn Samuels**, | |
| *Plaintiff*, | |
| v. | **Civil Action No. 1:25-cv-01069-TSC** |
| **Donald J. Trump**, et al., | |
| *Defendants*, | |
| and | |
| **Choices Pregnancy Centers of Greater Phoenix, Inc.**, 10555 North 58th Drive Glendale, AZ 85302 | |
| and | |
| **Christian Employers Alliance**, on behalf of its members, 6101 Associated Boulevard Everett, WA 98203-7167 | |
| *Proposed Intervenor-Defendants*. | |

**Proposed Intervenor-Defendants Choices Pregnancy Centers of Greater Phoenix, Inc. and Christian Employers Alliance's Memorandum of Points and Authorities in Support of Motion to Intervene**

# TABLE OF CONTENTS

Table of Authorities ........................................................................................ iv

Introduction .................................................................................................... 1

Background ..................................................................................................... 2

I.    EEOC enforces Title VII and the Pregnant Workers Fairness Act. ................ 2

      A.    Title VII prohibits sex discrimination. ...................................................... 2

      B.    The Pregnant Workers Fairness Act protects pregnancy....................... 3

      C.    The PWFA gives EEOC enforcement and rulemaking powers. ............. 3

II.   Samuels imposed gender-identity and abortion mandates on Choices and CEA.................................................................................................................. 4

III.  EEOC's mandates regulate Choices and CEA. ................................................ 7

      A.    EEOC's mandates apply to Choices......................................................... 7

      B.    EEOC's mandates apply to CEA's members. ......................................... 8

IV.   CEA challenged EEOC's mandates. ................................................................ 10

V.    Samuels refused the President's order to rescind EEOC's gender-identity mandate. ......................................................................................................... 11

VI.   President Trump removed Samuels. ............................................................... 13

VII.  Choices and CEA seek to intervene to defend the President's removal of Samuels. ......................................................................................................... 16

Argument ....................................................................................................... 17

I.    Choices and CEA have a right to intervene.................................................... 17

      A.    Choices and CEA's motion is timely. ...................................................... 18

      B.    Samuels' removal benefits Choices and CEA—and they would be harmed if she returns to office............................................................... 18

      C.    Federal officials may not adequately represent the interests of Choices and CEA. ..................................................................................... 20

II.    Though intervenors need not independently establish standing to intervene as defendants, Choices and CEA both satisfy Article III. ............. 23

    A.    Choices and CEA have Article III standing. ........................................ 25

    B.    CEA has associational standing to represent its members. ................. 27

III.    Choices and CEA meet the requirements for permissive intervention. ......... 29

Conclusion ................................................................................................................ 29

## TABLE OF AUTHORITIES

**<u>Cases</u>**

*100Reporters LLC v. United States Department of Justice,*
   307 F.R.D. 269 (D.C. Cir. 2014) ........................................................ 18

*American Legal Foundation v. Federal Communications Commission,*
   808 F.2d 84 (D.C. Cir. 1987) ............................................................ 28

*Berger v. North Carolina State Conference of the NAACP,*
   597 U.S. 179 (2022) ................................................................ 21, 22

*Bostock v. Clayton County,*
   590 U.S. 644 (2020) ....................................................................... 2

*California Steel Industries, Inc. v. United States,*
   48 F.4th 1336 (Fed. Cir. 2022) ......................................................... 23

*Catholic Benefits Association v. Burrows,*
   732 F. Supp. 3d 1014 (D.N.D. 2024) .................................................... 6

*Cayuga Nation v. Zinke*
   324 F.R.D. 277 (D.D.C. 2018) .......................................................... 18

*Chapman v. Tristar Products, Inc.,*
   940 F.3d 299 (6th Cir. 2019) ........................................................... 24

*Children's Health Defense v. Centers for Disease Control,*
   2024 WL 3521593 (D.D.C. July 24, 2024) ............................................ 25

*Christian Employers Alliance v. Azar,*
   2019 WL 2130142 (D.N.D. May 15, 2019)....................................... 28–29

\* *Christian Employers Alliance v. Equal Employment Opportunity Commission,*
   2022 WL 1573689 (D.N.D. May 16, 2022).................................... 10, 28

\* *Christian Employers Alliance v. United States Equal Employment Opportunity Commission,*
   719 F. Supp. 3d 912 (D.N.D. 2024)................................... 6, 7, 10, 28

\* *Crossroads Grassroots Policy Strategies v. Federal Election Commission,*
   788 F.3d 312 (D.C. Cir. 2015) ................................................... passim

*Dillard v. Chilton County Commisson,*
   495 F.3d 1324 (11th Cir. 2007)......................................................... 24

*Dimond v. District of Columbia,*
    792 F.2d 179 (D.C. Cir. 1986) .......................................................... 20

*Environmental Integrity Project v. Wheeler,*
    2021 WL 6844257 (D.D.C. Jan. 27, 2021) ......................................... 25

*Equal Employment Opportunity Commission v. National Children's Center, Inc.,*
    146 F.3d 1042 (D.C. Cir. 1998) ........................................................ 29

*Farmer v. United States Environmental Protection Agency,*
    2024 WL 5118193 (D.D.C. Dec. 16, 2024) .................................. 24, 25

*Forest County Potawatomi Community. v. United States,*
    317 F.R.D. 6 (D.D.C. 2016) ............................................................... 18

*Foster v. Gueory,*
    655 F.2d 1319 (D.C. Cir. 1981) ........................................................ 19

\* *Fund for Animals, Inc. v. Norton,*
    322 F.3d 728 (D.C. Cir. 2003) ................................................... passim

*Hodgson v. United Mine Workers of America,*
    473 F.2d 118 (D.C. Cir. 1972) .......................................................... 18

*Hunt v. Washington State Apple Advertising Commission,*
    432 U.S. 333 (1977) .......................................................................... 27

*Idaho Farm Bureau Federation v. Babbitt,*
    58 F.3d 1392 (9th Cir. 1995) ............................................................ 19

*Kane County v. United States,*
    94 F.4th 1017 (10th Cir. 2024) ................................................... 23–24

*King v. Governor of New Jersey,*
    767 F.3d 216 (3d Cir. 2014) ............................................................. 24

*Lewis v. Carter,*
    436 F. Supp. 958 (D.D.C. 1977) ...................................................... 11

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania,*
    591 U.S. 657 (2020) .......................................................................... 24

*Louisiana v. Equal Employment Opportunity Commission,*
    705 F. Supp. 3d 643 (W.D. La. 2024) ................................................ 6

*Melone v. Coit,*
    100 F.4th 21 (1st Cir. 2024) ............................................................. 23

*Military Toxics Project v. Environmental Protection Agency,*
    146 F.3d 948 (D.C. Cir. 1998) ........................................................................... 27

*Mova Pharmaceutical Corporation v. Shalala,*
    140 F.3d 1060 (D.C. Cir. 1998) ......................................................................... 20

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra,*
    585 U.S. 755 (2018) ........................................................................................... 24

\* *Natural Resource Defense Council v. Costle,*
    561 F.2d 904 (D.C. Cir. 1977) ................................................................... passim

*Natural Resource Defense Council v. Environmental Protection Agency,*
    99 F.R.D. 607 (D.D.C. 1983) ............................................................................ 19

*Nuesse v. Camp,*
    385 F.2d 694 (D.C. Cir. 1967) ..................................................................... 21, 23

*Religious Sisters of Mercy v. Becerra,*
    55 F.4th 583 (8th Cir. 2022) ............................................................................... 7

*Roane v. Leonhart,*
    741 F.3d 147 (D.C. Cir. 2014) .......................................................................... 18

*Roeder v. Islamic Republic of Iran,*
    333 F.3d 228 (D.C. Cir. 2003) .......................................................................... 25

*Severino v. Biden,*
    71 F.4th 1038 (D.C. Cir. 2023) ......................................................................... 11

*Signal Peak Energy, LLC v. Haaland,*
    2024 WL 3887386 (D.D.C. Aug. 21, 2024) ..................................................... 24

*Smuck v. Hobson,*
    408 F.2d 175 (D.C. Cir. 1969) .......................................................................... 23

*Sorenson Communications, LLC v. Federal Communications Commission,*
    897 F.3d 214 (D.C. Cir. 2018) .......................................................................... 28

*Tennessee v. United States Department of Education,*
    615 F. Supp. 3d 807 (E.D. Tenn. 2022) .............................................................. 6

*Texas v. Equal Employment Opportunity Commission,*
    633 F. Supp. 3d 824 (N.D. Tex. 2022) ................................................................ 2

*Texas v. Garland,*
    719 F. Supp. 3d 521 (N.D. Tex. 2024) .............................................................. 11

*Texas v. United States,*
    805 F.3d 653 (5th Cir. 2015) ................................................................. 23

*Trbovich v. United Mine Workers of America,*
    404 U.S. 528 (1972) .............................................................. 20, 21, 23

*United States v. American Telephone & Telegraph Company,*
    642 F.2d 1285 (D.C. Cir. 1980) .............................................. 20, 27

*Viasat, Inc. v. Federal Communications Commission,*
    47 F.4th 769 (D.C. Cir. 2022) ........................................................... 28

*Virginia House of Delegates v. Bethune-Hill,*
    587 U.S. 658 (2019) ............................................................................. 24

## **Statutes**

5 U.S.C. § 706 ................................................................................................ 10

42 U.S.C. § 1988 .............................................................................................. 4

42 U.S.C. § 2000e ............................................................................................ 2

42 U.S.C. § 2000e-2 ......................................................................................... 2

42 U.S.C. § 2000e-4 ................................................................................... 2, 11

42 U.S.C. § 2000e-5 ..................................................................................... 3, 4

42 U.S.C. § 2000gg ....................................................................................... 2, 3

42 U.S.C. § 2000gg-1 ....................................................................................... 3

42 U.S.C. § 2000gg-2 ....................................................................................... 3

42 U.S.C. § 2000gg-3 ....................................................................................... 4

Consolidated Appropriations Act of 2023, Pub. L. No. 117-328, div. II,
    136 Stat. 4459 (2022) ...................................................................... 2

## **Constitutional Provisions**

U.S. Const. art. I, § 5 .................................................................................. 11

## **Regulations**

EEOC Implementation of the Pregnant Workers Fairness Act,
    89 Fed. Reg. 29,096 (Apr. 19, 2024) ............................................. 5, 6

## Rules

Fed. R. Civ. P. 24 ........................................................................ 17, 18, 20, 29

## Other Authorities

168 Cong. Rec. S7050 (daily ed. Dec. 8, 2022) ............................................ 3

Andrea R. Lucas, *Commissioner Andrea R. Lucas's Statement on EEOC Enforcement Guidance on Harassment in the Workplace*, EEOC (Apr. 29, 2024), https://www.eeoc.gov/commissioner-andrea-r-lucass-statement-eeoc-enforcement-guidance-harassment-workplace ......................................... 5

Andrea R. Lucas, *Commissioner Andrea R. Lucas's Statement on Vote on Final Rule to Implement the Pregnant Workers Fairness Act*, EEOC (Apr. 3, 2024), https://www.eeoc.gov/statement-re-vote-final-rule-implement-pregnant-workers-fairness-act ....................................................... 6

Ashraf Khalil, *Dismissed EEOC Commissioner Warns That Trump Plans to 'Erase the Existence of Trans People,'* Associated Press (updated 3:30 PM PDT, Feb. 12, 2025), https://apnews.com/article/discrimination-equal-employment-opportunity-trump-trans-samuels-00de2a3c8d5068e83f6ac1d9a073fc02 ......................... 13

*Commission Votes: April 2024*, EEOC, https://perma.cc/G5V2-SJ2G .............. 5, 6, 14

Complaint for Injunctive & Declaratory Relief, *Christian Employers Alliance v. United States Equal Employment Opportunity Commission*, No. 1:25-cv-00007 (D.N.D. Jan. 15, 2025) ................................................ passim

EEOC, Enforcement Guidance on Harassment in the Workplace (Apr. 29, 2024), https://perma.cc/7V7L-PN7P ............................................................... 4

Exec. Order No. 14,148, Initial Rescissions of Harmful Executive Orders and Actions, 90 Fed. Reg. 8237 (Jan. 20, 2025) ...................................... 12

Exec. Order No. 14,168, Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government, 90 Fed. Reg. 8615 (Jan. 20, 2025) .............................................. 11, 12

Exec. Order No. 14,187, Protecting Children From Chemical and Surgical Mutilation, 90 Fed. Reg. 8771 (Feb. 3, 2025) ...................................................... 13

Exec. Order No. 14,190, Ending Radical Indoctrination in K-12 Schooling, 90 Fed. Reg. 8853 (Feb. 3, 2025) ...................................................... 13

Exec. Order No. 14,201, Keeping Men Out of Women's Sports,
90 Fed. Reg. 9279 (Feb. 11, 2025).....................................................................13

Exec. Order No. 14,202, Eradicating Anti-Christian Bias,
90 Fed. Reg. 9365 (Feb. 12, 2025).....................................................................13

*History of the EEOC, Charlotte A. Burrows*, EEOC,
https://www.eeoc.gov/history/charlotte-burrows...............................................13

Jocelyn Samuels (@JSamuelsEEOC), *Statement of EEOC Commissioners
Charlotte A. Burrows, Jocelyn Samuels, and Kalpana Kotagel on Trump
Administration Day-One Executive Orders*, X (Jan. 21, 2025, 1:33 PM),
https://x.com/JSamuelsEEOC/status/1881817519188795700.........................12

Plaintiff EEOC's Motion to Dismiss EEOC Litigation, *EEOC v. Reggio's Pizza,
Inc.*, No. 1:24-cv-08910 (N.D. Ill. Feb. 14, 2025) ...............................................15

Plaintiff EEOC's Motion to Dismiss EEOC Litigation, *EEOC v. Sis-Bro, Inc.*,
No. 3:24-cv-00968 (S.D. Ill. Feb. 14, 2025)........................................................15

Plaintiff EEOC's Motion to Dismiss EEOC Litigation, *EEOC v. Starboard
Group, Inc.*, No. 3:24-cv-02260 (S.D. Ill. Feb. 14, 2025) ..................................15

Press Release, EEOC, President Appoints Andrea R. Lucas EEOC Acting Chair
(Jan. 21, 2025), https://www.eeoc.gov/newsroom/president-appoints-
andrea-r-lucas-eeoc-acting-chair)......................................................................14

Press Release, EEOC, Removing Gender Ideology and Restoring the EEOC's
Role of Protecting Women in the Workplace (Jan. 28, 2025),
https://www.eeoc.gov/newsroom/removing-gender-ideology-and-restoring-
eeocs-role-protecting-women-workplace ...........................................14, 15, 16

*Prohibited Employment Policies/Practices*, EEOC, https://perma.cc/74GK-E4DS ..15

*Protections Against Employment Discrimination Based on Sexual Orientation or
Gender Identity*, EEOC, https://perma.cc/V4ZX-636V.......................................15

*Sex-Based Discrimination*, EEOC, https://perma.cc/EE2T-XRLA.............................15

*Sexual Orientation and Gender Identity (SOGI) Discrimination*, EEOC,
https://perma.cc/3WMS-R7D4 ...........................................................................15

Stipulation to Stay Pending Deadlines & Dismiss with Prejudice, *EEOC v. Lush
Handmade Cosmetics, LLC*, No. 5:24-cv-06859 (N.D. Cal. Feb. 14, 2025) .....15

*The Commission and the General Counsel*, EEOC,
https://www.eeoc.gov/commission......................................................................14

*The State of the EEOC: Frequently Asked Questions*, EEOC,
      https://www.eeoc.gov/wysk/state-eeoc-frequently-asked-questions .......... 13, 14

Unopposed Motion to Dismiss the EEOC's Complaint, *EEOC v. Boxwood Hotels,*
      *LLC*, No. 1:24-cv-00902 (W.D.N.Y. Feb. 14, 2025) .......................................... 15

*What You Should Know, Position of Acting Chair Lucas Regarding the*
      *Commission's Final Regulations Implementing the Pregnant Workers*
      *Fairness Act*, EEOC, https://www.eeoc.gov/wysk/position-acting-chair-
      lucas-regarding-commissions-final-regulations-implementing-pregnant ...... 16

**INTRODUCTION**

The President has the constitutional power to fire policy-setting executive branch officials like EEOC commissioners. The commonsense constitutional proposition that the President should be able to set policy for executive branch agencies —and thus to hire and fire agency heads—is on full display here where the relevant official imposed harmful and illegal mandates inconsistent with the President's agenda. If the President cannot exercise his constitutional duty to supervise and remove officers in so-called "independent" agencies like EEOC, there is no democratic accountability in the executive branch.

Based on a misreading of Title VII of the Civil Rights Act of 1964 and the Pregnant Workers Fairness Act, former EEOC Commissioner Jocelyn Samuels used her terms in office to impose unlawful gender-identity and abortion mandates on employers. Shortly after his inauguration, President Trump ordered EEOC to rescind its gender-identity mandate but Samuels refused. So the President removed her from office. Samuels now sues for reinstatement.

Proposed Intervenors Choices Pregnancy Centers of Greater Phoenix, Inc. (Choices) and Christian Employers Alliance (CEA) have been directly impacted by two EEOC mandates that Samuels supported, which force employers to facilitate gender transitions and abortions. Reinstating Samuels will perpetuate these injuries on the proposed intervenors by preventing President Trump's replacement commissioners from rescinding the harmful policies. In considering the legality of Samuels' removal, the Court would benefit from hearing from the employers who benefit from having the heads of executive branch agencies removable by the President.

## BACKGROUND

### I.    EEOC enforces Title VII and the Pregnant Workers Fairness Act.

EEOC is a multi-member federal agency. It can have up to "five members, not more than three of whom shall be members of the same political party," 42 U.S.C. § 2000e-4(a). "Members of the Commission shall be appointed by the President by and with the advice and consent of the Senate for a term of five years." *Id*. Three members "shall constitute a quorum." *Id*. § 2000e-4(c).

EEOC's jurisdiction is vast—EEOC administers, interprets, and enforces the sex-discrimination provisions of Title VII, 42 U.S.C. §§ 2000e et seq., and the pregnancy-accommodation provisions of the Pregnant Workers Fairness Act (PWFA), Consolidated Appropriations Act of 2023, Pub. L. No. 117-328, div. II, 136 Stat. 4459, 6084–89 (2022) (codified at 42 U.S.C. §§ 2000gg to 2000gg-6). Both Title VII and the PWFA apply to a huge number of employers in America, those having fifteen or more employees. 42 U.S.C. § 2000e(b); *id*. § 2000gg(2)(B).

#### A.    Title VII prohibits sex discrimination.

Title VII prohibits employers from discriminating based on sex. Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual ... because of such individual's ... sex." 42 U.S.C. § 2000e-2(a)(1). Title VII also makes it unlawful to discriminate with respect to the "compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." *Id.*

When Congress passed Title VII, Congress understood "sex" to mean one of two biological sexes: male or female. *Bostock v. Clayton Cnty.*, 590 U.S. 644, 655 (2020) (assuming that sex means "biological distinctions between male and female," not "norms concerning gender identity"). Title VII does not require employers to make exemptions from workplace policies to facilitate expression of an employee's gender identity. *Texas v. EEOC*, 633 F. Supp. 3d 824, 840–41 (N.D. Tex. 2022).

**B.    The Pregnant Workers Fairness Act protects pregnancy.**

The Pregnancy Workers Fairness Act was intended to protect pregnant women from workplace discrimination. Under the PWFA, employers must "make reasonable accommodations to the known limitations related to the pregnancy, childbirth, or related medical conditions" of an employee. 42 U.S.C. § 2000gg-1(1). A "known limitation" means a "physical or mental condition related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions." *Id.* § 2000gg(4). Adverse actions based on a request for a "reasonable accommodation" are also prohibited. *Id.* § 2000gg-1(5). Employers also may not retaliate, or "coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of … any right" the statute protects. *Id.* § 2000gg-2(f)(1)–(2).

The PWFA's text does not mention abortion, and it does not require employers to facilitate abortion. The elective and intentional termination of a pregnancy is not a "known limitation" or a "condition" relating to pregnancy. *Id.* § 2000gg(4). Abortion is not a limitation or a condition, but a procedure.

That's why Senator Bob Casey, who sponsored the PWFA, said, "under the Pregnant Workers Fairness Act, the [EEOC] could not—could not— issue any regulation that requires abortion leave, nor does the act permit the EEOC to require employers to provide abortions in violation of State law." 168 Cong. Rec. S7050 (daily ed. Dec. 8, 2022).

**C.    The PWFA gives EEOC enforcement and rulemaking powers.**

Title VII and the PWFA give EEOC broad powers, remedies, and enforcement procedures. *See* 42 U.S.C. § 2000gg-2 (providing the same remedies for the PWFA as Title VII). EEOC has investigatory authority, may serve notices of charges of discrimination, and has powers to compel employers into "informal methods of conference, conciliation, and persuasion." *Id.* § 2000e-5(b).

EEOC also may bring a civil action against an employer. *Id.* § 2000e-5(f). An employer found to be in violation can be enjoined from engaging in the unlawful practice, and can be ordered to take "affirmative action as may be appropriate." *Id.* § 2000e-5(g)(1). Employers can also be liable for compensatory and punitive damages, *Id.* § 2000e-5(e)(3)(B); *see also id.* § 1981a, plus costs and attorney's fees. *Id.* § 2000e-5(k), § 1988(b).

The PWFA also gave EEOC rulemaking authority. Indeed, Congress required EEOC to adopt a PWFA rule and "provide examples of reasonable accommodations addressing known limitations related to pregnancy, childbirth, or related medical conditions" that will be required. *Id.* § 2000gg-3(a).

## II.    Samuels imposed gender-identity and abortion mandates on Choices and CEA.

Samuels was a Democrat EEOC member. Under her controlling vote, EEOC twisted Title VII and the PWFA to impose gender-identity and abortion mandates on employers (collectively, we refer to these as the EEOC Mandates).

*First*, Samuels improperly applied Title VII to force employers to affirm and facilitate employees' gender-transition efforts (the Gender-Identity Mandate). This mandate requires employers to use employees' self-selected pronouns, allow males to access female single-sex facilities, and fund "gender transition" procedures in health insurance plans. This mandate collectively resides in requirements published on EEOC's website, in a history of enforcement actions, and in "guidance" published in 2024. [1] *See* Complaint for Injunctive & Declaratory Relief ¶¶ 37–75, *Christian Emps. All. v. EEOC*, No. 1:25-cv-00007 (D.N.D. Jan. 15, 2025), ECF No. 1

---

[1] EEOC, Enforcement Guidance on Harassment in the Workplace (Apr. 29, 2024), https://perma.cc/7V7L-PN7P (the 2024 Guidance).

(*CEA v. EEOC II* Compl.) (collecting EEOC's websites, enforcement actions, and guidance).

EEOC passed its 2024 Guidance by a 3-2 vote after a notice-and-comment process.[2] Democrat Samuels provided the decisive vote, along with Democrat Commissioner Kalpana Kotagal and Democrat Commissioner Charlotte A. Burrows. Republican Commissioner Andrea R. Lucas dissented, along with another Republican commissioner who is no longer in office, Keith R. Sonderling.[3]

*Second*, Samuels issued a final rule that twists the PWFA—a bill meant to protect pregnant mothers—to impose a nationwide mandate forcing employers to promote and facilitate elective abortion. EEOC Implementation of the Pregnant Workers Fairness Act, 89 Fed. Reg. 29,096 (Apr. 19, 2024) (PWFA Abortion Mandate or PWFA Rule). The PWFA Rule states that "pregnancy, childbirth, or related medical conditions" includes "termination of pregnancy ... via … abortion," 89 Fed. Reg. at 29,183 (to be codified as 29 C.F.R. § 1636.3(b)), whether or not the procedure is medically related—and even if the abortion violates state law. This rule prevents employers from speaking pro-life beliefs, requires employers to give employees special leave to obtain abortions, and precludes employers from enforcing life-affirming workplace policies against employees who engage in conduct contrary to those policies. *See CEA v. EEOC II* Compl. ¶¶ 105–30.

---

[2] *Commission Votes: April 2024*, EEOC, https://perma.cc/G5V2-SJ2G (*Commission Votes*).

[3] Andrea R. Lucas, *Commissioner Andrea R. Lucas's Statement on EEOC Enforcement Guidance on Harassment in the Workplace*, EEOC (Apr. 29, 2024), https://www.eeoc.gov/commissioner-andrea-r-lucass-statement-eeoc-enforcement-guidance-harassment-workplace (last visited Apr. 22, 2025).

Like EEOC's 2024 Guidance on gender identity, EEOC passed the PWFA Rule by a 3-2 vote after a notice-and-comment process—with Samuels providing the deciding vote.[4] Commissioners Lucas and Sonderling again dissented.[5]

EEOC "requires employers to comply with its stated positions to avoid liability." *Tennessee v. U.S. Dep't of Educ.*, 615 F. Supp. 3d 807, 833 (E.D. Tenn. 2022). The EEOC Mandates require employers to take immediate steps to prevent and correct violations. As EEOC explained in its 2024 Guidance, this "usually" means "promulgating a policy against harassment, establishing a process for addressing harassment complaints, providing training to ensure employees understand their rights and responsibilities, and monitoring the workplace to ensure adherence to the employer's policy." 2024 Guidance, *supra* note 1, at IV.C.2.b.i. The PWFA Rule predicts that employer costs for "rule familiarization, posting new EEO posters, and updating EEO policies and handbooks," at an average of $113.51 per hour in lost employee time. 89 Fed. Reg. at 29,176 tbl.9, 29,177.

Both EEOC Mandates lack required religious exemptions. *CEA v. EEOC II* Compl. ¶¶ 136–49. Federal courts have thus enjoined the EEOC from applying the mandates to some religious employers. *See, e.g.*, *Cath. Benefits Ass'n v. Burrows*, 732 F. Supp. 3d 1014, 1029 (D.N.D. 2024) (enjoining the PWFA Abortion Mandate and EEOC's 2024 Guidance Mandate as applied to the Catholic Benefits Association); *Louisiana v. EEOC*, 705 F. Supp. 3d 643, 644 (W.D. La. 2024) (enjoining the PWFA Abortion Mandate as applied to the United States Conference of Catholic Bishops and two Catholic dioceses); *Christian Emps. All.  v. EEOC*,

---

[4] *Commission Votes*, *supra* note 2.

[5] *Id.*; *see* Andrea R. Lucas, *Commissioner Andrea R. Lucas's Statement on Vote on Final Rule to Implement the Pregnant Workers Fairness Act*, EEOC (Apr. 3, 2024), https://www.eeoc.gov/statement-re-vote-final-rule-implement-pregnant-workers-fairness-act (last visited Apr. 22, 2025).

719 F. Supp. 3d 912, 924–26, 928 (D.N.D. 2024) *(CEA v. EEOC I)* (enjoining EEOC's mandate to pay for gender transitions as applied to CEA); *Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 607 (8th Cir. 2022) (enjoining EEOC's mandate to pay for gender transitions as applied to certain Catholic employers).

## III.    EEOC's mandates regulate Choices and CEA.

Choices and CEA recognize the biological realities that humans are male or female and that human life begins at conception—which puts them in EEOC's crosshairs. EEOC's mandates impose the following no-win choice on Choices and CEA members: (1) adopt costly policies ignoring biological reality and violating their religious beliefs; (2) maintain their current policies and practices but risk liability; or (3) close their doors. Ex. A, Declaration of Margaret Iuculano ¶ 64 (CEA Decl.).

### A.    EEOC's mandates apply to Choices.

EEOC's mandates apply to Choices, a Christian pregnancy resource center that helps Arizona pregnant mothers. Ex. B, Declaration of Marc Burmich ¶¶ 7; 17–21 (Choices Decl.) (describing Choices as having 37 employees).

Although Choices does not refer to or provide abortion services, Choices provides a safe place to talk, explore options, seek medical services, and learn about available resources. *Id*. ¶ 15. Choices offers pregnancy tests, ultrasounds, counseling, mentoring, classes, training, social support, referrals, and material resources, like diapers, wipes, baby clothes, and car seats. *Id*. ¶¶ 9–13. Choices also offers free, confidential, safe, and compassionate counseling for women who regret their decision to have an abortion. *Id*. ¶ 16.

Choices recognizes the biological reality of the two sexes and of unborn life. *Id*. ¶ 27. And, as Christian nonprofit organization, Choices has a statement of faith, lifestyle agreement, bylaws, and employee handbook, under which employees agree to follow its positions on gender identity and abortion. *Id*. ¶¶ 26–39.

Because Choices is a pro-woman medical organization, Choices cannot comply with EEOC's requirement that it use an employee's self-selected pronouns, ensure access to single-sex facilities based on gender identity, or give dress-code exemptions based on gender identity. *Id.*¶¶ 45–52. To protect the privacy, safety, and dignity of female clients, Choices' ultrasound rooms restrict access for males, and males may not enter lactation spaces for nursing moms. *Id.* ¶¶ 48–50.

Because of the importance it places on pro-life conduct and speech, Choices also cannot comply with EEOC's requirements that employers facilitate abortions through personnel decisions, speech, and leave policies. *Id.* ¶¶ 42–44. Choices can only employ persons whose conduct does not contradict its pro-life position. *Id.* ¶ 41. Choices thus seeks to promote pro-life options like adoption without government censorship, to refrain from facilitating abortion, and to hire consistent with its pro-life beliefs. *Id.* ¶¶ 43–44.

Choices thus objects to incurring the financial, logistical, reputational, and other costs of changing its policies, processes, training, or monitoring programs to comply with the EEOC mandates. *Id.* ¶¶ 53–55.

## B.    EEOC's mandates apply to CEA's members.

EEOC's mandates likewise apply to CEA members. CEA is a Christian nonprofit organization whose members are businesses and nonprofit organizations who are aligned in operating consistent with their beliefs on issues of religious liberty, the sanctity of life, and the biological reality of male and female. CEA Decl. ¶¶ 9, 18. CEA's role is to advocate for its members, and it seeks to intervene on their behalf. Most CEA members employ fifteen or more employees and are "employers" as defined in Title VII and the PWFA. CEA Decl. ¶ 8.

CEA's members share CEA's positions on gender identity and on abortion. *Id.* ¶¶ 24–26, 28–30, 33–40, 69–75. CEA recognizes the binary reality of sex and

unborn life. *Id.* ¶ 24. It would contradict its Christian beliefs and religious exercise to participate in, pay for, facilitate, or affirm abortion or gender transitions. *Id.* ¶ 71.

Two representative CEA members subject to EEOC's mandates are Predictive Fitness, Inc., a fitness company in Southlake, Texas, and Moms for America, a pro-life advocacy organization in Branson, Missouri. *CEA v. EEOC II* Compl. ¶¶ 183, 196, 202, 216; CEA Decl. ¶¶ 4, 90, 106; Ex. C, Declaration of Jeff Booher ¶¶ 3–4, 34 (Predictive Fitness Decl.); Ex. D, Declaration of Kimberly Fletcher ¶¶ 3, 7, 45 (Moms for America Decl.). Both Predictive Fitness, Inc. and Moms for America share CEA's positions. Predictive Fitness Decl. ¶¶ 13–17, 34; Moms for America Decl. ¶¶ 16–17, 19. Both entities have more than fifteen employees. *CEA v. EEOC II* Compl. ¶ 201; Predictive Fitness Decl. ¶ 21; Moms for America Decl. ¶ 12. Both are similarly situated to other CEA members. *CEA v. EEOC II* Compl. ¶¶ 183–216; CEA Decl. ¶¶ 72, 83–86.

EEOC's Gender-Identity Mandate requires CEA members like Predictive Fitness, Inc. and Moms for America to use an employee's self-selected pronouns and give employee access to single-sex facilities based on gender identity. *CEA v. EEOC II* Compl. ¶ 206; CEA Decl. ¶¶ 90–99, 104–05, 108; Predictive Fitness Decl. ¶¶ 22–27, 31–32, 34–35; Moms for America Decl. ¶¶ 40–47.

EEOC's PWFA Abortion Mandate likewise prohibits CEA members like Predictive Fitness, Inc. and Moms for America from freely promoting pro-life options like adoption and requires them to provide additional on-demand leave above normal allowance for an employee to get an elective abortion. *CEA v. EEOC II* Compl. ¶ 212; CEA Decl. ¶¶ 90–95, 99–102, 104–05, 108; Predictive Fitness Decl. ¶¶ 22–27, 28–31, 33–35; Moms for America Decl. ¶¶ 32–39, 45–47.

EEOC's PWFA Abortion Mandate also prohibits Moms for America's pro-life employment policy. Moms for America can only employ people whose conduct does

not contradict its pro-life advocacy. *CEA v. EEOC II* Compl. ¶ 193–94; CEA Decl. ¶¶ 85, 103–04; Moms for America Decl. ¶¶ 7–10, 21–27, 31, 35–39, 45–46. But the PWFA Rule requires it not to take any adverse action against an employee or applicant because of her decision to have an abortion inconsistent with the organization's position on abortion. *CEA v. EEOC II* Compl. ¶ 194; CEA Decl. ¶¶ 85, 103–04; Moms for America Decl. ¶¶ 35–36, 39.

Like all CEA members, both Predictive Fitness, Inc. and Moms for America object to incurring the financial, logistical, reputational, and other costs of changing policies, processes, training, or monitoring programs to comply with EEOC's mandates. CEA Decl. ¶¶ 104–08; Predictive Fitness Decl. ¶¶ 34–35; Moms for America Decl. ¶¶ 45–47.

## IV.    CEA challenged EEOC's mandates.

CEA has twice challenged EEOC's unlawful mandates.

*First*, CEA challenged an early portion of EEOC's Gender-Identity Mandate that forced its members "to provide insurance coverage for gender transition services." *CEA v. EEOC I*, No. 1:21-CV-195, 2022 WL 1573689, at *9 (D.N.D. May 16, 2022). The court held that the commissioners' actions violated the Religious Freedom Restoration Act. *CEA v. EEOC I*, 719 F. Supp. 3d at 924–26, 928.

*Second*, CEA is currently seeking injunctive and declaratory relief against both EEOC Mandates in full, including EEOC's 2024 Guidance and the PWFA Rule. *CEA v. EEOC II* Compl. ¶¶ 235–362. CEA brings claims under the Administrative Procedure Act, 5 U.S.C. § 706 (2)(A)–(D). *CEA v. EEOC II* Compl. ¶¶ 235–362. Title VII does not allow EEOC to require gender-identity policy exceptions for workplace facilities and speech, and the PWFA does not allow EEOC to require employers to facilitate abortion. *Id.* ¶¶ 237–43, 267–75. Congress also breached the Quorum

Clause, U.S. Const. art. I, § 5, when it voted on the PWFA. *CEA v. EEOC II* Compl. ¶¶ 92–104, 283–86; *see Texas v. Garland*, 719 F. Supp. 3d 521 (N.D. Tex. 2024).

Particularly relevant here, CEA challenged EEOC's operating belief—shared by Samuels—that EEOC is an independent agency not subject to the President's removal power. *CEA v. EEOC II* Compl. ¶¶ 291–301. Although the constitutional requirement of at-will removal applies to statutes providing a term of years for appointees, *Severino v. Biden*, 71 F.4th 1038, 1045 (D.C. Cir. 2023), EEOC (under Samuels) interpreted its own governing statute, which provides five-year terms for commissioners, 42 U.S.C. § 2000e-4(a), as allowing removal only for cause. *CEA v. EEOC II* Compl. ¶¶ 295–96. Thus CEA argues that *either* the Samuels-run EEOC was wrong that its commissioners are not removable at will, *or*, if EEOC commissioners are only removable at will, that independent status violates Article II, which vests all the executive power in the President. *CEA v. EEOC II* Compl. ¶¶ 292–94; *see Lewis v. Carter*, 436 F. Supp. 958 (D.D.C. 1977).

## V.     Samuels refused the President's order to rescind EEOC's gender-identity mandate.

Upon taking office, President Trump ordered Samuels and her colleagues to rescind the gender-identity mandate—but Samuels refused.

On inauguration day, President Trump issued an executive order directing EEOC to cease its unlawful Gender-Identity Mandate. Exec. Order No. 14,168, Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government, 90 Fed. Reg. 8615 (Jan. 20, 2025). The President explained that EEOC's misinterpretation of Title VII position is "legally untenable" for employers and "has harmed women." *Id*. at 8616.

The President ordered EEOC to rescind the Gender-Identity Mandate. EEOC must "rescind all guidance documents inconsistent with the requirements of this order" including "the Equal Employment Opportunity Commission's 'Enforcement

Guidance on Harassment in the Workplace' (Apr. 29, 2024)," which is the 2024 Guidance. *Id.* at 8616. The President also ordered EEOC to "remove all statements, policies, regulations, forms, communications, or other internal and external messages that promote or otherwise inculcate gender ideology." *Id.* at 8616. He rescinded the prior executive orders on which EEOC relied for its Gender-Identity Mandate. *Id.* at 8617; *see also* Exec. Order No. 14,148, Initial Rescissions of Harmful Executive Orders and Actions, 90 Fed. Reg. 8237 (Jan. 20, 2025) (same).

The President further ordered EEOC to "enforce laws governing sex-based rights, protections, opportunities, and accommodations to protect men and women as biologically distinct sexes." 90 Fed. Reg. at 8616. In particular, he ordered EEOC to "prioritize investigations and litigation to enforce" the rights and freedoms "to express the binary nature of sex and the right to single-sex spaces in workplaces." *Id.* at 8617.

The next day, the three Democrat EEOC Commissioners—Samuels, Charlotte Burrows, and Kalpana Kotagal—responded with a joint statement under EEOC's logo disagreeing with the President and refusing to comply. They said that "yesterday's slate of civil rights related Executive Orders and recissions undermines [EEOC's] goals and ignores the day-to-day reality of discrimination."[6] In their view, Title VII requires employers to facilitate gender-identity practices.[7] So they promised to "continue to fulfill this important Congressional mandate" as the President's position "contravenes both the law and this mandate."[8]

---

[6] Jocelyn Samuels (@JSamuelsEEOC)*, Statement of EEOC Commissioners Charlotte A. Burrows, Jocelyn Samuels, and Kalpana Kotagel on Trump Administration Day-One Executive Orders*, X (Jan. 21, 2025, 1:33 PM), https://x.com/JSamuelsEEOC/status/1881817519188795700.

[7] *Id.*

[8] *Id.*

Since then, the President has issued several more executive orders reaffirming his position on gender identity. *E.g.*, Exec. Order No. 14,187, Protecting Children From Chemical and Surgical Mutilation, 90 Fed. Reg. 8771 (Feb. 3, 2025); Exec. Order No. 14,190, Ending Radical Indoctrination in K-12 Schooling, 90 Fed. Reg. 8853 (Feb. 3, 2025); Exec. Order No. 14,201, Keeping Men Out of Women's Sports, 90 Fed. Reg. 9279 (Feb. 11, 2025). Plus, the President directed officials to remove *any* policies that violate the religious freedom of Christian employers. Exec. Order No. 14,202, Eradicating Anti-Christian Bias, 90 Fed. Reg. 9365 (Feb. 12, 2025).

## VI.    President Trump removed Samuels.

The President accordingly removed Commissioners Samuels and Burrows from office, citing the Gender-Identity Mandate. Samuels' removal letter "mentioned my refusal to defend women against extreme gender ideology."[9]

Neither Commissioners' term was over. Samuels' term was set to end July 2026.[10] Commissioner Burrows's term was set to expire July 2028.[11]

Their removal caused a shift of control within EEOC from a 3-1 majority for these mandates (with one vacancy) to a new 1-1 split (with three vacancies). Their removals also deprived EEOC of a quorum.[12] EEOC is now deadlocked 1-1 between

---

[9] Ashraf Khalil, *Dismissed EEOC Commissioner Warns That Trump Plans to 'Erase the Existence of Trans People,'* Associated Press (updated 3:30 PM PDT, Feb. 12, 2025),https://apnews.com/article/discrimination-equal-employment-opportunity-trump-trans-samuels-00de2a3c8d5068e83f6ac1d9a073fc02.

[10] *Id.*

[11] *History of the EEOC, Charlotte A. Burrows*, EEOC, https://www.eeoc.gov/history/charlotte-burrows (last visited Apr. 22, 2025).

[12] *The State of the EEOC: Frequently Asked Questions*, EEOC, https://www.eeoc.gov/wysk/state-eeoc-frequently-asked-questions (last visited Apr. 22, 2025).

the new Acting Chair,[13] Republican Andrea Lucas, who supports the President's executive orders (and who voted against the gender-identity and abortion mandates), and Democrat Commissioner Kalpana Kotagal, who opposes the President (and who voted for the gender-identity and abortion mandates).[14]

In response to the President's executive orders, Acting Chair Lucas seeks to rescind the Gender-Identity Mandate once EEOC regains a quorum.[15] She "vocally" opposes the 2024 Guidance's "enforcement position that harassing conduct under Title VII includes 'denial of access to a bathroom or other sex-segregated facility consistent with [an] individual's gender identity'; and that harassing conduct includes 'repeated and intentional use of a name or pronoun inconsistent with [an] individual's known gender identity.'"[16] "The same agency that in the 1960s and 70s fought to ensure women had the right to their own restrooms, locker rooms, sleeping quarters, and other sex-specific workplace facilities—and established that it would be sex discrimination not to provide such women-only facilities—betrayed women by attacking their sex-based rights in the workplace."[17]

Acting Chair Lucas has already been able—without a quorum—to take at least four important interim steps to remove part of Samuels' harmful legacy, consistent with the President's executive orders.[18]

---

[13] Press Release, EEOC, President Appoints Andrea R. Lucas EEOC Acting Chair (Jan. 21, 2025), https://www.eeoc.gov/newsroom/president-appoints-andrea-r-lucas-eeoc-acting-chair).

[14] *The Commission and the General Counsel*, EEOC, https://www.eeoc.gov/commission (last visited Apr. 22, 2025); *Commission Votes*, *supra* note 2.

[15] Press Release, EEOC, Removing Gender Ideology and Restoring the EEOC's Role of Protecting Women in the Workplace (Jan. 28, 2025), https://www.eeoc.gov/newsroom/removing-gender-ideology-and-restoring-eeocs-role-protecting-women-workplace (last visited Apr. 22, 2025) (Removing Gender Ideology).

[16] *Id.*

[17] *Id.*

[18] *See The State of the EEOC: Frequently Asked Questions*, *supra* note 12.

*First*, Lucas is reviewing the informal guidance, websites, and workplace posters that contribute to some of the Gender-Identity Mandate.[19]

*Second*, EEOC removed the agency's "pronoun app," which displayed EEOC employee pronouns, and EEOC changed EEOC's intake forms to remove the "X" gender marker option and the "Mx." prefix option.

*Third*, Lucas announced that a "priorit[y]—for compliance, investigations, and litigation—is to defend the biological and binary reality of sex and related rights, including women's rights to single-sex spaces at work."[20]

*Fourth*, EEOC moved to dismiss six cases enforcing EEOC's Gender-Identity Mandate, citing the President's executive order.[21]

None of this would be possible under Samuels. In her mind, "EEOC's response to [the executive orders] 'is truly regrettable.'"

---

[19] Removing Gender Ideology, *supra* note 15. "Where a publicly accessible item cannot be immediately removed or revised, a banner has been added to explain why the item has not yet been brought into compliance." *Id.*; *see Sex-Based Discrimination*, EEOC, https://perma.cc/EE2T-XRLA; *Prohibited Employment Policies/Practices*, EEOC, https://perma.cc/74GK-E4DS; *Sexual Orientation and Gender Identity (SOGI) Discrimination*, EEOC, https://perma.cc/3WMS-R7D4; *Protections Against Employment Discrimination Based on Sexual Orientation or Gender Identity*, EEOC, https://perma.cc/V4ZX-636V.

[20] Removing Gender Ideology, *supra* note 15.

[21] Plaintiff EEOC's Motion to Dismiss EEOC Litigation, *EEOC v. Starboard Group, Inc.*, No. 3:24-cv-02260 (S.D. Ill. Feb. 14, 2025), ECF No. 12; Stipulation to Stay Pending Deadlines & Dismiss with Prejudice, *EEOC v. Lush Handmade Cosmetics, LLC*, No. 5:24-cv-06859 (N.D. Cal. Feb. 14, 2025), ECF No. 25; Unopposed Motion to Dismiss the EEOC's Complaint, *EEOC v. Boxwood Hotels, LLC*, No. 1:24-cv-00902 (W.D.N.Y. Feb. 14, 2025), ECF No. 32; Plaintiff EEOC's Motion to Dismiss EEOC Litigation, *EEOC v. Reggio's Pizza, Inc.*, No. 1:24-cv-08910 (N.D. Ill. Feb. 14, 2025), ECF No. 20; Plaintiff EEOC's Motion to Dismiss EEOC Litigation, *EEOC v. Sis-Bro, Inc.*, No. 3:24-cv-00968 (S.D. Ill. Feb. 14, 2025), ECF No. 63; Joint Motion to Dismiss EEOC Litigation, *EEOC v. Harmony Hosp., LLC*, No. 1:24-cv-00357 (M.D. Ala. Feb. 13, 2025), ECF No. 23.

Even so, Lucas agrees that she lacks authority without a voting quorum of the Commission to remove the core of EEOC's Gender Identity Mandate, which resides in several documents enacted through a majority vote.[22]

What's more, Lucas intends to revisit the PWFA Rule once the commission's quorum returns.[23] And the President has directed Lucas to work with the Department of Justice to remove *any* policies that violate the religious freedom of Christian employers. Exec. Order No. 14202, Eradicating Anti-Christian Bias, 90 Fed. Reg. 9365 (Feb. 12, 2025).

## VII. Choices and CEA seek to intervene to defend the President's removal of Samuels.

Samuels now sues the President, EEOC, and Acting Chair Lucas, demanding reinstatement so that she can reinforce EEOC's mandates. Errata Compl. at 14, ECF No. 3 (Compl.). Rather than acknowledge any presidential policy control over EEOC, Samuels claims a right to "insulation from political pressure exerted by the president." *Id*. ¶ 4. In her view, "inherent in the structure and duties of a bipartisan independent agency such as the EEOC" is "that its Commissioners are not subject to at-will removal by the president." *Id*. ¶ 25.

Samuels admits that the President "purported to adopt positions of the federal government" on Title VII and the "binary definition of sex," *Id*. ¶ 28. But she says that EEOC has "historic independence" freeing her from serving as "a vehicle for any president's political agenda." *Id*. ¶¶ 1–2. She thus stands by her refusal to follow the President's executive orders on what she sees as "the Administration's

---

[22] Removing Gender Ideology, *supra* note 15 (citing "the Commission's Enforcement Guidance on Harassment in the Workplace (issued by a 3-2 vote in 2024)").

[23] *What You Should Know, Position of Acting Chair Lucas Regarding the Commission's Final Regulations Implementing the Pregnant Workers Fairness Act*, EEOC, https://www.eeoc.gov/wysk/position-acting-chair-lucas-regarding-commissions-final-regulations-implementing-pregnant (last visited Apr. 22, 2025).

incorrect interpretation of Title VII." *Id.* ¶ 31. She agrees that the President removed her for "her involvement in 'enacting or enforcing the Biden Administration's radical Title VII guidance.'" *Id.* ¶ 37. But she claims that "policy disagreements" provide no ground for removal—the president just has to live with these "policy differences between the president and some Commissioners." *Id.* ¶ 48.

As beneficiaries of the President's executive orders and his removal of Samuels, Choices and CEA move to intervene as defendants. Intervention will ensure that the Court does not assess the removal's validity without hearing from the employers that Samuels seeks to burden and that the President's removals seek to protect.

If Samuels returns, she would provide the controlling vote. EEOC would continue to impose—and to defend in court—its gender-identity and abortion mandates. EEOC would undo Acting Chair Lucas's interim work. And EEOC would not rescind any mandates.

## ARGUMENT

Choices and CEA satisfy the requirements under Federal Rule of Civil Procedure 24(a) and (b) to intervene as of right and permissively as a defendant. The Court should not assess Samuels' removal's validity without hearing from the very employers that the removal seeks to protect.

## I.    Choices and CEA have a right to intervene.

Federal Rule of Civil Procedure 24(a)(2) provides for intervention of right when a movant meets four requirements: "1) timeliness of the application to intervene; 2) a legally protected interest; 3) that the action, as a practical matter, impairs or impedes that interest; and 4) that no party to the action can adequately represent the potential intervenor's interest." *Crossroads Grassroots Pol'y Strategies*

*v. FEC*, 788 F.3d 312, 320 (D.C. Cir. 2015) (citing Fed. R. Civ. P. 24(a)). Choices and CEA satisfy these requirements for intervention as-of-right under Rule 24(a)(2).

### A.    Choices and CEA's motion is timely.

Choices and CEA's application to intervene is timely because this case just began. The timeliness requirement "is aimed primarily at preventing potential intervenors from unduly disrupting litigation, to the unfair detriment of the existing parties." *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014). The complaint was filed on April 9, 2025 and return of service has not yet been filed. Choices and CEA do not seek to alter deadlines or otherwise prejudice the parties.

### B.    Samuels' removal benefits Choices and CEA—and they would be harmed if she returns to office.

Under Rule 24(a), a prospective intervenor must "demonstrate a legally protected interest in the action" and that disposition of the action may, as a practical matter, impair or impede its ability to protect its interests. *100Reporters LLC v. U.S. Dep't of Just.*, 307 F.R.D. 269, 275 (D.C. Cir. 2014). Generally, a party seeking to intervene must show that it would be harmed "by the setting aside of the government's action it seeks to defend, that this injury would have been caused by that invalidation, and the injury would be prevented if the government action is upheld." *Cayuga Nation v. Zinke*, 324 F.R.D. 277, 280 (D.D.C. 2018).

Rule 24(a) recognizes that "justice is best served when all parties with a real stake in a controversy are afforded an opportunity to be heard." *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 130 (D.C. Cir. 1972). Thus, in determining whether a case would impair a movant's interests, this Court must "look to the 'practical consequences that [the group] may suffer if intervention is denied." *Forest Cnty. Potawatomi Cmty. v. United States*, 317 F.R.D. 6, 14 (D.D.C. 2016) (quoting *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977)). This "inquiry is

not a rigid one." *Id*. at 10. A movant that "would be substantially affected in a practical sense by the determination made in [this] action, should, as a general rule, be entitled to intervene." Fed. R. Civ. P. 24 (advisory committee's note).

Choices and CEA benefitted from Samuels' removal because they have an interest in avoiding the mandates issued under her tenure, an interest that would be impaired if she could defy the President's executive orders and continue to impose the mandates. With Samuels out of office, EEOC has taken steps to pull back some parts of the Gender-Identity Mandate, and EEOC may rescind both mandates when it regains a quorum. *See supra* Background Pt. VII; *see Foster v. Gueory*, 655 F.2d 1319, 1325 (D.C. Cir. 1981) (observing that a "possibility" of impairment is a "sufficient showing" for intervention). But were Samuels to return, she would undo the Acting Chair's initial steps rescinding some parts of the Gender-Identity Mandate, and worse, Choices and CEA lose all hope of EEOC voluntarily rescinding either mandate while she holds EEOC's controlling vote. *See supra* Background Pt. VIII. Choices and CEA would remain subject to these harmful mandates, with no recourse outside the courts. In short, "the task of reestablishing the status quo if [she] succeeds in this case will be difficult and burdensome." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003). So in practical terms, Choices and CEA will feel the brunt of an adverse ruling.

What is more, CEA supports the President's authority to remove Samuels—which provides CEA another interest supporting intervention. A "public interest group" like CEA "is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported." *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995). In parallel litigation CEA brought claims to vindicate the President's authority to remove EEOC commissioners. *CEA v. EEOC II*, Compl. ¶¶ 291–301. An adverse ruling could "nullif[y]" these efforts. *Nat. Res. Def. Council v. EPA*, 99 F.R.D. 607, 609 (D.D.C. 1983).

Finally, Choices and CEA have Article III standing to defend the removal, *see infra* Part II, which is independently "alone sufficient" for establishing the requisite interest for intervention. *Fund for Animals*, 322 F.3d at 735. An intervenor "need not show anything more than that it has standing to sue in order to demonstrate the existence of a legally protected interest for purposes of Rule 24(a)." *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir. 1998).

### C. Federal officials may not adequately represent the interests of Choices and CEA.

Under Rule 24(a), a prospective intervenor must also show that existing parties may not adequately represent its interests. "The requirement of the Rule is satisfied if the applicant shows that representation of his interest '*may be*' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (emphasis added). This standard is "not onerous." *Crossroads*, 788 F.3d at 321 (quoting *Fund for Animals*, 322 F.3d at 735). A movant "'ordinarily [is] allowed to intervene unless it is clear that [existing parties] will provide adequate representation.'" *Id.* (quoting *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1293 (D.C. Cir. 1980)). A "potential conflict … is sufficient to satisfy a proposed intervenor's 'minimal' burden." *Dimond v. District of Columbia*, 792 F.2d 179, 193 (D.C. Cir. 1986).

Choices and CEA satisfy the "minimal" requirement that representation of their interests by existing parties "'may be' inadequate." *Trbovich*, 404 U.S. at 538 n.10. Plaintiff Samuels imposed the EEOC Mandates on Choices and CEA, so she will not represent Choices and CEA's interests. And though Choices and CEA seek to intervene to support the President's removal of Samuels from office, their interests are not identical to Defendants' interests.

At the outset, while the federal government will defend the lawfulness of Samuels' removal, "a shared general agreement" that her removal was lawful "does

not necessarily ensure agreement in all particular respects." *Costle*, 561 F.2d at 912. Time and again, courts have held that private individuals and organizations have unique interests that the federal government cannot adequately defend. *E.g.*, *Trbovich*, 404 U.S. at 539. Thus, the D.C. Circuit has "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals*, 322 F.3d at 737 & n.9; *Crossroads*, 788 F.3d at 321. In fact, the D.C. Circuit has stated that it "look[s] skeptically on government entities serving as adequate advocates for private parties." *Crossroads*, 788 F.3d at 321. And the Supreme Court has likewise cast doubt on whether courts can ever definitively "presume" that government officials serve as adequate representatives of private interests. *Berger v. N. Carolina State Conf. of the NAACP*, 597 U.S. 179, 196 (2022). When "'the absentee's interest is similar to, but not identical with, that of one of the parties,' that normally is not enough for a presumption of adequate representation." *Id.* at 197 (cleaned up).

For several reasons, Choices and CEA satisfy Rule 24(a)'s requirement of showing that existing parties may not adequately represent its interests. *First*, Defendants are formally adverse to CEA in parallel litigation over the EEOC Mandates. EEOC imposed—and by actions that cannot be removed without majority vote, still imposes—harmful mandates on Choices and CEA. Defendants control EEOC, and EEOC is the opposing party to CEA in *CEA v. EEOC II*. This formal adversity alone suggests a conflict of interest. *See Crossroads*, 788 F.3d at 314 (finding inadequacy in part because government defendants "opposed [the proposed intervenor] in the prior proceedings"). Under Rule 24(a), a private party's "interests need not be wholly 'adverse' [to the federal government's interests] before there is a basis for concluding that existing representation of a 'different' interest may be inadequate." *Fund for Animals*, 322 F.3d at 737 (quoting *Nuesse v. Camp*, 385 F.2d 694, 703 (D.C. Cir. 1967)). Here, formal adversity in litigation results in

the "possibility of disparate interests" sufficient to show a possible inadequacy of representation, even if one "cannot predict now the specific instances" in which conflicts will arise in this case. *Castle*, 561 F.2d at 912.

*Second*, given that the new administration has yet to settle upon its range of EEOC policies (and cannot do so while EEOC lacks a quorum), it is "not hard to imagine how the interests" of employers and the federal government "might diverge during the course of [this] litigation." *Fund for Animals*, 322 F.3d at 736. Particularly for the PWFA Abortion Mandate, although the Acting Chair voted against it, President Trump has not yet issued an executive order calling for its repeal. That makes the status quo for purposes of intervention the textual existence of the PWFA Abortion Mandate. And the potential divergence of interests over that mandate alone satisfies the requirement that EEOC may be inadequate to represent Choices and CEA's interests in undoing that mandate.

*Third*, the federal government's interest in defending Samuels' removal is necessarily broad, public, general, and nonreligious—while Choices and CEA have specific, unique, pro-life, and religious interests. The government's interest is to clarify the President's removal authority, to regulate its own employees, and to lift EEOC's Gender-Identity Mandate. But Choices and CEA's "'primary objective'" is to obtain relief from unlawful mandates that harm them. *Berger*, 597 U.S. at 198 (cleaned up). Intervention is appropriate where, as here, private entities interest "is more narrow and focused than [the government's], being concerned primarily with the regulation that affects their industries." *Castle*, 561 F.2d at 912–13. Choices and CEA have an interest in ensuring that EEOC rescinds its gender-identity and abortion mandates and that EEOC protects its religious-liberty interests. No doubt the new administration would take Choices and CEA's interests "into account," but that "does not mean giving them the kind of primacy that the [intervenors] would give them." *Fund for Animals*, 322 F.3d at 736 (cleaned up). For these reasons,

Choices and CEA have sufficiently shown the government's defense of this case "may be inadequate." *Id.* at 735 (quoting *Trbovich*, 404 U.S. at 538 n. 10) (cleaned up); *see also Smuck v. Hobson*, 408 F.2d 175, 181 (D.C. Cir. 1969) (holding that school board did not adequately represent the interests of intervening parents because the "board represents all parents," while the intervenors "may have more parochial interests centering upon the education of their own children").

In sum, Choices and CEA meet "the minimal burden of showing inadequacy of representation and should be allowed to intervene as of right." *Crossroads*, 788 F.3d at 321. Any present "'tactical similarity of the present legal contentions [does not] assure adequacy of representation or necessarily preclude the [intervenor] from the opportunity to appear in [its] own behalf.'" *Fund for Animals*, 322 F.3d at 737 (quoting *Nuesse*, 385 F.2d at 703).

## II.  Though intervenors need not independently establish standing to intervene as defendants, Choices and CEA both satisfy Article III.

Because Choices and CEA seek to intervene in support of Defendants, and they are not affirmatively invoking the Court's jurisdiction, they do not separately need standing to sue. The majority rule is that a party need not "establish independent Article III standing before intervening" if the party "simply seeks to defend the agency's position." *Melone v. Coit*, 100 F.4th 21, 28–29 (1st Cir. 2024). Instead, as the Fifth Circuit has explained, "an interest is sufficient if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim." *Texas v. United States*, 805 F.3d 653, 659 (5th Cir. 2015). For this reason, when proposed intervenor-defendants "requested relief is largely identical to the government's prayer for relief, the proposed intervenors have established piggyback standing." *Cal. Steel Indus., Inc. v. United States*, 48 F.4th 1336, 1343 (Fed. Cir. 2022); *cf. Kane Cnty. v. United States*, 94 F.4th 1017, 1032 (10th Cir. 2024)

(accepting piggyback standing rule); *Chapman v. Tristar Prods., Inc.*, 940 F.3d 299, 304 (6th Cir. 2019) (holding that an "intervenor need not have the same standing"); *King v. Governor of N.J.*, 767 F.3d 216, 245 (3d Cir. 2014), *abrogated on other grounds by Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755 (2018) (noting that the "majority" of circuit courts "have held that an intervenor is not required to possess Article III standing to participate") (collecting cases); *Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324, 1337 (11th Cir. 2007) (holding that so "long as an original party on the intervenor's side remains party to the action and maintains an adversarial litigating position vis-a-vis the opposing parties, at least in this circuit an intervenor need not make an independent showing that he or she meets the standing condition of Article III.").

The Supreme Court agrees that intervenors need not prove standing to intervene as defendants. *See Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 663 (2019) (explaining that "it was not … incumbent on [a party] to demonstrate its standing" when it participated "as an intervenor in support of the … Defendants," or "as an appellee" on appeal, "[b]ecause neither role entailed invoking a court's jurisdiction"); *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n. 6 (2020) (intervenor-defendant did not need to show standing when it sought the same relief as the defendant-appellant).

Yet given D.C. Circuit precedent requiring intervenors to demonstrate Article III standing regardless of the relief they seek, "some judges in this district have continued to require all intervenors of right to demonstrate Article III standing, while others have not." *Farmer v. EPA*, No. 24-CV-1654 (DLF), 2024 WL 5118193, at *2 n.2 (D.D.C. Dec. 16, 2024). *Compare, e.g.*, *Signal Peak Energy, LLC v. Haaland*, No. 24-cv-366 (TSC), 2024 WL 3887386, at *3–4 (D.D.C. Aug. 21, 2024) (noting the tension between D.C. Circuit precedent and the Supreme Court's decision in *Little Sisters of the Poor* but concluding that circuit precedent requires

all intervenors of right to demonstrate Article III standing)*, with Env't Integrity Project v. Wheeler*, No. 20-cv-1734 (KBJ), 2021 WL 6844257, at *2 (D.D.C. Jan. 27, 2021) (Jackson, J.) (following Supreme Court precedent to hold that defendant-intervenors not invoking the court's jurisdiction need not show standing) *and Child.'s Health Def. v. CDC*, No. 23-cv-00431 (TNM), 2024 WL 3521593, at *5 n.3 (D.D.C. July 24, 2024) (same). In any event, this Court "need not decide this issue because [Choices and CEA have] Article III standing." *Farmer*, 2024 WL 5118193 at *2 n.2.

### A.    Choices and CEA have Article III standing.

"[A]ny person who satisfies Rule 24(a) will also meet Article III's standing requirement." *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003). A movant has standing where it "benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the [movant's] benefit." *Crossroads*, 788 F.3d at 317. This is true even where the agency action benefits the movant only "tangentially" or "indirectly." *Id*. at 318. The "'threatened loss' of th[e] favorable action constitutes a 'concrete and imminent injury.'" *Id*. (quoting *Fund for Animals*, 322 F.3d at 733). And given the pending litigation seeking to overturn that action, causation and redressability "rationally follow[ ]." *Id*. at 316. Thus, for standing, "it is enough that [the plaintiff] seeks relief, which, if granted, would injure" the movants. *Id*. at 318.

Choices and CEA benefitted from the removal of Samuels, the action subject to challenge in this case, and they would be injured if she returns to office. Choices and CEA have an interest in avoiding the EEOC gender-identity and abortion mandates issued under her tenure. EEOC's gender-identity and abortion mandates force Choices and CEA members to either: (1) violate their current policies and practices (and their religious exercise) and incur compliance costs; (2) maintain

their religiously-informed positions but risk liability; or (3) exit the business or nonprofit world altogether. *See supra* Background Pt. III. With Samuels out of office, EEOC has taken steps against some parts of the Gender-Identity Mandate, and EEOC may rescind both mandates when it regains a quorum. *See supra* Background Pt. VII. Her removal provided immediate benefit, with more potential benefits to come.

An unfavorable decision in the instant case would eliminate these existing benefits and ensure that future benefits are never realized. If this Court reinstates Samuels, she would cast the controlling vote to undo the Acting Chair's rescission of some parts of the Gender-Identity Mandate and she would vote to retain, defend, and enforce both mandates. *See supra* Background Pt. VII. So long as her term continues and she holds a controlling vote, Choices and CEA would remain subject to these harmful mandates, with no hope of relief outside the courts. So not only is the President's authority at stake—Choices and CEA's statutory and constitutional freedoms are as well.

CEA is already a past and current litigant against these mandates. *Supra* Background Pt. IV. Were Choices and CEA "to lose [the] beneficial" removal, each faces "potential direct regulation" through EEOC enforcement proceedings and "further litigation and liability," which is why each "understandably claims this loss would amount to concrete injury." *Crossroads*, 788 F.3d at 317–18.

For all these reasons, Choices and CEA can also show fair traceability between their injuries and their interests in this case. If Samuels wins this case, she will retain, restore, defend, and enforce the EEOC mandates on employers like Choices and CEA. If she loses this case, Acting Chair Lucas's interim work stays in place, and the President can appoint a new commissioner sharing his and Acting Chair Lucas's policy views. In that event, the mandates will be reconsidered and likely rescinded in full, relieving Choices and CEA's injuries from the mandates in

full. In short, both Choices and CEA "would suffer concrete injury if the court grants the relief the [plaintiff] seek[s]; they would therefore have standing." *Mil. Toxics Project v. EPA*, 146 F.3d 948, 954 (D.C. Cir. 1998).

Of course, granting this motion does not require the Court to take any position on the lawfulness of Samuels' removal or of EEOC's mandates. A "determination of the merits of [movants'] claim is not appropriate at this threshold stage." *Am. Tel. & Tel. Co.*, 642 F.2d at 1291. Neither intervention nor standing depends on the ultimate merits of any party's statutory or constitutional arguments. All this Court needs to find is that, as objects of EEOC's mandates, Choices and CEA benefit from her removal because they "are the subject of the disputed regulations." *Fund for Animals*, 322 F.3d at 733.

### B.    CEA has associational standing to represent its members.

Finally, CEA has associational standing to represent its members because (1) "its members would otherwise have standing to sue in their own right"; (2) "the interests it seeks to protect are germane to the organization's purpose"; and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

*First*, CEA members Predictive Fitness, Inc. and Moms for America would have standing in their own right. *See supra* Background Pt. III.B. All CEA members have employment policies or practices under which they will not affirm or facilitate gender-transition efforts or elective abortions—including Predictive Fitness, Inc. and Moms for America. CEA Decl. ¶¶ 4, 90; Predictive Fitness Decl. ¶¶ 3–4, 13–17, 34; Moms for America Decl. ¶¶ 3, 7, 16–17, 19, 45. Both entities have more than fifteen employees. Predictive Fitness Decl. ¶ 21; Moms for America Decl. ¶ 12. And they object to incurring the many costs of changing policies, processes, training, and

monitoring programs to comply with EEOC's Mandates. CEA Decl. ¶¶ 104–08; Predictive Fitness Decl. ¶¶ 34–35; Moms for America Decl. ¶¶ 45–47.

*Second*, CEA's mission is to represent the rights of its members to live by their values in the workplace. CEA Decl. ¶¶ 2, 9–10, 13–14, 20–23.

*Third*, resolving this case's controlling legal issue requires no more individual participation of each member than the attached declarations.

CEA also bears the "indicia of a traditional membership association." *Viasat, Inc. v. FCC*, 47 F.4th 769, 781 (D.C. Cir. 2022) (cleaned up). CEA members are a "discrete, stable group of persons with a definable set of common interests." *Am. Legal Found. v. FCC*, 808 F.2d 84, 90 (D.C. Cir. 1987). As companies and ministries united to defend workplace freedoms, CEA members apply for membership through strict criteria, affirmatively share CEA's positions, and "finance the organization" by paying dues. *Viasat, Inc.*, 47 F.4th at 781; *see* CEA Decl. ¶¶ 12, 24, 26–45, 55–56. CEA thus falls at the opposite end of the spectrum from prior litigants that did not appear to be bona fide membership associations—such as groups whose "members" were just "passive subscribers to [an] e-mail list and individuals who 'follow' the group's Facebook page." *Sorenson Commc'ns, LLC v. FCC*, 897 F.3d 214, 225 (D.C. Cir. 2018).

That's why courts have repeatedly recognized CEA's associational standing. *CEA v. EEOC I*, 719 F. Supp. 3d at 922 ("CEA's interests in protecting its members' rights are directly related to CEA's purpose …to support and develop strategies for members so that members may provide health and employment benefits in a manner consistent with Christian values."); *CEA v. EEOC I*, 2022 WL 1573689, at *4 ("Plaintiff's members would have standing to sue as they have an injury with a causal connection to the conduct that is complained of, i.e. they will be imminently injured by forcing to choose between complying with the requirements of the EEOC or HHS or choosing their sincerely held religious beliefs."); *cf. Christian Emps. All.*

*v. Azar*, No. 3:16-cv-309, 2019 WL 2130142 at *5 (D.N.D. May 15, 2019) ("[T]he Court's injunction will apply to current and future members of the Alliance.").

## III.    Choices and CEA meet the requirements for permissive intervention.

For the same reasons, this Court should grant Choices and CEA permission to intervene under Rule 24(b). That rule gives courts "wide latitude" to grant intervention in its discretion to anyone who "has a claim or defense that shares with the main action a common question of law or fact" if the intervention will not unduly delay or prejudice the rights of the original parties. *EEOC v. Nat'l Child.'s Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998); Fed. R. Civ. Proc. 24(b)(1)(B).

Choices and CEA meet the criteria for permissive intervention under Rule 24(b). And, because of CEA's long history with EEOC regulation under Samuels' direction, their "participation in defense" of her removal at the very least is "likely to serve as a vigorous and helpful supplement." *Costle*, 561 F.2d at 912–13.

## CONCLUSION

The Court should grant Choices and CEA's motion and allow them to intervene as defendants either as of right or permissively. The Court should not decide whether to reinstate Samuels without hearing from the very employers that the President aimed to protect.

29

Respectfully submitted this 24th day of April, 2025.

/s/ Matthew S. Bowman

**Matthew S. Bowman**
D.C. Bar No. 993261
**Natalie D. Thompson\***
D.C. Bar No. 90026665
**Alliance Defending Freedom**
440 First Street NW, Suite 600
Washington, DC 20001
Telephone: (202) 393-8690
Facsimile: (202) 347-3622
mbowman@ADFlegal.org
nthompson@ADFlegal.org

**Julie Marie Blake**
D.C. Bar No. 998723
VA Bar No. 97891
**Alliance Defending Freedom**
44180 Riverside Parkway
Lansdowne, Virginia 20176
Telephone: (571) 707-4655
Facsimile: (571) 707-4790
jblake@ADFlegal.org

*Counsel for Proposed Intervenor-Defendants Choices Pregnancy Centers of Greater Phoenix, Inc. and Christian Employers Alliance*

*\*Application for admission to the Bar of this Court pending*