# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOCELYN SAMUELS,
131 M Street, NE
Washington, D.C. 20507,

*Plaintiff*,

v.

DONALD J. TRUMP, in his official capacity as
President of the United States,
1600 Pennsylvania Avenue, NW
Washington, D.C. 20500,

U.S. EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,
131 M Street, NE
Washington, D.C. 20507,

and

ANDREA R. LUCAS, in her official capacity
as Acting Chair of the Equal Employment
Opportunity Commission,
131 M Street, NE
Washington, D.C. 20507,

*Defendants.*

Case No.: 1:25-cv-01069-TSC

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PROPOSED INTERVENOR-DEFENDANTS' MOTION TO INTERVENE

Plaintiff Jocelyn Samuels ("Commissioner Samuels"), by and through her undersigned counsel, files this Opposition to the Motion to Intervene of Proposed Intervenor-Defendants Choices Pregnancy Centers of Greater Phoenix, Inc. and Christian Employers Alliance (collectively, "Movants"). For the reasons set forth below, Plaintiff respectfully requests that the Court deny the Motion.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................iii

INTRODUCTION ...............................................................................................................1

BACKGROUND ................................................................................................................2

LEGAL STANDARD .........................................................................................................4

ARGUMENT ....................................................................................................................5

I.       Movants cannot intervene because they lack standing. ..........................................5

         A.       All intervenors must establish standing................................................................5

         B.       Movants cannot establish standing. ........................................................................8

                  1.       Movants cannot establish standing based on speculation that Plaintiff's requested relief will alter the existence or validity of current EEOC guidance. .........................................................................................9

                  2.       Movants cannot establish standing based on a fear that Plaintiff's requested relief will cause enforcement actions to be brought against them. ............11

                  3.       Movants cannot establish standing based on conjecture that Plaintiff's requested relief will lead to agency actions that will affect Movants. .......13

II.      Movants are not entitled to intervention as of right. .......................................... 14

         A.       Movants lack a significantly protectable interest in this action............................14

         B.       Movants fail to demonstrate that their interests would be impaired by the Court's disposition of this action absent their intervention. ............................................. 17

         C.       Movants cannot show that Defendants inadequately represent their interests. ......20

III.     Movants are not entitled to permissive intervention......................................... 23

CONCLUSION...................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Am. Chemistry Council v. Dep't of Transp.*,
  468 F.3d 810 (D.C. Cir. 2006) ................................................................. 17

*Aristotle Int'l, Inc. V. NGP Software, Inc.*,
  714 F. Supp. 2d 1 (D.D.C. 2010) ............................................................ 29

*Athens Lumber Co. v. Fed. Election Comm'n*,
  690 F.2d 1364 (11th Cir. 1982) .............................................................. 20

*Atl. Refinishing & Restoration, Inc. v. Travelers Cas. & Sur. Co. of Am.*,
  272 F.R.D. 26 (D.D.C. 2010) .................................................................. 26

*Berger v. N.C. State Conf. of the NAACP*,
  597 U.S. 179 (2022) ............................................................................... 26

*Bldg. & Const. Trades Dep't, AFL-CIO v. Reich*,
  40 F.3d 1275 (D.C. Cir. 1994) .................................................................. 9

*Christian Emps. All. v. EEOC* (*CEA v. EEOC II*),
  No. 1:25-cv-00007 (D.N.D. Jan. 15, 2025) ...................................... 8, 9, 16, 24

*City of Cleveland v. NRC*,
  17 F.3d 1515 (D.C. Cir. 1994) .......................................................... 11, 20

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) .......................................................................... 16, 17

*Collins v. Yellen*,
  594 U.S. 220 (2021) ............................................................................... 22

*Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*,
  788 F.3d 312, 318 (D.C. Cir. 2015) .................................................... 9, 13

*Ctr. for Biological Diversity v. Regan*,
  539 F. Supp. 3d 136 (D.D.C. 2021) ........................................................ 10

*Ctr. for Biological Diversity v. U.S. E.P.A.*,
  274 F.R.D. 305 (D.D.C. 2011) ................................................................ 19

*Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*,
  340 F.3d 1 (D.D.C. 2021) ................................................................. 22, 23

*Ctr. for Food Safety v. U.S. E.P.A.,*
    No. CV 23-1633 (CKK), 2024 WL 1299338 (D.D.C. Mar. 26, 2024) .......................... 23

*D.C. v. Potomac Elec. Power Co.,*
    826 F. Supp. 2d 227 (D.D.C. 2011) ................................................................ 29

*Defs. of Wildlife v. Perciasepe,*
    714 F.3d 1317 (D.C. Cir. 2013)..................................................................... 14

*Dellinger v. Bessent,*
    2025 WL 887518 (D.C. Cir. Mar. 10, 2025) .................................................... 28

*Deustche Bank Nat'l Tr. Co. v. FDIC,*
    717 F.3d 189 (D.C. Cir. 2013).........................................................11, 13, 18, 21

*Doe 1 v. Fed. Election Comm'n,*
    No. CV 17-2694 (ABJ), 2018 WL 2561043 (D.D.C. Jan. 31, 2018).............................. 28

*E.E.O.C. v. Nat'l Children's Ctr., Inc.,*
    146 F.3d 1042 (D.C. Cir. 1998).................................................................. 9, 10

*Endangered Species Act Section 4 Deadline Litig.-MDL No. 2165,*
    704 F.3d 972, 976 (D.C. Cir. 2013) .................................................9, 11, 19, 20

*Env't Def. Fund, Inc. v. Costle,*
    79 F.R.D. 235 (D.D.C. 1978) ...................................................... 25, 28, 29, 30

*Food & Drug Admin. v. All. for Hippocratic Med.,*
    602 U.S. 367 (2024)................................................................................ 15

*Foster v. Gueory,*
    655 F.2d 1319 (D.C. Cir. 1981)................................................................... 23

*Fund For Animals, Inc. v. Norton,*
    322 F.3d 728 (D.C. Cir. 2003)............................................................... passim

*Grundmann v. Trump,*
    2025 WL 782665 (D.D.C. Mar. 12, 2025) ...................................................... 28

*Harris v. Bessent,*
    2025 WL 679303 (D.D.C. Mar. 4, 2025)......................................................... 28

*Humane Soc. of U.S. v. Clark,*
    109 F.R.D. 518, 520 (D.D.C. 1985) .............................................................. 27

*Idaho Farm Bureau Fed'n v. Babbitt,*
    58 F.3d 1392 (9th Cir. 1995) .................................................................... 21

*Jones v. Prince George's Cnty., Maryland,*
    348 F.3d 1014 (D.C. Cir. 2003) .............................................................. 9, 11

*Keepseagle v. Vilsack,*
    307 F.R.D. 233 (D.D.C. 2014) .............................................................. 11, 29

*Las Americas Immigrant Advoc. Ctr. v. U.S. Dep't of Homeland Sec.,*
    348 F.R.D. 397 (D.D.C. 2025) ................................................................... 13

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania,*
    591 U.S. 657 (2020) ............................................................................... 11, 13

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ............................................................... 13, 16, 17, 18

*Maxwell v. Snow,*
    409 F.3d 354 (D.C. Cir. 2005) .................................................................. 12

*Mayor & City Council of Balt. v. Bureau of Alcohol, Tobacco, Firearms & Explosives,*
    738 F. Supp. 3d 1 (D.D.C. 2024) .............................................................. 10

*Mil. Toxics Project v. E.P.A.,*
    146 F.3d 948 (D.C. Cir. 1998) .................................................................. 14

*Murthy v. Missouri,*
    603 U.S. 43 (2024) ................................................................................... 17

*Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs,*
    519 F. Supp. 2d 89 (D.D.C. 2007) ........................................................... 30

*Natural Resources Defense Council, Inc. v. U.S. E.P.A.,*
    99 F.R.D. 607 (D.D.C. 1983) .............................................................. 24, 25

*Nuesse v. Camp,*
    385 F.2d 694 (D.C. Cir. 1967) .................................................................. 26

*Old Dominion Elec. Coop. v. FERC,*
    892 F.3d 1223 (D.C. Cir. 2018) ........................................................... 11, 30

*Pub. Serv. Co. of N.H. v. Patch,*
    136 F.3d 197 (1st Cir. 1998) .................................................................... 24

*Red Lake Band of Chippewa Indians v. U. S. Army Corps of Eng'rs*,
    338 F.R.D. 1 (D.D.C. 2021) ........................................................... 13

*Scotts Valley Band of Pomo Indians v. Douglas Burgum*,
    No. 1:25-CV-00958, 2025 WL 1178598 (D.D.C. Apr. 23, 2025) ............................. 29, 30

*Sec. & Exch. Comm'n v. Dresser Indus., Inc.*,
    628 F.2d 1368 (D.C. Cir. 1980)........................................................... 27

*Signal Peak Energy, LLC v. Haaland*,
    No. 24-CV-366, 2024 WL 3887386 (D.D.C. Aug. 21, 2024) ............................. 10, 12, 30

*Sweet Home Chapter of Communities For Great Or. v. Lujan*,
    No. CIV. A. 91-1468, 1991 WL 277331 (D.D.C. Dec. 10, 1991)...................................... 30

*Trbovich v. United Mine Workers of Am.*,
    404 U.S. 528 (1972)........................................................... 25

*United States v. Alisal Water Corp.*,
    370 F.3d 915 (9th Cir. 2004) ........................................................... 22

*United States v. Am. Tel. & Tel. Co.*,
    642 F.2d 1285 (D.C. Cir. 1980) ........................................................ 20, 22, 24

*United States v. AT&T*,
    642 F.2d 1285 (D.C. Cir. 1980)........................................................... 28

*United States v. Facebook, Inc.*,
    456 F. Supp. 3d 105 (D.D.C. 2020) ........................................................... 10

*United States v. Philip Morris USA Inc.*,
    566 F.3d 1095 (D.C. Cir. 2009)........................................................... 20

*Univ. Med. Ctr. of S. Nevada v. Shalala*,
    5 F. Supp. 2d 4 (D.D.C. 1998) ........................................................... 16

*Va. House of Delegates v. Bethune-Hill*,
    587 U.S. 658 (2019)........................................................... 11, 12

*Wilcox v. Trump*,
    2025 WL 720914 (D.D.C. Mar. 7, 2025) ........................................................... 28

*Yocha Dehe v. U. S. Dep't of the Interior*,
    3 F.4th 427 (D.C. Cir. 2021) ........................................................... 9, 10, 11, 12

## Statutes

42 U.S.C. § 2000e-4 ............................................................................................... 6

42 U.S.C. § 2000e-4(b)(1) .................................................................................... 16

42 U.S.C. § 2000gg-3(a) ......................................................................................... 7

Fed. R. Civ. P. 24(a)(2) ....................................................................................... 25

Fed. R. Civ. P. 24(b)(3) ....................................................................................... 28

## Other Authorities

Commission Votes: April 2024, EEOC,
    https://www.eeoc.gov/commission-votes-april-2024 ....................................... 7

Henry J. Dickman, Note, *Conflicts of Precedent*,
    106 Va. L. Rev. 1345 (2020) ...........................................................................11

PN141-33 — Brittany Panuccio — Equal Employment Opportunity Commission, 119th Congress
(2025–2026),
    https://www.congress.gov/nomination/119th-congress/141/33 ......................... 6

U.S. Equal Emp. Opportunity Comm'n, EEOC-CVG-2024–1, Enforcement Guidance on
    Harassment in the Workplace § IV(C)(3) (2024),
    https://www.eeoc.gov/laws/guidance/enforcement-guidance-harassment-workplace...... 7

## Rules

6 Fed. Prac. 3 § 24.03 ......................................................................................... 28

7A Wright & Miller, Federal Practice and Procedure, § 1909 .................................... 30

Fed. R. Civ. P. 24(a) ........................................................................................... 21

Fed. R. Civ. P. 24(b) ........................................................................................... 12

## Regulations

89 Fed. Reg. 29,096 ............................................................................................. 7

## INTRODUCTION

This case centers on the narrow question of the legality of President Trump's attempted removal of Equal Employment Opportunity Commission ("EEOC") Commissioner Jocelyn Samuels. Movants allege that they are entitled to intervene in this dispute because they are subject to EEOC guidance and rules related to gender identity and the Pregnant Workers Fairness Act ("PWFA") issued by the EEOC during Commissioner Samuels's tenure. But an interest in the substance of EEOC actions is too attenuated from the question of Commissioner Samuels's removability to provide a basis for Article III standing and a significantly protectable interest, both of which are required to support intervention. A ruling on the legality of Commissioner Samuels's removal will have no direct effect on the status of the EEOC's gender identity guidance and PWFA rule, and Movants' arguments to the contrary are speculative at best. Movants lack standing here to defend a removal decision by the President just as they would lack standing to sue to have a Commissioner removed because they disagreed with an action taken by that Commissioner.

Movants also fail to demonstrate that existing Defendants inadequately represent their interests, as Movants and Defendants are aligned on the issue before the Court—the legality of Commissioner Samuels's removal—and seek the same relief. Indeed, in recent months, the Trump Administration has vigorously defended the President's removal authority, and there is no indication that it will fail to do so here.

Finally, Movants' request for intervention is precluded by numerous equitable and practical concerns. Parties who are affected by EEOC guidance do not consequently have a legal interest in the removability of EEOC Commissioners as a pathway toward ensuring that their preferred appointees occupy Senate-confirmed positions and that the Commission adopts their preferred policy positions, and they cannot intervene to defend presidential actions to remove

Commissioners on this basis. Holding otherwise would open suits about the removability of heads of independent agencies to the intervention of any party regulated by, or affected by the actions of, the agency, both by those who approve of the agency's actions and those who disagree with them.

For these reasons, this Court should deny Movants' motion for intervention.

## BACKGROUND

Commissioner Samuels became an EEOC Commissioner following her nomination by President Trump and confirmation by the Senate in 2020. Compl. ¶ 26. In 2021, President Biden renominated Commissioner Samuels, and the Senate confirmed her for a second term expiring July 1, 2026. *Id.* ¶ 3.

On January 27, 2025, President Donald Trump directed the EEOC to remove Plaintiff from her position as EEOC Commissioner. *Id.* ¶¶ 1, 5. On April 9, 2025, Commissioner Samuels filed this action against President Trump, the EEOC, and Acting EEOC Chair Andrea R. Lucas, alleging that her removal was unlawful. *See id.* ¶¶ 11–14, 42–50. Her Complaint contains one claim for relief, for Ultra Vires Action in violation of Title VII of the Civil Rights of Act of 1964, 42 U.S.C. § 2000e-4. *See id.* ¶¶ 42–50.

Commissioner Keith R. Sonderling's EEOC term expired July 1, 2024. On May 6, 2025, President Trump nominated Brittany Panuccio to fill his seat. *See* PN141-33 — Brittany Panuccio — Equal Employment Opportunity Commission, 119th Congress (2025–2026), https://www.congress.gov/nomination/119th-congress/141/33.

The EEOC took two actions during Commissioner Samuels's tenure that Movants oppose and that they claim give them the right to intervene. First, in April 2024, the Commission issued comprehensive "Enforcement Guidance on Harassment in the Workplace," which stated, among other updates, that Title VII prohibits employment discrimination based on sexual orientation and

gender identity ("gender identity guidance").[1]  The Commission adopted the guidance by a 3-2 vote, with Commissioners Samuels, Charlotte Burrows, and Kalpana Kotagal in the majority, and Commissioners Lucas and Sonderling disapproving.  *See* Proposed Intervenor-Defendants Choices Pregnancy Centers of Greater Phoenix, Inc. and Christian Employers Alliance's Memorandum of Points and Authorities in Support of Motion to Intervene ("Mem.") 5 (citing Commission Votes: April 2024, EEOC, https://www.eeoc.gov/commission-votes-april-2024).  Second, also in April 2024, at Congress's instruction and after a notice and comment period, the Commission adopted a Final Rule and Interpretive Guidance to Implement the PWFA ("the PWFA Rule").  42 U.S.C. § 2000gg-3(a) (directing the EEOC to issue regulations implementing the PWFA); Mem. 5 (citing EEOC Implementation of the Pregnant Workers Fairness Act, 89 Fed. Reg. 29,096 (Apr. 19, 2024)).  Commissioners Samuels, Burrows, and Kotagal voted in favor of the PWFA Rule, and Commissioners Lucas and Sonderling disapproved.  *See* Mem. 4.

Movant Christian Employers Alliance ("CEA") filed a lawsuit in the District of North Dakota challenging the legality of the EEOC's gender identity guidance and the PWFA Rule.  *See* Complaint for Injunctive & Declaratory Relief ¶¶ 1–5, *Christian Emps. All. v. EEOC* (*CEA v. EEOC II*), No. 1:25-cv-00007 (D.N.D. Jan. 15, 2025), ECF No. 1.  CEA is represented by the Alliance Defending Freedom, its counsel in this case.  In *CEA v. EEOC II*, CEA alleges that any restrictions on the removal of EEOC Commissioners are invalid and that the court should set aside both the gender identity guidance and the PWFA Rule because of the "EEOC's unlawful structure" as it pertains to removal.  *Id.* ¶¶ 291–301.  The case was filed before President Trump's removal of Commissioner Samuels, and CEA's prayer for relief does not request the removal of

---

[1]  U.S. Equal Emp. Opportunity Comm'n, EEOC-CVG-2024–1, Enforcement Guidance on Harassment in the Workplace § IV(C)(3) (2024), https://www.eeoc.gov/laws/guidance/enforcement-guidance-harassment-workplace.

any Commissioner because of their vote on the gender identity guidance and the PWFA Rule. *Id.* 50–52.

 At the time of this filing, the gender identity guidance and PWFA Rule remain in effect.

**LEGAL STANDARD**

A party seeking to intervene must establish Article III standing. *See In re Endangered Species Act Section 4 Deadline Litig.-MDL No. 2165*, 704 F.3d 972, 976 (D.C. Cir. 2013). A putative intervenor-defendant establishes standing by demonstrating that the "plaintiff seeks relief, which, if granted, would injure the prospective intervenor." *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 318 (D.C. Cir. 2015). If a movant is unable to establish standing, intervention is denied. *See Yocha Dehe v. U.S. Dep't of the Interior*, 3 F.4th 427, 432 (D.C. Cir. 2021).

Movants who establish standing must also satisfy Federal Rule of Civil Procedure 24. To intervene as of right under Rule 24(a), movants must file a timely motion and demonstrate that: (1) they have an interest relating to the property or transaction which is the subject of the action; (2) they are so situated that the disposition of the action may, as a practical matter, impair or impede their ability to protect that interest; and (3) an existing party does not adequately represent that interest. *See Jones v. Prince George's Cnty., Maryland*, 348 F.3d 1014, 1018 (D.C. Cir. 2003). Failure to satisfy any one of these factors is fatal to intervention. *See Bldg. & Const. Trades Dep't, AFL-CIO v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994).

Permissive intervention under Rule 24(b) is an "inherently discretionary enterprise." *E.E.O.C. v. Nat'l Children's Ctr., Inc*., 146 F.3d 1042, 1046 (D.C. Cir. 1998). The district court "may" permit intervention where a putative intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). In determining whether

permissive intervention is appropriate, courts in this Circuit assess whether the putative intervenor has presented: "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *Nat'l Children's Ctr.*, 146 F.3d at 1046.

## ARGUMENT

### I.    Movants cannot intervene because they lack standing.

The D.C. Circuit requires all intervenors to establish Article III standing. *See Yocha Dehe*, 3 F.4th at 430–32. Movants claim that they benefitted from Commissioner Samuels's removal and would be harmed by her return, but they cannot establish any injury in fact traceable to her resuming her duties, as Plaintiff seeks, and redressable by an order upholding her removal's legality. *See Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 732–33 (D.C. Cir. 2003) (articulating elements of Article III standing). Therefore, they have no standing.

Movants' lack of standing is dispositive: Where a court finds that a movant lacks standing, it may deny intervention without separately considering whether the movant's intervention satisfies Rule 24. *See, e.g.*, *Yocha Dehe*, 3 F.4th at 431; *Mayor & City Council of Balt. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 738 F. Supp. 3d 1, 12 (D.D.C. 2024); *Ctr. for Biological Diversity v. Regan*, 539 F. Supp. 3d 136, 145 (D.D.C. 2021); *United States v. Facebook, Inc.*, 456 F. Supp. 3d 105, 114 (D.D.C. 2020); *Signal Peak Energy, LLC v. Haaland*, No. 24-CV-366, 2024 WL 3887386, at *7 (D.D.C. Aug. 21, 2024). Because Movants have no standing, this Court should deny intervention.

### A.    All intervenors must establish standing.

The D.C. Circuit has long required all intervenors to demonstrate Article III standing, including parties seeking to intervene as defendants. *Prince George's County, Maryland*, 348 F.3d

at 1017; *Deustche Bank Nat'l Tr. Co. v. FDIC*, 717 F.3d 189, 193 (D.C. Cir. 2013) (rejecting argument that only parties seeking to intervene as plaintiffs need to demonstrate standing).  The requirement that all intervenors establish Article III standing applies to parties seeking to intervene both as of right and permissively.  *See, e.g.*, *In re Endangered Species*, 704 F.3d at 976 ("[A] movant seeking to intervene as of right must additionally demonstrate Article III standing."); *Keepseagle v. Vilsack*, 307 F.R.D. 233, 246 (D.D.C. 2014) ("Movants' lack of standing renders them ineligible for permissive intervention.").  "[B]ecause a Rule 24 intervenor seeks to participate on an equal footing with the original parties to the suit, he must satisfy the standing requirements imposed on those parties."  *Fund For Animals, Inc.*, 322 F.3d at 732 (quoting *City of Cleveland v. NRC*, 17 F.3d 1515, 1517 (D.C. Cir. 1994)).  The D.C. Circuit has repeatedly reinforced this rule, explaining that "all would-be intervenors must demonstrate Article III standing" because intervenors "become full-blown parties to litigation."  *Old Dominion Elec. Coop. v. FERC*, 892 F.3d 1223, 1232–33 (D.C. Cir. 2018) (citing *Fund for Animals, Inc.*, 322 F.3d at 732–33).

Movants incorrectly argue that recent Supreme Court decisions have undercut this Circuit's rule requiring that all intervenors demonstrate standing.  *See* Mem. 24 (citing *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 663 (2019)); (citing *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020)).  After the Supreme Court's decisions in *Bethune-Hill* and *Little Sisters,* the D.C. Circuit has continued to require all intervenors to demonstrate Article III standing.  *Yocha Dehe*, 3 F.4th at 430–32 (affirming denial of intervention because putative intervenor-defendant lacked Article III standing).  Indeed, this Court has held that this Circuit continues to require intervenors to have standing, even after *Bethune-Hill* and *Little Sisters*.  *See Signal Peak Energy, LLC*, 2024 WL 3887386, at *3–4 (Chutkan, J.).  Citing to Circuit precedent and a law review article, this Court noted that it was bound to the decision latest in time,

which in this case is *Yocha Dehe. Id.* at *4 (citing *Maxwell v. Snow*, 409 F.3d 354, 358 (D.C. Cir. 2005) (noting that even panels of the D.C. Circuit are "bound to follow circuit precedent until it is overruled either by an en banc court or the Supreme Court")); (citing Henry J. Dickman, Note, *Conflicts of Precedent*, 106 Va. L. Rev. 1345, 1392 (2020) ("Both the Supreme Court and court of appeals precedents are vertical with respect to the district court, and thus, the more directly applicable decision binds the district judge.")).

Even absent this Circuit's adherence to its standing rule in *Yocha Dehe* and *Signal Peak Energy, LLC*, the decisions in *Bethune-Hill* or *Little Sisters* do not support Movants' intervention argument.  In *Bethune-Hill*, the Supreme Court held that the Virginia House of Delegates ("House Intervenors"), which had intervened as defendants in proceedings before the lower courts, lacked standing to independently appeal a decision enjoining the State of Virginia, the named defendants, from implementing a redistricting plan where the State of Virginia had declined to appeal.  587 U.S. at 671.  The Eastern District of Virginia district court panel that had granted House Intervenors' motion to intervene below had applied the law of the Fourth Circuit, which did not require House Intervenors to demonstrate standing.  *Id.*  The posture of *Bethune Hill* accordingly did not require the Supreme Court to decide—nor did it decide—whether Rule 24 requires intervenor-defendants to demonstrate standing.  Because the Supreme Court did not reach this question, and because the practice of the Eastern District of Virginia has no bearing on the law of this Circuit, "the Supreme Court's decision in *Virginia House of Delegates v. Bethune-Hill . . .* [did not] obviate the requirement articulated by the D.C. Circuit that a prospective intervenor-defendant must establish Article III standing."  *Red Lake Band of Chippewa Indians v. U.S. Army Corps of Eng'rs*, 338 F.R.D. 1, 4 n.1 (D.D.C. 2021) (requiring putative intervenor to demonstrate Article III standing and rejecting argument that intervenor-standing is no longer required after *Bethune-Hill*).

Contrary to Movants' suggestion, *Little Sisters* also did not overrule this Circuit's rule requiring intervenors to demonstrate standing. *Little Sisters* involved a putative plaintiff-intervenor and did not "address[] whether a putative defendant-intervenor must possess standing." *Las Americas Immigrant Advoc. Ctr. v. U.S. Dep't of Homeland Sec.*, 348 F.R.D. 397, 402 (D.D.C. 2025) (citing *Little Sisters*, 591 U.S. at 674 n.6). Therefore, even after the Supreme Court's decisions in *Bethune-Hill* and *Little Sisters*, this Court "must follow the D.C. Circuit's holding that 'when a party tries to intervene as another defendant,' it is 'required to demonstrate Article III standing.'" *Las Americas Immigrant Advoc. Ctr.*, 348 F.R.D. at 402 (after *Bethune-Hill* and *Little Sisters*, requiring putative intervenor-defendant to demonstrate standing) (quoting *Crossroads*, 788 F.3d at 316).

### B. Movants cannot establish standing.

A putative intervenor establishes standing the same way any party establishes standing: by demonstrating injury-in-fact, causation, and redressability. *See Fund For Animals, Inc.*, 322 F.3d at 732–33 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Where a party seeks to intervene as a defendant, the intervenor-defendant must establish that the "plaintiff seeks relief, which, if granted, would injure the prospective intervenor." *Crossroads*, 788 F.3d at 318. Not just any theoretical injury will suffice to make this showing. Movants must establish concrete, particularized, actual or certainly impending injury that would result if the plaintiff obtained relief. *See Deutsche Bank Nat. Trust Co.*, 717 F.3d at 134 (finding that putative defendant-intervenor lacked standing because harm that would only occur if other contingencies were satisfied in addition to the plaintiff's prevailing was not actual or imminent); *Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317, 1327 (D.C. Cir. 2013) (denying intervention because putative intervenor-defenders' alleged injury did not flow from plaintiffs' requested relief); *cf. Mil. Toxics Project v. E.P.A.*, 146

F.3d 948, 954 (D.C. Cir. 1998) (allowing intervention because intervenor-defendants demonstrated that they "would suffer concrete injury if the court grants the relief the petitioners seek").

Movants argue that they have standing because they "have been directly impacted" by the gender identity guidance and PWFA Rule. Mem. 1. According to Movants, "All this Court needs to find [to conclude that Movants have standing] is that, as objects of EEOC's mandates, Choices and CEA benefit from [Commissioner Samuels's] removal because they 'are the subject of the disputed regulations.'" Mem. 27 (quoting *Fund for Animals, Inc.*, 322 F.3d at 733). Contrary to Movants' suggestion, however, the EEOC's guidance and regulation are not the subject of the present action. This is a narrow case about whether the President can remove EEOC Commissioners at will, and Plaintiff's requested relief all relates to this narrow question. *See generally* Compl. (containing single cause of action for Ultra Vires Action in violation of Title VII). Though there may be circumstances where Movants have standing to challenge actions taken by the Commission, that does not give them standing to seek the removal of Commissioners or to defend removal decisions made by the President. For the reasons set forth below, Movants cannot demonstrate that Plaintiff's requested declaration and injunction would cause them concrete, particularized, and actual or certainly impending injury, and Movants therefore cannot demonstrate standing.

          1.      **Movants cannot establish standing based on speculation that Plaintiff's requested relief will alter the existence or validity of current EEOC guidance.**

Movants cannot establish standing by arguing that, if Commissioner Samuels's term continues, and if she "holds a controlling vote," then "Choices and CEA would remain subject" to

EEOC gender identity guidance and the PWFA rule.  Mem. 26.  Whether Movants are subject to the guidance and Rule is not traceable to Plaintiff's removal or redressable by a favorable decision.

First, Movants cannot establish that Plaintiff's requested declaration and injunction would "cause" them to be subject to the guidance and rule.  *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024) (rejecting theory of causation based on unsupported speculation).[2]  Three members of the Commission, including Commissioner Samuels, voted to publish the gender identity guidance and issue the PWFA Rule in April 2024, before Commissioner Samuels's removal.  Mem. 5–6.  As of the time of this filing, nearly four months after Commissioner Samuels's removal, the guidance and Rule are still in place.  *Id.* 19.  Thus, there is no "line of causation" between Commissioner Samuels's removal and the gender identity guidance and PWFA Rule's status.  *Food & Drug Admin.*, 602 U.S. at 383 (finding that putative intervenor lacked standing).

Additionally, Movants' claim that Commissioner Samuels's vote on the Commission would be "controlling" is speculative and unsupported, especially in light of President Trump's recent nomination of Brittany Panuccio to join Acting Chair Lucas and Commissioner Kotagal on the Commission.  While Movants "object[] to incurring the financial, logistical, reputational, and other costs of changing its policies, processes, training, or monitoring programs to comply with the EEOC mandates," Mem. 8, no such costs are traceable to Plaintiff's requested relief.

Further, Movants' alleged injury from being subject to these requirements is not redressable by any court order in this case, because a ruling on the legality of Commissioner Samuels's removal simply does not, by itself, change the existence or validity of the EEOC's gender identity guidance and PWFA Rule.  Any such change can occur only as a result of a court decision, such as that sought by Movants in *CEA v. EEOC II*, or as a result of the agency's decision to rescind those actions, which would require several steps independent of the result of this litigation.  *See Univ. Med. Ctr. of S. Nevada v. Shalala*, 5 F. Supp. 2d 4, 7 (D.D.C. 1998), *aff'd on other grounds*,

---

[2]  Even if they could, as detailed below in Section II.A, this would not entitle them to intervene.

173 F.3d 438 (D.C. Cir. 1999) (finding no standing where alleged injury was not redressable by the present lawsuit) (internal quotations omitted).

Finally, Movants' "hope" that the EEOC will rescind the gender identity guidance and PWFA Rule if the Court rules for the Defendants in this case is far too speculative. Movants cannot establish standing based on their speculation that a future quorum of the EEOC may possibly vote to rescind the guidance and Rule at some point in the future if Commissioner Samuels does not return to the EEOC. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413 (2013) (rejecting theory of standing "requir[ing] guesswork as to how independent decisionmakers will exercise their judgment").

According to Movants, if this Court grants Plaintiff's requested relief, then "Choices and CEA would remain subject to these harmful mandates, with no recourse outside the courts." Mem. 19. As detailed above, the guidance and rule are, and stand to remain, in place even if Plaintiff's requested relief is granted. And, as Movants point out, they have challenged the gender identity guidance and the PWFA Rule in court by initiating a lawsuit in North Dakota district court. *See generally CEA v. EEOC II* Compl. In that case, which was filed before Commissioner Samuels's removal from the EEOC, CEA sought an order enjoining enforcement of the gender identity guidance and PWFA Rule, based in part on an argument about the constitutionality of the Commission's structure, but did not seek to remove Commissioner Samuels from the EEOC. *See id.* 50–52. That case illustrates the principle that the proper vehicle to challenge the gender identity guidance and PWFA Rule is in a lawsuit directly challenging their enforceability, because any injury from the guidance and rule could be traceable to the challenged action and redressable by a favorable decision. *See Lujan*, 504 U.S. at 560–61. Plaintiff's present lawsuit is not that case.

### 2.    Movants cannot establish standing based on a fear that Plaintiff's requested relief will cause enforcement actions to be brought against them.

Nor can Movants establish standing based on the theory that an order invalidating Commissioner Samuels's removal would cause the EEOC to initiate proceedings against Movants

or their members to enforce the gender identity guidance or PWFA rule.  *See* Mem. 26 (arguing that the invalidation of Commissioner Samuels's removal would cause Movants to face "potential direct regulation through EEOC enforcement proceedings and further litigation and liability") (internal quotation marks omitted); *id.* (arguing that Movants would be injured by plaintiff's requested relief because Commissioner Samuels, if reinstated, would "enforce" the gender identity guidance and PWFA rule).  Within the EEOC, the General Counsel, not the EEOC Commissioners, has the "responsibility for the conduct of litigation."  42 U.S.C. § 2000e-4(b)(1).  Therefore, Commissioner Samuels could not elect to instigate enforcement actions against Movants, even if her requested relief here were granted.  Movants' alleged injury is thus neither traceable to Plaintiff's requested relief nor redressable by a decision in this case.  *See Lujan*, 504 U.S. at 560.

Further, Movants cannot establish "certainly impending" injury based on "guesswork as to how independent decisionmakers will exercise their judgment."  *Murthy v. Missouri,* 603 U.S. 43, 57 (2024) (articulating "bedrock principle that a federal court cannot redress injury that results from the independent action of some third party not before the court") (internal quotation marks omitted).  Movants cannot establish any "actual or imminent, not conjectural or hypothetical" injury based on the threat that the General Counsel, who is not a party to this case, could elect to enforce the gender identity guidance or PWFA rule against them at some time in the future.  *Am. Chemistry Council v. Dep't of Transp.*, 468 F.3d 810, 819 (D.C. Cir. 2006) (holding that the possibility of future injury "fall[s] short of establishing certainly impending dangers" sufficient to establish standing).  And Movants' alleged harm from their efforts to comply with the existing guidance or Rule, Mem. 8, 25–27, does not support their standing argument because they "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."  *Clapper*, 568 U.S. at 416.

### 3. Movants cannot establish standing based on conjecture that Plaintiff's requested relief will lead to agency actions that will affect Movants.

Lastly, Movants cannot establish Article III standing based on their theory that, if this Court invalidates Commissioner Samuels's removal, then Commissioner Samuels "would undo the Acting Chair's initial steps rescinding some parts of the Gender-Identity Mandate."  Mem. 18. Movants identify four actions related to the EEOC's gender identity policies that Acting Chair Lucas has taken since Commissioner Samuels's removal: (1) Acting Chair Lucas "is reviewing" the EEOC's guidance; (2) the EEOC stopped displaying employee pronouns and including a nonbinary gender marker on intake forms; (3) Acting Chair Lucas announced that the EEOC would prioritize "defend[ing] the biological and binary reality of sex and related rights"; and (4) the EEOC moved to dismiss six cases enforcing its gender identity guidance.  Mem. 14–15.  Per Movants, were this Court to grant Commissioner Samuels's requested relief, she would cast the controlling vote to "undo" these steps by Acting Chair Lucas.  Mem. 26.

This unsupported speculation is insufficient to confer Article III standing.  The "undoing" of any of these four actions would not constitute injury in fact to Movants.  Announcements of EEOC priorities, the EEOC's dismissal of actions involving other parties, whether Acting Chair Lucas reviews EEOC guidance, and whether the EEOC displays employee pronouns or includes nonbinary gender markers on intake forms have no concrete effect on Movants or their legal interests. *See Lujan*, 504 U.S. at 560.  Further, none of these actions were the result of Commission votes, nor could they be undone by a Commission vote if Commissioner Samuels's removal were invalidated.  Because Commissioner Samuels does not have the authority to "undo" any of these actions even should her requested relief be granted, Movants cannot establish causation or redressability. *See Deutsche Bank Nat. Tr. Co*., 717 F.3d at 193.

13

## II.    Movants are not entitled to intervention as of right.

Movants are not entitled to intervene as of right because they lack standing.    But additionally, they fail to show that they meet the requirements for intervention as of right.    To intervene under Rule 24(a), Movants must show, on timely motion, (1) a significantly protectable interest in this action; (2) that the disposition of this action will impair their ability to protect any significantly protectable interest; and (3) that their interests are inadequately represented by the parties to this litigation.    *See* Fed. R. Civ. P. 24(a); *Fund for Animals, Inc.,* 322 F.3d at 731 (detailing Rule 24(a) factors).

As a threshold matter, Movants' lack of standing means that they also cannot satisfy the first and second Rule 24(a) factors and demonstrate either that they have a significantly protectable interest or that that interest stands to be impaired by this action.    *See Ctr. for Biological Diversity v. U.S. E.P.A.*, 274 F.R.D. 305, 312 (D.D.C. 2011) (declining to separately consider Rule 24 factors after finding that intervenors lack standing and noting that "much of the standing analysis above also applies to the question of whether movants have a protectable interest in the outcome of this action within the meaning of Rule 24(a)(2)"); *In re Endangered Species*, 270 F.R.D. at 5 (finding that movants lacked a legally protectable interest in the court's judgment for "the same reasons" they lacked standing).    Even were this Court to consider Movants' Rule 24 interests separately from its standing analysis, Movants cannot show that they have a significantly protectable interest that the resolution of this dispute would impair, or that Defendants cannot adequately represent their interests.    The Court should accordingly deny their motion to intervene.

### A.    Movants lack a significantly protectable interest in this action.

Movants fail to identify a particularized interest implicated by this case.    Parties seeking intervention as of right under Rule 24(a) have the burden of showing that they have "an interest

relating to . . . the subject of the action." *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1146 (D.C. Cir. 2009). This demonstration requires more than just a showing of "*any* interest the applicant can put forward." *City of Cleveland*, 17 F.3d at 1517 (emphasis in original). Rather, Movants must show a "legally protectable interest," or an interest "of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment." *In re Endangered Species Act*, 270 F.R.D. at 5 (quoting *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1291–92 (D.C. Cir. 1980)). Movants lack a significantly protectable interest in this litigation because their proffered interests are either overgeneralized or legally unprotected. For these reasons, their motion for intervention by right should be denied.

Movants' alleged interest in "avoiding the mandates issued under [Commissioner Samuels's tenure]," Mem. 19, is too generalized to serve as a basis for a significantly protectable interest. To be protectable by means of intervention, Movants' asserted interest must be "a legal interest as distinguished from interests of a general and indefinite character." *Am. Tel. and Tel. Co.*, 642 F.2d at 1292; *see also Athens Lumber Co. v. Fed. Election Comm'n*, 690 F.2d 1364, 1366 (11th Cir. 1982) (finding that proposed intervenors had failed to demonstrate a legally protectable interest where their interest was a "general concern" shared by "all citizens concerned about the ramifications" of the challenged legislation). To the extent that Movants predicate their proposed intervention upon a desire to "avoid[] the mandates issued under [Commissioner Samuels's] tenure" and prevent Commissioner Samuels from "continu[ing] to impose those mandates," Mem. 19, they fail to distinguish themselves from any employer or employee who has been or stands to be affected by the EEOC's guidance and actions, both those that agree and those who disagree with the Commission's decisions. Put another way, all employers and employees covered by federal antidiscrimination statutes can claim a similar interest in continuing or halting the EEOC's

15

implementation of these statutes to the interest articulated by Movants. The D.C. Circuit has not found that such a generalized interest can serve as the basis for intervention. *See, e.g.*, *Deutsche Bank Nat. Tr. Co.*, 717 F.3d at 194–95 (explaining, for example, that the court would "be quite hesitant to suggest that a creditor's general economic interest in receivership funds, even if sufficient to support Article III standing, would necessarily be an interest relating to any action that threatens those funds").

Movants' additional asserted interest in this case because "CEA supports the President's authority to remove Samuels" fares even less well because that putative interest is not legally protected. Mem. 19. Movants argue that a "'public interest group' like CEA 'is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported.'" *Id.* (quoting *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995)). They then state that "CEA brought claims to vindicate the President's authority to remove EEOC commissioners" in the District of North Dakota litigation and "an adverse ruling" in this case could affect that case. Mem. 19. The *Babbitt* decision on which Movants rely for this proposition is factually and legally distinguishable from the case at hand. *Babbitt* dealt with a direct challenge to a federal agency's final rule listing a species of snail as endangered based on alleged procedural defects with the rulemaking process. *Id.* Proposed intervenors, who were conservation groups, had directly participated in the development of the final rule. *Id.* And *Babbitt* did not involve the issue of the removability of an agency leader. Moreover, in the litigation in the District of North Dakota, CEA raises the constitutionality of the EEOC's removal statute as a means to challenge the EEOC's decisions, not to seek the removal of any EEOC Commissioner. This approach is consistent with how the Supreme Court and lower courts have handled cases where a party sought to challenge an agency decision in part on the basis that a removal statute was unconstitutional.

For example, in *Collins v. Yellen*, 594 U.S. 220 (2021), the Supreme Court held that the structure of the Federal Housing Finance Agency ("FHFA"), an independent agency led by a single director who was removable only by cause, was unconstitutional because it only had a single director. *Id.* at 250–51 (2021). The potential relief the plaintiff was then entitled to was not to have the FHFA director removed, but to have the agency actions that affected the plaintiffs rescinded. *Id.* at 259–60.

While Movants may have a legally cognizable interest in challenging the decisions made by Commissioner Samuels and other EEOC Commissioners and, under certain circumstances, can argue that the decisions should be rescinded because a removal provision is unconstitutional, they have no interest in Commissioner Samuels's removability that qualifies as a legally protectable interest in this action.

### B.    Movants fail to demonstrate that their interests would be impaired by the Court's disposition of this action absent their intervention.

Even were Movants to have a significantly protectable interest in actions taken by the EEOC during Commissioner Samuels's tenure, they point to only speculative threats to their interests as a result of the disposition of this action. To support a motion for intervention, Movants' asserted interests must be real, such that Movants "will either gain or lose by the *direct* legal operation and effect of the judgment." *Am. Tel. & Tel. Co.*, 642 F.2d at 1291–92 (emphasis added). Accordingly, it is not enough to support intervention to "speculate that the resolution of this action many [sic] impact" Movants or result in the maintenance of regulations with which they take issue. *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 340 F.3d 1, 5 (D.D.C. 2021); *see also United States v. Alisal Water Corp.*, 370 F.3d 915, 920 (9th Cir. 2004) (noting that, to support

intervention, an interest cannot be "several degrees removed . . . from the backbone of th[e] litigation").[3]

Applying this principle, this Court denied intervention to a California water district that sought to intervene in litigation over the U.S. Fish and Wildlife Service's classification of a fish species as endangered. *Ctr. for Biological Diversity*, 340 F.3d at 5. This Court found that, because whether a decision upholding the endangered classification would subject the water district to additional regulatory restrictions was "speculative at this juncture," the proposed intervenors had "failed to demonstrate a legally protectable interest." *Id.*; *see also Ctr. for Food Safety v. U.S. E.P.A.*, No. CV 23-1633 (CKK), 2024 WL 1299338, at *8 (D.D.C. Mar. 26, 2024) (finding that proposed intervenors' claimed interests were too "speculative" because "if Plaintiffs were to succeed on their claims, there is no trigger that would immediately" affect their claimed interests).

Movants similarly articulate only speculative threats to their purported interests as a result of this action. Movants assert that, if Commissioner Samuels prevails in this action, they will "lose all *hope* of EEOC voluntarily rescinding" the gender identity guidance and PWFA Rule, and that, if Defendants instead prevail, the "EEOC *may* rescind both mandates when it regains a quorum." Mem. 19 (emphasis added). But Movants do not, and cannot, allege with certainty that either of these outcomes will occur. The EEOC's future actions hinge not on the outcome of this litigation but on, amongst other variables, the makeup and voting decisions of its multi-member Commission. *See Pub. Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 205–06 (1st Cir. 1998) (denying

---

[3] Movants' citation to *Foster v. Gueory*, 655 F.2d 1319, 1325 (D.C. Cir. 1981), for the proposition that the mere "possibility" of impairment of an interest is sufficient to support intervention is unavailing. Mem. 19. *Foster* was a discrimination suit in which there was a "possibility" that intervenors' legal interests could be decided "by the principle of stare decisis" should plaintiffs' case result in a determination that certain of the practices that had affected both plaintiffs and intervenors did not violate Title VII or Section 1981 as a matter of law. *Id.* Here, by contrast, the resolution of Commissioner Samuels's claims related to her unlawful removal has no possibility of deciding Movants' asserted legal interests in EEOC actions through *stare decisis*.

motion to intervene where the potential effects that proposed intervenors asserted were "fatally contingent" because they depended on "the interaction of [several] variables" separate from the outcome of the litigation).  And, in any event, as detailed in Section I.B.1, the EEOC will not take any actions related to the gender identity guidance or PWFA rule as the "direct . . . operation and effect of [a] judgment" in this case.  *Am. Tel. & Tel. Co.*, 642 F.2d at 1291–92.  Instead, the requested relief that would flow directly from this litigation all pertains to Commissioner Samuels's unlawful removal and reestablishing her continued tenure on the Commission.  *See* Compl. 14–15.

Movants' separate assertion that this litigation will impair their interest in "the President's authority to remove Samuels" also fails.  In *CEA v. EEOC II*, Movants assert that the "EEOC's organizational structure violates Article II of the Constitution" because the President must have authority to remove EEOC Commissioners.  *CEA v. EEOC II* Compl. 35–50.  They make this assertion as one of their seven counts, multiple of which are multipart, independently challenging the lawfulness of the gender identity guidance and PWFA Rule.  *Id.*  Movants assert that they have an interest in this litigation because an adverse ruling here could "nullif[y]" their efforts to vindicate the President's authority to remove EEOC Commissioners in *CEA v. EEOC II*, but their reliance on *Natural Resources Defense Council, Inc. v. United States Environmental Protection Agency*, 99 F.R.D. 607, 609 (D.D.C. 1983), is misplaced.  Mem. 19.

In *Natural Resources Defense Council*, intervenors were pesticide manufacturers and pesticide industry representatives who sought to intervene in a challenge to Environmental Protection Agency processes that had preliminarily determined that intervenors' pesticide products were sufficiently safe that they merited continued registration for use.  99 F.R.D. at 609.  This Court determined that the intervenors had an interest in their products' continued registration for

use and that the litigation stood to nullify this interest, because it could result in a determination

that their products were too dangerous and should not be registered for use. *Id.* Here, by contrast,

the interest that Movants assert in *CEA v. EEOC II* is in the lawfulness of the challenged EEOC

actions; the President's authority to remove EEOC Commissioners is one of many claims alleged

in furtherance of this interest, but it is not itself the interest of Movants. Accordingly, a decision

in this litigation declaring President Trump's removal of Commissioner Samuels unlawful will in

no way "nullify" Movants' ability to pursue their interest in challenging the EEOC actions at issue

in *CEA v. EEOC II* as unlawful.

Because Movants cannot carry their burden of showing how an adverse outcome in this

litigation would impair their proffered interests, this Court should deny intervention of right.

### C.    Movants cannot show that Defendants inadequately represent their interests.

Movants also fail to show that Defendants cannot represent their interests. Even though

the standard for satisfying the fourth element of intervention as of right is lenient, "the moving

party still bears the burden of showing that representation may be inadequate." *Env't Def. Fund,*

*Inc. v. Costle*, 79 F.R.D. 235, 242 (D.D.C. 1978), *aff'd*, (D.C. Cir. July 31, 1978) (denying

intervention in part upon finding that movants failed to meet burden of demonstrating inadequate

representation) (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)).

Movants are unable to meet that burden here.

As an initial matter, Movants cannot meet this burden because, as detailed above in Section

II.B, they have no protectable interest here that could practically be impaired by the Court's

disposition of this action. Rule 24(a)(2) allows "intervention to those who bear an interest that

may be practically impaired or impeded unless existing parties adequately represent *that same*

*interest*." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 181 (2022) (cleaned up)

20

(emphasis added); *see also* Fed. R. Civ. P. 24(a)(2) (permitting intervention to movants with an interest relating to the subject of the action that may practically be impaired by the disposition of the action "unless existing parties adequately represent *that interest*") (emphasis added).  Because Movants lack a qualifying interest, they cannot meet their burden to demonstrate that existing parties fail to adequately represent any qualifying interest.

But even if this Court finds that Movants do articulate some protectable interest that could be impaired by the disposition of this action, their interest in the outcome of this action is identical to Defendants' interest.  When considering whether Movants' interests are adequately represented by Defendants, the relevant focus is Movants' interests in the outcome of this action.  Different interests between putative intervenors and defendants "do[] not necessarily show inadequacy, if they both seek the same outcome."  *Nuesse v. Camp*, 385 F.2d 694, 703 (D.C. Cir. 1967) (holding representation inadequate where parties may seek different litigation outcomes). Therefore, Movants' claim that their interests and Defendants' interests might diverge in the future, Mem. 22, does not establish that Defendants would inadequately support their interests in this lawsuit, unless Movants seek different relief from Defendants.  *See Atl. Refinishing & Restoration, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 272 F.R.D. 26, 30 (D.D.C. 2010) (noting that "a presumption of adequate representative exists if both the movant and the existing party have the same ultimate objective") (citing 6 Fed. Prac. 3 § 24.03).

Even if Defendants do not share Movants' "specific, unique, pro-life, and religious interests," Mem. 22, Defendants adequately represent Movants' interests in this action because they are aligned on the only issue before the Court, whether this Court should uphold President Trump's removal of Commissioner Samuels. Therefore, to establish that Defendants' representation is inadequate, it is insufficient that Movants claim different interests than

21

Defendants.  Rather, Movants must show that "any difference exists between their interest and that of the government in seeing the challenged actions upheld."  *Humane Soc. of U.S. v. Clark*, 109 F.R.D. 518, 520 (D.D.C. 1985) (finding that movants fail to meet "minimal" burden of showing inadequate representation).

For example, in *Securities and Exchange Commission v. Dresser Industries, Inc.*, where a corporation challenged the enforceability of a subpoena from the Securities and Exchange Commission ("SEC"), the D.C. Circuit affirmed the denial of an intervention motion by employees of the corporation, even after acknowledging that the employees' alleged interests unique from the corporation, such as confidentiality interests and interests implicating their attorney-client privilege.  628 F.2d 1368, 1390 (D.C. Cir. 1980).  The court reasoned that the question before the court was the enforceability of the SEC subpoena, not confidentiality or privilege pertaining to individual documents.  *Id.*  As such, the employees "asserted no cognizable interest" in the present proceedings," and the corporation adequately represented its employees concerning the question actually before the court, the enforceability of the subpoena.  *Id.*

Here, Movants and Defendants are aligned on the issue before the Court and seek the same relief, as the Movants have conceded.  *See* Mem. 23 (stating that Movants' requested relief is "largely identical" to the government's).  Given the narrowness of the single issue presented in this case, there are two possible outcomes: an order finding that the President has the legal authority to remove Commissioner Samuels, or an order finding that he does not.  Movants and Defendants both seek an order that the President has such authority.  Because they seek an identical outcome, Defendants adequately represent Movants regarding the issue before the Court.  *Dresser Industries,* 628 F.2d at 1390.

Contrary to Movants' suggestion, CEA's litigation against the EEOC in a separate case does not establish that Defendants cannot adequately represent Movants' interests in the present case. Mem. 21. Courts determine adequacy of representation not by considering the universe of interactions between the putative intervenors and existing parties, but by making a "discriminating appraisal of the circumstances of the particular case." *Costle*, 561 F.2d at 913 (quoting 7A Wright & Miller, Federal Practice and Procedure, § 1909 at 533); *see also Doe 1 v. Fed. Election Comm'n*, No. CV 17-2694 (ABJ), 2018 WL 2561043, at *5 (D.D.C. Jan. 31, 2018) ("'Adequacy of representation must be assessed in relation to the specific purpose that intervention will serve' *in the specific case at hand*.") (emphasis added) (quoting *United States v. AT&T*, 642 F.2d 1285, 1293 (D.C. Cir. 1980)). An alternative rule would allow a putative intervenor to ensure inadequacy of representation in any given case by simply bringing separate actions against the parties.

Finally, the Trump Administration has vigorously defended presidential removal authority in several cases brought by heads of independent agencies removed by President Trump. *Dellinger v. Bessent*, 2025 WL 887518 (D.C. Cir. Mar. 10, 2025) (defense of removal of Special Counsel of the Office of Special Counsel); *Harris v. Bessent*, 2025 WL 679303 (D.D.C. Mar. 4, 2025) (defense of removal of member of Merit Systems Protection Board); *Wilcox v. Trump*, 2025 WL 720914 (D.D.C. Mar. 7, 2025) (defense of removal of member of the National Labor Relations Board); *Grundmann v. Trump*, 2025 WL 782665 (D.D.C. Mar. 12, 2025) (defense of removal of member of the Federal Labor Relations Authority). There is no indication that the Defendants will not also vigorously defend the President's removal authority in this case.

### III.    Movants are not entitled to permissive intervention.

This Court should also deny Movants' alternative request for permissive intervention under Rule 24(b). Movants are not entitled to permissive intervention because, as detailed in Section I.B

above, they cannot establish standing. *Keepseagle*, 307 F.R.D. at 246 ("Movants' lack of standing renders them ineligible for permissive intervention."). But even if this Court were to conclude that standing is not required, permissive intervention would still be inappropriate.

"Courts have 'wide latitude' in exercising their discretion to allow or deny permissive intervention." *D.C. v. Potomac Elec. Power Co.*, 826 F. Supp. 2d 227, 236 (D.D.C. 2011) (noting that courts can deny permissive intervention even where an applicant has met all the Rule 24(b) factors). In deciding whether to grant a motion for permissive intervention, a court considers whether the intervention would "unduly delay or prejudice the adjudication of the original parties' interests." Fed. R. Civ. P. 24(b)(3). Courts also consider "the nature and extent of the applicant's interests, the degree to which those interests are adequately represented by other parties, and whether parties seeking intervention will significantly contribute to . . . the just and equitable adjudication of the legal question presented." *Aristotle Int'l, Inc. V. NGP Software, Inc.*, 714 F. Supp. 2d 1, 18 (D.D.C. 2010) (quotations omitted); *Costle*, 79 F.R.D. at 244.

As detailed above in Sections II.A and II.C, Movants lack a protectable interest in the subject matter of this action, and their interest in defending Commissioner Samuels's removal is adequately represented by Defendants. As a result, Movants would not "significantly contribute to . . . the legal question presented." *Aristotle Int'l, Inc.*, 714 F. Supp. 2d at 18. This Court should deny permissive intervention to avoid "bloating the briefing with layers of tangential issues" regarding the effect of EEOC actions on employers that do not inform the narrow legal question that this case presents. *Scotts Valley Band of Pomo Indians v. Douglas Burgum*, No. 1:25-CV-00958, 2025 WL 1178598, at *11 (D.D.C. Apr. 23, 2025).

Additional considerations also militate against granting Movants' motion for permissive intervention. First, as discussed, virtually all employers and employees could assert the same

interests in this litigation—support or opposition to EEOC actions—that Movants articulate. Accordingly, granting Movants' motion would open up this action to a parade of intervenors, inviting "a web of unnecessary legal problems" and setting the stage for unwieldy litigation in any case involving removal of government officials. *Scotts Valley Band of Pomo Indians*, 2025 WL 1178598, at *11. Moreover, Movants do not articulate any legal issues, positions, or expertise that they would bring to bear on the legal question at issue in this matter. *Costle*, 79 F.R.D. at 244 (denying permissive intervention based on determination that views expressed by proposed intervenors "were unlikely to be helpful . . . in the resolution of this matter" because proposed intervenors had not indicated how they would supplement existing parties' briefing).

Nonetheless, to the extent it would help the Court to hear from employers who claim a benefit from Commissioner Samuels's removal, the more appropriate vehicle for Movants to present this information is in an amicus brief. *See Sweet Home Chapter of Communities For Great Or. v. Lujan*, No. CIV. A. 91-1468, 1991 WL 277331, at *4 (D.D.C. Dec. 10, 1991) (explaining that an intervenors' input may be "adequately received through the timely filing of amicus briefs"). This Court has "broad discretion" to permit a party to participate in this suit as an amicus curiae, *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 519 F. Supp. 2d 89, 93 (D.D.C. 2007), and courts commonly permit movants to file an amicus brief in an action after denying their motion to intervene as parties, *see, e.g.*, *Old Dominion Elec. Coop.*, 892 F.3d at 1226; *Nat''l Ass'n of Home Builders*, 519 F. Supp. 2d at 93; *Signal Peak Energy, LLC*, 2024 WL 3887386, at *7.

## CONCLUSION

For these reasons, pursuant to Rule 24(a) and Rule 24(b), the Court should deny Choices and CEA's motion to intervene.

DATE:  May 15, 2025                 Respectfully submitted,


/s/ Lisa J. Banks

Lisa J. Banks (D.C. Bar No. 470948)
Carolyn L. Wheeler (D.C. Bar No. 1028645)
Bonnie L. Henry (D.C. Bar No. 1780382)
Marilyn Gabriela Robb (D.C. Bar No. 1686757)
**KATZ BANKS KUMIN LLP**
11 Dupont Circle, NW
Washington, D.C. 20036
(202) 299-1140
Banks@katzbanks.com
Wheeler@katzbanks.com
Henry@katzbanks.com
Robb@katzbanks.com


Victoria S. Nugent (D.C. Bar No. 470800)
**DEMOCRACY FORWARD FOUNDATION**
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
vnugent@democracyforward.org


Jon M. Greenbaum (D.C. Bar No. 489887)
**JUSTICE LEGAL STRATEGIES PLLC**
P.O. Box 27015
Washington, D.C. 20038
(202) 601-8678
jgreenbaum@justicels.com


*Attorneys for Plaintiff Jocelyn Samuels*

**CERTIFICATE OF SERVICE**

I hereby certify that, on May 15, 2025, I caused the foregoing opposition to be filed with the Clerk of the Court for the United States District Court for the District of Columbia using the Court's CM/ECF system.  Participants in the case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

May 15, 2025

/s/ Lisa J. Banks
Lisa J. Banks (D.C. Bar No. 470948)
**KATZ BANKS KUMIN LLP**
11 Dupont Circle, NW
Washington, D.C. 20036
(202) 299-1140
Banks@katzbanks.com