**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOCELYN SAMUELS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 25-1069 (TSC) |
| | ) |
| DONALD J. TRUMP, in his Official | ) |
| Capacity as President of the | ) |
| United States, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 3

    I.     Statutory and Regulatory Background ................................................................... 3

          A.    The EEOC's Structure ............................................................................. 3

          B.    The EEOC's Authority in Implementing Federal Employment
               Discrimination Laws ............................................................................... 4

    II.    Plaintiff's Complaint ........................................................................................... 11

LEGAL STANDARD ........................................................................................................ 12

ARGUMENT ..................................................................................................................... 13

    I.     Title VII Empowers the President to Remove EEOC Commissioners at Will..... 14

          A.    The Text of Title VII Contains No Removal Protections for EEOC
               Commissioners............................................................................................ 14

          B.    Plaintiff's Assertion that the EEOC's Structure and Function Necessitate
               Reading Atextual Removal Restrictions into the Statute Is Incorrect ...... 16

          C.    The Court Should Reject Plaintiff's Statutory Interpretation Under the
               Constitutional Avoidance Canon ............................................................... 24

    II.    The Removal Restrictions Plaintiff Seeks to Read Into Title VII Would Be
           Unconstitutional.................................................................................................... 24

    III.   Plaintiff Lacks a Cause of Action ....................................................................... 32

CONCLUSION.................................................................................................................... 33

# TABLE OF AUTHORITIES

**Cases**

*Advocate Christ Med. Ctr. v. Kennedy*,
   145 S. Ct. 1262 (2025) ........................................................................................... 20

*Alexander v. Sandoval*,
   532 U.S. 275 (2001) ................................................................................................. 32

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................. 13

*Bartenwerfer v. Buckley*,
   598 U.S. 69 (2023) ................................................................................................... 20

*Bhd. of Ry. & Steamship Clerks v. Ass'n for Benefit of Non-Contract Emps.*,
   380 U.S. 650 (1965) ................................................................................................. 32

*Bowsher v. Synar*,
   478 U.S. 714 (1986) ................................................................................................. 30

*City of Arlington v. FCC*,
   569 U.S. 290 (2013) ........................................................................................... 23, 29

* *Collins v. Yellen*,
   594 U.S. 220 (2021) .......................................................................................... *passim*

*Edmond v. United States*,
   520 U.S. 651 (1997) ................................................................................................. 27

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
   561 U.S. 477 (2010) ........................................................................................... 25, 26

*Gustave-Schmidt v. Chao*,
   226 F. Supp. 2d 191 (D.D.C. 2002) ........................................................................ 13

*Harrington v. DC Winery, LLC*,
   No. 1:22-cv-689-TSC, 2023 WL 5561604 (D.D.C. Aug. 29, 2023) .................. 12-13

*Humphrey's Executor v. United States*,
   295 U.S. 602 (1935) ................................................................................................. 26

*In re Hennen*,
   38 U.S. 230 (1839) ............................................................................................ 14, 17

*Jud. Watch v. U.S. Secret Serv.*,
  726 F.3d 208 (D.C. Cir. 2013) ........................................................................ 24

\* *Kennedy v. Braidwood Mgmt., Inc.*,
  606 U.S. --- (June 27, 2025) .......................................................... 17, 18, 20, 27

\* *Myers v. United States*,
  272 U.S. 52 (1926) .................................................................................. 1, 14, 25

*Nuclear Regul. Comm'n v. Texas*,
  605 U.S. ___, 2025 WL 1698781 (June 18, 2025) ..................................... 14, 32, 33

*Nyunt v. Chairman, Broad. Bd. of Governors*,
  589 F.3d 445 (D.C. Cir. 2009) ................................................................... 14, 32

*P.J.E.S. ex rel. Escobar Francisco v. Wolf*,
  502 F. Supp. 3d 492 (D.D.C. 2020) ................................................................. 20

*Parsons v. United States*,
  167 U.S. 324 (1897) ........................................................................................ 15

*Pharm. Rsch. & Mfrs. of Am. v. HHS*,
  43 F. Supp. 3d 28 (D.D.C. 2014) ...................................................................... 3

*Pub. Citizen v. U.S. Dep't of Just.*,
  491 U.S. 440 (1989) ........................................................................................ 24

\* *Seila Law LLC v. CFPB*,
  591 U.S. 197 (2020) .................................................................................. *passim*

\* *Severino v. Biden*,
  71 F.4th 1038 (D.C. Cir. 2023) .................................................................. *passim*

*Shurtleff v. United States*,
  189 U.S. 311 (1903) ....................................................................... 14, 16, 17, 24

*Smith v. Clinton*,
  253 F. Supp. 3d 222 (D.D.C. 2017),
  *aff'd, 886* F.3d 122 (D.C. Cir. 2018) .......................................................... 3, 13

\* *Trump v. Wilcox*,
  145 S. Ct. 1415 (2025) .............................................................................. *passim*

*Wiener v. United States*,
  357 U.S. 349 (1958) ........................................................................................ 16

*Ysleta Del Sur Pueblo v. Texas*,
  596 U.S. 685 (2022) ............................................................................................ 20

**U.S. Constitution**

U.S. Const. art. II, § 1, cl. 1 ................................................................ 23, 24, 26, 29

U.S. Const. art. II, § 3 .................................................................................... 24, 26

**Statutes**

5 U.S.C. § 105 ......................................................................................................... 30

5 U.S.C. § 595(b) .................................................................................................... 20

5 U.S.C. § 1202(d) ............................................................................................ 19, 30

5 U.S.C. § 1204 ....................................................................................................... 31

7 U.S.C. § 2 ............................................................................................................. 19

12 U.S.C. § 1752a .................................................................................................... 19

12 U.S.C. § 2242 ..................................................................................................... 19

29 U.S.C. §§ 151-169 .............................................................................................. 31

29 U.S.C. § 153(a) ....................................................................................... 4, 15, 30

29 U.S.C. § 156 ................................................................................................... 31-32

29 U.S.C. § 160 .................................................................................................. 31, 32

29 U.S.C. § 161 ............................................................................................. 6, 27, 31

29 U.S.C. § 206 ......................................................................................................... 9

29 U.S.C. § 623 ......................................................................................................... 5

29 U.S.C. § 626 ............................................................................................. 4, 5, 9, 31

29 U.S.C. § 628 ....................................................................................................... 30

29 U.S.C. § 791 ......................................................................................................... 4

42 U.S.C. § 1981a .................................................................................................. 6, 9

42 U.S.C. § 2000e ............................................................................................................. 3

42 U.S.C. § 2000e-2(a)(1) ................................................................................................ 5

42 U.S.C. § 2000e-3 .......................................................................................................... 5

* 42 U.S.C. § 2000e-4 .............................................................................................. *passim*

* 42 U.S.C. § 2000e-5 .............................................................................................. *passim*

42 U.S.C. § 2000e-8 ............................................................................................. 6, 21, 27

42 U.S.C. § 2000e-9 ............................................................................................. 6, 27, 31

42 U.S.C. § 2000e-10(a) ................................................................................................ 10

42 U.S.C. § 2000e-12(a) ................................................................................. 10, 23, 30

42 U.S.C. § 2000e-14 ...................................................................................................... 21

* 42 U.S.C. § 2000e-16 ........................................................................................... *passim*

42 U.S.C. § 2000e-16a ...................................................................................................... 9

42 U.S.C. § 2000e-16c ...................................................................................... 4, 5, 9, 21

42 U.S.C. § 2000ff-1 ......................................................................................................... 5

42 U.S.C. § 2000ff-6 ......................................................................................................... 4

42 U.S.C. § 2000gg-2 ........................................................................................................ 4

42 U.S.C. § 2000gg-3 ...................................................................................................... 30

42 U.S.C. § 2286 .............................................................................................................. 19

42 U.S.C. § 7171(b)(1) .................................................................................................... 19

42 U.S.C. § 12112 .............................................................................................................. 5

42 U.S.C. § 12116 ................................................................................................ 10, 30, 32

42 U.S.C. § 12117 .................................................................................................. 4, 5, 31

49 U.S.C. § 1301(b)(3) .................................................................................................... 19

Civil Rights Act of 1964, Pub. L. No. 88-352, 78 Stat. 241,
*codified at* 42 U.S.C. § 2000e, *et seq.* .............................................................. 3, 18

Reorganization Plan No. 1 of 1978, 92 Stat. 3781.................................................... 4, 9

**Rules**

Fed. R. Civ. P. 65 ....................................................................................................... 6

**Regulations**

29 C.F.R. pt. 1603 ...................................................................................................... 9

29 C.F.R. pt. 1605 ...................................................................................................... 10

29 C.F.R. pts. 1600-1608 ........................................................................................... 10

29 C.F.R. pts. 1610-1612 ........................................................................................... 10

29 C.F.R. pts. 1614-1615 ........................................................................................... 10

29 C.F.R. pts. 1620-1621 ........................................................................................... 10

29 C.F.R. pts. 1625-1627 ........................................................................................... 10

29 C.F.R. pt. 1630 ...................................................................................................... 10, 30

29 C.F.R. pt. 1635-1636 .............................................................................................. 10, 30

29 C.F.R. pt. 1640-1641 .............................................................................................. 10

29 C.F.R. pt. 1650 ...................................................................................................... 10

29 C.F.R. pt. 1660-91 .................................................................................................. 10

29 C.F.R. pt. 1695 ...................................................................................................... 10

29 C.F.R. § 1601.16(d) ............................................................................................... 27

29 C.F.R. § 1614.102 .................................................................................................. 21

29 C.F.R. § 1614.105(a) ............................................................................................. 7

29 C.F.R. § 1614.106(a) ............................................................................................. 7

29 C.F.R. § 1614.106(e)(2) ........................................................................................ 7

29 C.F.R. § 1614.107 ................................................................................................. 7

29 C.F.R. § 1614.108 ................................................................................................. 7

29 C.F.R. § 1614.109 ................................................................................................. 7

29 C.F.R. § 1614.110(a) ............................................................................................. 7

29 C.F.R. § 1614.302 ............................................................................................... 31

29 C.F.R. § 1614.405(a) ............................................................................................. 7

29 C.F.R. § 1614.501 ........................................................................................... 8, 29

29 C.F.R. § 1614.502(a) ....................................................................................... 8, 27

29 C.F.R. § 1614.503 ............................................................................................... 27

**Executive Orders**

Ending Radical and Wasteful Government DEI Programs and Preferencing,
    Exec. Order No. 14,151, 90 Fed. Reg. 8339 (2025) ................................................ 25

Gender Ideology Extremism and Restoring Biological Truth to the Federal Government,
    Exec. Order No. 14,168, 90 Fed. Reg. 8615 (2025) ................................................ 25

**Other Authorities**

Department of Education, Office for Civil Rights (OCR), https://www.ed.gov/about-ed-
    offices/ocr (last visited June 26, 2025) ..................................................................... 22

Department of Health and Human Services, Office for Civil Rights, About Us,
    https://www.hhs.gov/ocr/about-us/index.html (last visited June 26, 2025) .............. 22

Department of Housing and Urban Development, Office of Fair Housing and Equal Opportunity,
    https://www.hud.gov/stat/fheo/rights-obligations (last visited June 26, 2025) ......... 22

Department of Justice, Civil Rights Division, *Laws We Enforce*,
    https://www.justice.gov/crt/laws-we-enforce (last visited June 26, 2025) ................. 9

Department of Justice, Civil Rights Division, https://www.justice.gov/crt (last visited June 26,
    2025) ........................................................................................................................... 22

Department of Labor, Civil Rights Center, About Us,
    https://www.dol.gov/agencies/oasam/centers-offices/civil-rights-center/about  (last visited
    June 26, 2025) ............................................................................................................. 22

EEOC, *Coverage of State and Local Governments*, https://www.eeoc.gov/employers/coverage-state-and-local-governments (last visited June 26, 2025) ........................................................ 9

EEOC, *EEOC Field Offices*, https://www.eeoc.gov/field-office (last visited June 26, 2025) ....... 3

EEOC, EEOC Office of General Counsel Litigation Services to the Public § A.2 (May 21, 2024), https://www.eeoc.gov/eeoc-office-general-counsel-litigation-services-public, ............... 6, 27-28

EEOC, *EEOC Organizational Structure* (2024), https://www.eeoc.gov/eeoc-organizational-structure (last visited June 26, 2025) ......................................................................................... 27

EEOC, *Equal Employment Opportunity Laws*, https://www.eeoc.gov/equal-employment-opportunity-laws (last visited June 26, 2025) ............................................................................ 4

EEOC, Federal Sector Management Directive, Chapter 4: Procedures for Related Processes, https://www.eeoc.gov/federal-sector/management-directive/chapter-4-procedures-related-processes (last visited June 26, 2025) .................................................................................... 31

EEOC, Fiscal Year 2024 Annual Performance Report 5 (Jan. 17, 2025), https://www.eeoc.gov/sites/default/files/2025-01/24-126_EEOC_2024_APR_508_1.16.25_508.pdf ......................................................... 11, 27, 28

EEOC, *"Know Your Rights: Workplace Discrimination is Illegal" Poster*, https://www.eeoc.gov/poster (last visited June 26, 2025)...................................................... 10

EEOC Training Institute, https://eeotraining.eeoc.gov/profile/web/index.cfm?PKwebID=0x2547fa13 (last visited June 26, 2025)................................................................................................................................. 10

NLRB, *What We Do: Facilitate Settlements*, https://www.nlrb.gov/about-nlrb/what-we-do/facilitate-settlements (last visited June 26, 2025) ............................................................... 32

## INTRODUCTION

As a Commissioner of the Equal Employment Opportunity Commission ("EEOC"), Plaintiff Jocelyn Samuels was a principal officer in the Executive Branch, charged with investigating and enforcing violations of — that is, executing — our nation's employment discrimination laws. After she openly disagreed with the President's policies on how to execute those laws, the President removed her. She claims that her removal was unlawful and asks this Court to reinstate her so that she can continue to exercise the executive power against the will of the President. EEOC's authorizing statute does not contain any provision protecting her from removal, but she insists that this Court should supply a for-cause removal restriction that Congress did not enact. That is not how our constitutional system works. Congress did not enact any legislative text protecting EEOC commissioners from removal. And even if Congress had purported to protect a principal officer from removal with substantial executive authority such as Plaintiff, that would violate Article II of the Constitution, which vests the President with all Executive Power and entrusts him with the sole responsibility to take care that the laws are faithfully executed. The fact that Plaintiff acknowledges that she would actively obstruct and undermine the President from executing the laws in accordance with his Administration's policies underscores the core constitutional flaws with her claims.

President Trump acted within his statutory and constitutional authority when he removed Plaintiff as an EEOC commissioner. The EEOC's authorizing statute empowers the President to appoint EEOC commissioners, with Senate confirmation. 42 U.S.C. § 2000e-4(a). That appointment power carries with it the incident power to remove Board members at will. *See Myers v. United States*, 272 U.S. 52, 126 (1926). "Because of the background presumption that the President may remove anyone he appoints, Congress must make it clear in a statute if it wishes to restrict the President's removal power." *Severino v. Biden*, 71 F.4th 1038, 1044 (D.C. Cir. 2023).

1

Congress did not enact any removal protections for EEOC commissioners, so they are removable at will.  Plaintiff's arguments that the EEOC's structure and function signal that Congress implicitly protected EEOC commissioners from removal are misguided.  Congress has structured numerous other agencies the same way — as a multimember board with partisan balance, staggered terms, and an ability of commissioners or board members to serve for a limited time after their term expires before a replacement is confirmed — "without imposing any restriction on the President's power to remove the agency's leadership."  *Collins v. Yellen*, 594 U.S. 220, 249 (2021).    And nothing about the EEOC's function of implementing federal employment discrimination laws signifies implicit removal protection.

In any event, if Congress had purported to prevent the removal of EEOC commissioners, the statute would be unconstitutional.  "[T]he President's prerogative to remove executive officials" follows from Article II's vesting of "all of" "the 'executive Power'" in the President.  *Seila Law LLC v. CFPB*, 591 U.S. 197, 203, 214 (2020) (quoting U.S. Const, art. II, § 1, cl. 1).  Supreme Court precedent "left in place" just two "exceptions to the President's unrestricted removal power": one clearly inapplicable exception for certain inferior officers, and another for members of "a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power."  *Id.* at 215-16.  The EEOC exercises significant Executive Power, including the power to investigate and enforce employment discrimination laws, to send its own lawyers into court to prosecute civil actions and express the government's legal positions, and to issue orders binding on other federal agencies.  EEOC commissioners therefore fall outside the "narrow exceptions" to the rule that "[b]ecause the Constitution vests the executive power in the President, he may remove without

cause executive officers who exercise that power on his behalf." *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025) (citation omitted).

## BACKGROUND

### I.    Statutory and Regulatory Background

#### A.    The EEOC's Structure

The EEOC is an executive branch agency created by Congress in Title VII of the Civil Rights Act of 1964, Pub. L. No. 88-352, 78 Stat. 241 (1964), *codified at* 42 U.S.C. § 2000e, *et seq.*, that implements a variety of laws protecting private employees, state and local government employees, and federal government employees from discrimination.  To carry out its functions, the EEOC maintains a principal office in the District of Columbia and 53 field offices throughout the country.  42 U.S.C. § 2000e-4(f); EEOC, *EEOC Field Offices*, https://www.eeoc.gov/field-office (last visited June 26, 2025).[1]  The statutes implemented by the EEOC confer upon the agency vast investigative and law enforcement authority, as well as substantial rulemaking and adjudicative authority.

The EEOC is "composed of five members," who "shall be appointed by the President by and with the advice and consent of the Senate."  42 U.S.C. § 2000e-4(a).  No more than three commissioners "shall be members of the same political party."  *Id.*  Commissioners serve "for a term of five years," *id.*, and the terms are staggered, so that one commissioner's term expires each year, *see* Civil Rights Act of 1964, Pub. L. No. 88-352, § 705(a), 78 Stat. 241, 258.  The EEOC's authorizing statute contains a limited holdover clause, empowering commissioners to continue to

---

[1] Courts can "take[] judicial notice of information posted on official public websites of government agencies."  *Pharm. Rsch. & Mfrs. of Am. v. HHS*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014).  On a Rule 12(b)(6) motion to dismiss, the Court may consider "matters about which the Court may take judicial notice."  *Smith v. Clinton*, 253 F. Supp. 3d 222, 234 (D.D.C. 2017) (citation omitted), *aff'd*, 886 F.3d 122 (D.C. Cir. 2018).

serve for a limited time after the expiration of their terms, before a successor is confirmed.[2]  The President designates one commissioner to serve as Chair, who is responsible for administrative operations of the EEOC, and one commissioner to serve as Vice Chair.  42 U.S.C. § 2000e-4(a).  The President also appoints, with the advice and consent of the Senate, a General Counsel of the EEOC, who serves for a term of four years.  *Id.* § 2000e-4(b).  The EEOC's authorizing statute is silent on removal of commissioners.  Unlike other agencies where Congress enacted explicit for-cause removal protections for agency leaders, *see*, *e.g.*, 29 U.S.C. § 153(a) ("Any member of the [National Labor Relations] Board may be removed by the President, upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause."), Congress did not enact any restrictions on removal of EEOC commissioners.

### B.    The EEOC's Authority in Implementing Federal Employment Discrimination Laws

**1.**    The EEOC has authority to implement a wide variety of employment discrimination laws, including Title VII, the Age Discrimination in Employment Act of 1967 (ADEA), Titles I and V of the Americans with Disabilities Act of 1990 (ADA), certain sections of the Rehabilitation Act of 1973, the Government Employee Rights Act of 1991, the Equal Pay Act of 1963, Title II of the Genetic Information Nondiscrimination Act, and the Pregnant Workers Fairness Act (PWFA).  *See*, *e.g.*, 42 U.S.C. § 2000e-5; 29 U.S.C. § 626; 42 U.S.C. § 12117; 29 U.S.C. § 791; 42 U.S.C. § 2000e-16c; 29 U.S.C. 626(b); Reorganization Plan No. 1 of 1978, § 1, 92 Stat. 3781; 42 U.S.C. §§ 2000ff-6, 2000gg-2; *see generally*, EEOC, *Equal Employment Opportunity Laws*, https://www.eeoc.gov/equal-employment-opportunity-laws (last visited June 26, 2025).  Together,

---

[2] The clause provides: "all members of the Commission shall continue to serve until their successors are appointed and qualified, except that no such member of the Commission shall continue to serve (1) for more than sixty days when the Congress is in session unless a nomination to fill such vacancy shall have been submitted to the Senate, or (2) after the adjournment sine die of the session of the Senate in which such nomination was submitted."  42 U.S.C. § 2000e-4(a).

these statutes give the EEOC authority over most private employers with 15 or more employees, most state and local government employers, and federal sector employers. *See*, *e.g.*, 42 U.S.C. §§ 2000e(b), 2000e-16, 2000e-16c. These statutes empower the EEOC to enforce prohibitions on employment discrimination on the basis of race, color, religion, sex, national origin, age, disability, and genetic information as well as reasonable opposition or retaliation related to claims of such discrimination. *Id.* §§ 2000e-2(a)(1), 2000e-3, 2000ff-1(a)(1), 12112; 29 U.S.C. § 623.

Congress conferred on the EEOC significant authority to investigate potential violations of these statutes and enforce these statutes. The EEOC's procedures differ somewhat for private sector employees, federal sector employees, and state and local government employees. *See generally* 42 U.S.C. §§ 2000e-5, 2000e-16. As described below, for private sector employees, the EEOC can enforce most statutes within its purview by pursuing civil litigation in federal district court, whereas it has authority to adjudicate federal sector employment discrimination claims directly, and statutes governing state and local government employees adopt a mix of approaches.

**2.** As a general matter, for private sector employees, "[t]he [EEOC] is empowered . . . to prevent any person from engaging in any unlawful employment practice" under Title VII. *Id.* § 2000e-5(a). Other statutes grant the EEOC similar enforcement authority. *See*, *e.g.*, 29 U.S.C. § 626; 42 U.S.C. § 12117. In most private sector matters, the EEOC's involvement begins when an employee or applicant "claiming to be aggrieved" files a "charge" with the EEOC, "alleging that an employer, employment agency, labor organization, or joint labor-management committee . . . has engaged in an unlawful employment practice." 42 U.S.C. § 2000e-5(b). The EEOC then serves a notice of the charge on the respondent "and shall make an investigation thereof." *Id.* In investigating charges, the EEOC "shall at all reasonable times have access to, for the purposes of examination, and the right to copy any evidence of any of any person being investigated or

proceeded against" relating to the investigation.  *Id.* § 2000e-8(a).  The EEOC has broad authority

to issue subpoenas and to file actions in federal court to enforce those subpoenas.  *See* 42 U.S.C.

§ 2000e-9; 29 U.S.C. § 161; EEOC, EEOC Office of General Counsel Litigation Services to the

Public    § A.2,    https://www.eeoc.gov/eeoc-office-general-counsel-litigation-services-public

(collecting authorities).

       If the EEOC determines after investigation that "there is not reasonable cause to believe

that the charge is true, it shall dismiss the charge and promptly notify" the claimant and respondent.

*Id.* § 2000e-5(b).  But if the EEOC determines after investigation that there is reasonable cause to

believe the charge has merit, it "shall endeavor to eliminate any such alleged unlawful employment

practice by informal methods of conference, conciliation, and persuasion."  *Id.*

       In private sector cases, if such conciliation is unsuccessful, the EEOC "may bring a civil

action against any respondent."  *Id.* § 2000e-5(f)(1).  The EEOC also may seek a temporary

restraining order or preliminary injunction as provided in Federal Rule of Civil Procedure 65.  *See*

*id.* § 2000e-5(f)(2).  If an unlawful employment practice is intentional, the EEOC may ask the

court to issue permanent injunctive relief, including "reinstatement or hiring of employees, with

or without back pay . . . or any other equitable relief as the court deems appropriate," *Id.* § 2000e-

5(g)(1).   The EEOC can also seek compensatory and punitive damages for intentional

discrimination.  *Id.* § 1981a(a).  If a respondent fails to comply with a court order in such a civil

action by the EEOC, the EEOC "may commence proceedings to compel compliance with such

order."  *Id.* § 2000e-5(i).

       **3.**     For federal sector employees, the EEOC "shall have authority to enforce"

prohibitions on employment discrimination by adjudicating such claims and ordering "appropriate

remedies, including reinstatement or hiring of employees with or without back pay."  *Id.* § 2000e-

16(b).  Under regulations promulgated by the EEOC, federal employees or applicants who believe

they have suffered unlawful discrimination must first consult a counselor at the relevant agency

"in order to try to informally resolve the matter."  29 C.F.R. § 1614.105(a).  If counseling is

unsuccessful, the employee or applicant may file a "complaint . . . with the agency that allegedly

discriminated against the complainant."  *Id.* § 1614.106(a).  The agency then must "conduct an

impartial and appropriate investigation of the complaint."  *Id.* § 1614.106(e)(2); *id.* § 1614.108.  If

the agency determines that a complaint fails to state a claim or suffers another legal deficiency, the

agency shall dismiss the complaint.  *Id.* § 1614.107.  If the complainant requests a hearing, the

EEOC names an EEOC administrative judge to conduct a hearing.  *Id.* § 1614.109.  Following

such a hearing, the administrative judge then "shall issue a decision on the complaint, and shall

order appropriate remedies and relief where discrimination is found."  *Id.* § 1614.109(i).

 After the administrative judge's decision, the respondent agency shall issue a final action.

*Id.* § 1614.110(a).  The complainant then has the right to appeal to the EEOC's Office of Federal

Operations or to file a civil action in federal district court.  *Id.*  If the agency does not fully

implement the administrative judge's decision, the agency must also file an appeal to the EEOC.

*Id.*  In such administrative appeals, the EEOC's Office of Federal Operations issues written

decisions on behalf of the EEOC.  *Id.* § 1614.405(a).  When the agency or the EEOC "finds that

an applicant or an employee has been discriminated against, the agency shall provide full relief,"

which can include "notification to all employees" in an affected facility "of their right to be free

of unlawful discrimination," "assurance" that the types of discrimination found "will not recur,"

"[c]ommitment that corrective, curative, or preventive action will be taken," "[a]n unconditional

offer to each identified victim of discrimination of placement in the position the person would have

occupied but for the discrimination suffered by that person, or a substantially equivalent position,"

monetary relief "to each identified victim of discrimination on a make whole basis," and a "[c]ommitment" to "cease from engaging in the specific unlawful employment practice found in the case." *Id.* § 1614.501(a).  A successful applicant must also receive "the position that the applicant would have occupied absent discrimination" or "a substantially equivalent position unless clear and convincing evidence indicates that the applicant would not have been selected even absent the discrimination." *Id.* § 1614.501(b)(1)(i).  A successful employee must also receive relief, which can include nondiscriminatory placement, back pay, cancellation of an unwarranted personnel action, expunction from agency records of adverse materials relating to the discriminatory practice, and full opportunity to participate in a denied employee benefit. *Id.* § 1614.501(c).

Relief in a final EEOC decision "is mandatory and binding on the agency" unless the agency successfully seeks reconsideration.  *Id.* § 1614.502(a).  If an agency does not comply with an order of relief from the EEOC, the complainant may petition the EEOC for enforcement.  *Id.* § 1614.503(a).  If the EEOC is unable to secure compliance, it "may issue a notice to the head of any Federal agency that has failed to comply with a decision to show cause why there is noncompliance" and "may request the head of the agency or a representative to appear before the [EEOC] or to respond to the notice in writing."  *Id.* § 1614.503(e).  If the agency still does not comply, the EEOC "shall notify the complainant of the right to file a civil action for enforcement of the decision." *Id.* § 1614.503(g).

When a federal employee or applicant files a civil action to enforce their rights, the court may order the same types of relief that are available in private sector actions, including preliminary injunctive relief, and for intentional violations, permanent equitable relief such as reinstatement or

8

hiring, and back pay. 42 U.S.C. §§ 2000e-5(f), (g), 2000e-16(d). Compensatory damages are also available for intentional discrimination. *Id.* § 1981a(a), (b).

4.      The statutes administered by EEOC cover most state and local government agencies. *See generally* EEOC, *Coverage of State and Local Governments*, https://www.eeoc.gov/employers/coverage-state-and-local-governments (last visited June 26, 2025). Under Title VII, for example, state and local government agencies with at least fifteen employees are covered employers. *See* 42 U.S.C. § 2000e(a), (b). Much like for private employees under Title VII, covered state and local government employees can file charges of discrimination with the EEOC, and the EEOC can investigate, make reasonable cause determinations, and engage in conciliation. *See id.* § 2000e-5(b). Yet instead of filing civil enforcement lawsuits, the EEOC can then refer the matter to the Attorney General, and the Civil Rights Division of the Department of Justice can pursue civil enforcement lawsuits against state and local governments. *See id.* § 2000e-5(f)(1); Department of Justice, Civil Rights Division, *Laws We Enforce*, https://www.justice.gov/crt/laws-we-enforce (last visited June 26, 2025). The EEOC also has authority to sue state and local governments for violations of the Age Discrimination in Employment Act and Equal Pay Act. *See* 29 U.S.C. §§ 206(d), 626(b); Reorganization Plan No. 1 of 1978, § 1, 92 Stat. 3781. The Government Employee Rights Act of 1991 covers certain advisors and staff members of state and local elected officials, and prohibits discrimination on the basis of race, color, religion, sex, national origin, age, or disability. *See* 42 U.S.C. §§ 2000e-16a, 2000e-16c(a). Covered employees may file complaints with the EEOC, which has authority to adjudicate such claims and order appropriate relief. *See id.* § 2000e-16c(b)(1); 29 C.F.R. pt. 1603 (EEOC regulations governing claims under Government Employee Rights Act of 1991).

5.      Various statutes confer authority on the EEOC to promulgate regulations. For example, Title VII generally confers on the EEOC authority to issue "procedural regulations to carry out the provisions of" Title VII. 42 U.S.C. § 2000e-12(a). For Title VII's prohibition on federal sector employment discrimination, the EEOC has broader authority to "issue such rules, regulations, orders and instructions as it deems necessary and appropriate to carry out its responsibilities." *Id.* § 2000e-16(b). Other statutes similarly confer authority to promulgate regulations, such as the ADA, which empowers the EEOC to "issue regulations . . . to carry out" the statute. *Id.* § 12116. The EEOC also commonly issues guidelines setting forth its interpretation of statutes that it enforces. *See*, *e.g.*, 29 C.F.R. pt. 1605 (guidelines on discrimination because of religion). Collectively, the EEOC has promulgated regulations and guidelines that comprise dozens of parts of the Code of Federal Regulations. *See generally* 29 C.F.R. pts. 1600-1608, 1610-1612, 1614-1615, 1620-1621, 1625-1627, 1630, 1635-1636, 1640-1641, 1650, 1690-1691, 1695.

6.      The EEOC performs various functions to educate the public, employers, and other government agencies about the federal employment discrimination laws. The EEOC prepares notices that employers, employment agencies, and labor organizations are required to post conspicuously to inform employees of their rights. *See* 42 U.S.C. § 2000e-10(a); EEOC, *"Know Your Rights: Workplace Discrimination is Illegal" Poster*, https://www.eeoc.gov/poster (last visited June 26, 2025). The EEOC reviews and approves plans by each federal agency to maintain compliance with employment discrimination laws. 42 U.S.C. § 2000e-16(b). And the EEOC operates the EEOC Training Institute, which conducts regular sessions to train members of the public on federal employment discrimination laws. *See id.* § 2000e-4(k); EEOC Training Institute, https://eeotraining.eeoc.gov/profile/web/index.cfm?PKwebID=0x2547fa13 (last visited June 26, 2025).

7.      In fiscal year 2024, the EEOC handled claims that resulted in almost $700 million in monetary relief for about 21,000 aggrieved individuals.  *See* EEOC, Fiscal Year 2024 Annual Performance Report 5 (Jan. 17, 2025), https://www.eeoc.gov/sites/default/files/2025-01/24-126_EEOC_2024_APR_508_1.16.25_508.pdf ("2024 Annual Report").  That year, the EEOC received 88,531 new discrimination charges, successfully resolved 8,543 private sector mediations, resolved 6,679 federal sector hearing requests and 3,162 federal sector appeals, and filed 111 merits lawsuits.  *Id.* at 12.  The EEOC also conducted 3,278 outreach and training events for 268,864 individuals nationwide.  *Id.* at 14.

## II.    Plaintiff's Complaint

Plaintiff Jocelyn Samuels was a Democratic EEOC Commissioner initially nominated by President Trump and confirmed in 2020 for a term expiring in 2021, and then nominated by President Biden and confirmed in 2021 for a term expiring July 1, 2026.  Compl. for Declaratory & Injunctive Relief ("Compl.") ¶¶ 26, 29, ECF No. 3.  Shortly after President Trump took office on January 20, 2025, Plaintiff and two other Democratic EEOC Commissioners publicly expressed opposition to some of President Trump's Executive Orders regarding employment discrimination.  *Id.* ¶¶ 28-31, 32-34.   On January 27, 2025, President Trump removed Plaintiff and another Democratic EEOC Commissioner, Charlotte Burrows, from their positions.  *Id.* ¶¶ 35, 40.  Trent Morse, the Deputy Director of the White House Office of Presidential Personnel, notified Plaintiff and Ms. Burrows of their removal via email.  *Id.*  The email explained that the President had power under Article II to remove Plaintiff, and that Title VII contained no language protecting her from removal.  *Id.* ¶ 37.  The email also highlighted disagreements between the President and Plaintiff on how the nation's employment discrimination laws should be executed.  *Id.* ¶¶ 37-38.  Shortly after the President removed Plaintiff, the EEOC and Defendant Andrea Lucas, the EEOC's Acting

11

Chair, cut off Plaintiff's access to EEOC facilities and took other administrative steps to process her removal. *Id.* ¶ 39.

Plaintiff filed her Complaint on April 10, 2025. She named as Defendants President Trump, the EEOC, and Acting Chair Lucas. *Id.* ¶¶ 12-14. Plaintiff brings a single claim with the heading, "Ultra Vires Action in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-4." *Id.*, Claim for Relief. She claims that "Congress insulated the EEOC from at-will removal by the president." *Id.* ¶ 45. She does not dispute that there is a "lack of explicit removal language in the text of Title VII," *id.* ¶ 37, but she contends that the EEOC has "structural components" and "functional components . . . that identify it as an independent agency and thus provide removal protections for its Commissioners," *id.* ¶¶ 46, 47. Plaintiff does not specify what implicit removal standard applies to EEOC Commissioners, but in arguing that "Defendant Trump lacked cause to remove" her, *id.* ¶ 48, she appears to suggest that EEOC Commissioners can be removed only for cause. Plaintiff contends that the reasons identified in the removal email "constitute policy disagreements between [President Trump] and [Plaintiff]," and do not constitute cause for removal. *Id.* Plaintiff requests that the Court issue a declaratory judgment declaring that her removal was unlawful, that she "remains a Commissioner of the EEOC," and "that she cannot be removed by the President prior to the expiration of her term without cause." *Id.*, Request for Relief, ¶ a. She asks that the Court issue an injunction and a writ of mandamus against Defendants EEOC and Lucas enjoining them from blocking Plaintiff from her office or treating her as removed, and directing them to provide her with facilities and equipment necessary to carry out Plaintiff's purported duties as an EEOC commissioner. *Id.*, Request for Relief, ¶¶ b-d.

## LEGAL STANDARD

"A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint." *Harrington v. DC Winery, LLC*, No. 1:22-cv-689-TSC, 2023 WL

12

5561604, at *2 (D.D.C. Aug. 29, 2023).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Although the Court assumes the truth of a plaintiff's factual allegations, "[t]his presumption does not apply, however, to a 'legal conclusion couched as a factual allegation.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 678).  "Accordingly, a complaint must offer more than 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 678).  On a Rule 12(b)(6) motion, the Court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice."  *Smith*, 253 F. Supp. 3d at 234 (quoting *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002)).

## ARGUMENT

Plaintiff brings just one legal claim, that the President's removal of Plaintiff as an EEOC was an ultra vires action in violation of Title VII.  The essential facts of the case are not in dispute: Plaintiff served as an EEOC commissioner, and the President removed her.  The dispute is purely legal: whether the President is legally permitted to remove EEOC commissioners at will.  The answer is yes, for two reasons, either of which suffices to doom Plaintiff's claim.  First, Title VII empowers the President to remove EEOC commissioners.  By conferring appointment power on the President and not mentioning removal, the statute leaves undisturbed the "background presumption that the President may remove anyone he appoints."  *Severino*, 71 F.4th at 1044.  Second, even if Title VII protected EEOC commissioners from removal, the statute would violate Article II.  EEOC commissioners, who "exercise considerable executive power," do not fall within the "narrow exceptions" to the rule that the President "may remove without cause executive officers who exercise [executive] power on his behalf."  *Wilcox*, 145 S. Ct. at 1415.  Finally,

Plaintiff lacks a cause of action, and her ultra vires claim is an unsuccessful "Hail Mary pass," *Nuclear Regul. Comm'n v. Texas*, 605 U.S. ___, 2025 WL 1698781, at *9 (June 18, 2025) (quoting *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009)), that fails to satisfy the Supreme Court's stringent requirements for such a claim.

## I.    Title VII Empowers the President to Remove EEOC Commissioners at Will

### A.    The Text of Title VII Contains No Removal Protections for EEOC Commissioners

When Congress created the EEOC and empowered the President to appoint EEOC commissioners, Congress did not enact any language protecting EEOC members from removal or otherwise addressing their removal.  That means that the statute authorizes the President to remove commissioners at will.  A litany of authority, both longstanding and recent, establishes that the power to remove is incident to the power to appoint, and Congress therefore must speak clearly if it wishes to restrict the President's authority to remove an executive officer he appoints.

At its base, "the power of removal [is] incident to the power of appointment."  *In re Hennen*, 38 U.S. 230, 259 (1839) (holding that district court could remove court clerk because it appointed the clerk).  This is doubly true for appointments by the President, as "it was very early adopted, as the practical construction of the Constitution, that [the removal] power was vested in the President alone."  *Id.* at 259.  "In the absence of any specific provision to the contrary, the power of appointment to executive office carries with it, as a necessary incident, the power of removal."  *Myers*, 272 U.S. at 126.  Courts "generally presume that the President holds the power to remove at will executive officers and that a statute must contain 'plain language to take [that power] away.'"  *Collins*, 594 U.S. at 250 (2021) (quoting *Shurtleff v. United States*, 189 U.S. 311, 316 (1903)).  "Because of the background presumption that the President may remove anyone he

appoints, Congress must make it clear in a statute if it wishes to restrict the President's removal power." *Severino*, 71 F.4th at 1044.

When Congress created the EEOC in Title VII, it did not enact any provision protecting commissioners from removal, such as the type of provision stating that commissioners may be removed only for cause that Congress has enacted for other multi-member boards. *Compare*, *e.g.*, 29 U.S.C. § 153(a) ("Any member of the [National Labor Relations] Board may be removed by the President, upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause.").[3]  Rather, Title VII is silent on the removal of EEOC commissioners.  Under longstanding precedent, that silence, paired with the provision empowering the President to appoint commissioners, 42 U.S.C. § 2000e-4(a) ("[m]embers of the Commission shall be appointed by the President by and with the advice and consent of the Senate"), amounts to Congressional authorization for the President to remove commissioners at will.

Plaintiff may point to the fact that Title VII states that commissioners are appointed "for a term of five years." *Id.*  But that term of years is neither a guarantee of service for that term nor a restriction on removal.  *See Parsons v. United States*, 167 U.S. 324, 338-39 (1897) (holding that the President had authority to remove presidentially appointed United States Attorneys at will, notwithstanding the fact that the statute provided for a term of years).  "When used in federal appointment statutes, the word 'term' has a long-settled meaning of limiting a person's tenure in office, not investing the person with a guaranteed minimum period of service.  A 'term,' in other words, is a ceiling, not a floor, on the length of service." *Severino*, 71 F.4th at 1045.  Thus, "the

---

[3] When Congress enacts a for-cause removal provision, that raises the distinct question whether the provision is constitutional.  In staying an injunction reinstating a member of the NLRB removed by President Trump, the Supreme Court recently held that the government was "likely to" succeed in showing that the NLRB's for-cause removal provision is unconstitutional. *Wilcox*, 145 S. Ct. at 1415.

longstanding meaning of a fixed-term provision laid out in *Parsons* and *Myers*" is that "[a] defined term of office, standing alone, does not curtail the President's removal power during the office-holder's service." *Id.* at 1047. So only an express restriction on the power of removal can suffice.

**B.    Plaintiff's Assertion that the EEOC's Structure and Function Necessitate Reading Atextual Removal Restrictions into the Statute Is Incorrect**

**1.**    Plaintiff does not appear to dispute that there is a "lack of explicit removal language in the text of Title VII." Compl. ¶ 37. Yet she contends that the EEOC contains "structural components" and "functional components . . . that identify it as an independent agency and thus provide removal protections for its Commissioners." *Id.* ¶¶ 46-47. That is incorrect. Nothing in the EEOC's structure and function as an Executive Branch agency charged with enforcing federal employment discrimination laws indicates that the Court should implicitly read into Title VII removal protections that Congress did not enact.

Precedent establishes that the situations in which removal protections not contained in statutory text can be implied are narrow. The D.C. Circuit has stated that "Congress may clearly indicate its intent to restrict removals through the statutory structure and function of an office," *Severino*, 71 F.4th at 1044, but the D.C. Circuit has never held that any office has implied removal restrictions because of structure and function. The Supreme Court has only once held that such implied removal protections exist, in *Wiener v. United States*, 357 U.S. 349 (1958). That case involved the War Claims Commission, a temporary tribunal that Congress established to adjudicate claims for compensating internees, prisoners of war, and religious organizations who were injured by the enemy in connection with World War II. *Id.* at 350. Yet the Supreme Court recently reaffirmed that the general rule is that courts "presume that the President holds the power to remove at will executive officers and that a statute must contain 'plain language to take [that power] away.'" *Collins*, 594 U.S. at 250 (quoting *Shurtleff*, 189 U.S. at 316). As the D.C. Circuit

16

recognized, *Collins* framed *Wiener* as a narrow ruling that "was decided 'on the rationale that the War Claims Commission was an adjudicatory body, and as such, it had a unique need for absolute freedom from Executive interference.'"  *Severino*, 71 F.4th at 1047 (quoting *Collins*, 594 U.S. at 250 n.18).  Although the EEOC has some adjudicatory authority, it is nothing like the purely adjudicative War Claims Commission, a temporary special-purpose claims tribunal.  As described further below, Congress placed the EEOC "squarely within the Executive Branch," *id.* at 1048, and gave it the traditionally executive functions of investigating and enforcing violations of law.

Just days ago, in *Kennedy v. Braidwood Management, Inc.*, 606 U.S. ___ (June 27, 2025) (slip op.), the Supreme Court refused to read an atextual removal restriction into a statute and held that when Congress wishes to restrict the removal authority of an official with authority to appoint an executive officer, Congress must speak clearly.  *Braidwood* concerned members of the U.S. Preventive Services Task Force, inferior officers appointed by the Secretary of Health and Human Services.  *Id.*, slip op. at 2-3.  No statutory text expressly restricted the Secretary from removing Task Force members, but the plaintiff argued that the Court should read an implicit removal restriction into the statute.  *Id.*, slip op. at 18.  The Court refused to do so, reasoning:

> The Court has said that to "take away" the power of at-will removal from an appointing officer, Congress must use "very clear and explicit language." *Shurtleff v. United States*, 189 U. S. 311, 315 (1903); *see Hennen*, 13 Pet., at 259–260.  "[M]ere inference or implication" does not suffice. *Shurtleff*, 189 U. S., at 315.
>
> When Congress wants to depart from the default of at-will removability and instead furnish for-cause protection, it knows how to do so.  In many statutes, Congress has specified that officers shall be removed only for good cause, often using a formulation like "inefficiency, neglect of duty, or malfeasance in office." [citations omitted].
>
> . . .
>
> Braidwood nonetheless suggests that the term "independent" in this statute suffices to displace the default of at-will removal.  But this Court already rejected that move in *Collins v. Yellen*.
>
> . . .

17

> The word "independent" alone in a statute does not make an officer removable only for
> cause.  Rather, Congress must speak clearly if it wishes to insulate officers from at-will
> removal.  It has not done so here.

*Id.*, slip op. at 19-20.

The Supreme Court further explained that "[w]hen Congress wants to create an independent agency, it generally does so by explicitly conferring for-cause removal protection on the agency's leadership." *Id.*, slip op. at 26-27.  Congress's "silence speaks volumes" in declining to enact for-cause removal language.  *Id.*, slip op. at 27.  The Supreme Court concluded that it "will not judicially construct a powerful new independent agency that Congress and the President did not themselves establish by statute." *Id.*  Yet that is exactly what Plaintiff asks this Court to do by engrafting onto Title VII a for-cause removal provision that Congress did not enact.  This Court should follow the Supreme Court's lead in refusing to do so.

**2.** Nothing in the EEOC's structure and function clearly indicates that Congress intended to enact removal protections it somehow neglected to include in the text of the statute.  Plaintiff's contrary arguments are misguided.  Plaintiff first points to three "structural components of the EEOC" as evidence of Congress's intent to provide removal protections for commissioners: (1) the statute requires partisan balance among the five-member commission,[4] (2) commissioners serve staggered terms,[5] and (3) the statute contains a holdover clause allowing commissioners to serve for a limited time after expiration of their term until a successor is appointed and qualified.[6]  *See* Compl. ¶ 46.

---

[4] 42 U.S.C. § 2000e-4(a) (EEOC "shall be composed of five members, not more than three of whom shall be members of the same political party").

[5] *See* 42 U.S.C. § 2000e-4(a) (commissioners serve "a term of five years"); § 705(a), 78 Stat. at 258 (setting length of initial commissioners' terms such that one term expires each year).

[6] 42 U.S.C. § 2000e-4(a) ("members of the Commission shall continue to serve until their successors are appointed and qualified," up until a statutory time limit).

None of these features permits a court to imply removal restrictions where none appear in the text. To be sure, when creating multi-member boards, Congress sometimes pairs these structural features with a for-cause removal provision. Such examples include the Merit Systems Protection Board,[7] the Federal Energy Regulatory Commission,[8] and the Surface Transportation Board.[9] That Congress sometimes includes express for-cause removal provisions in similarly structured agencies cuts against Plaintiff, however. Congress plainly knows how to include such restrictions. And if those features always implied restrictions on removal, then it would render the express clauses superfluous.

Indeed, as it did with the EEOC, Congress frequently structures a multi-member board with partisan balance, staggered terms, and a holdover clause, without enacting any provision protecting leaders from removal. Examples include the National Credit Union Administration,[10] the Commodity Futures Trading Commission,[11] the Farm Credit Administration,[12] and the Defense Nuclear Facilities Safety Board.[13] For each of these agencies, the Supreme Court has explained that Congress "described" them "as 'independent' without imposing any restriction on the President's power to remove the agency's leadership." *Collins*, 594 U.S. at 249.[14] Likewise, the

---

[7] *See* 5 U.S.C. § 1202(d) ("Any member may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office.").

[8] *See* 42 U.S.C. § 7171(b)(1) ("Members shall hold office for a term of 5 years and may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office.").

[9] *See* 49 U.S.C. § 1301(b)(3) ("The President may remove a member for inefficiency, neglect of duty, or malfeasance in office.").

[10] *See* 12 U.S.C. § 1752a.

[11] *See* 7 U.S.C. § 2.

[12] *See* 12 U.S.C. § 2242.

[13] *See* 42 U.S.C. § 2286.

[14] This statement in *Collins* rebutted a party's argument that a statute referring to an agency as "independent" necessarily signified that its leaders were protected from removal. *See Collins*, 594 U.S. at 248-49. The Supreme Court did not mention the EEOC in this discussion because Title VII nowhere characterizes the EEOC as "independent." *See* 42 U.S.C. § 2000e-4. If anything,

D.C. Circuit held that Council members of the Administrative Conference were removable at will even though the Council was (1) multimember, (2) meant to be "non-partisan," (3) members served set terms, (4) that were initially staggered, (5) and allowed for holdover service "until a successor is appointed." *Severino*, 71 F.4th at 1049; 5 U.S.C. § 595(b).  If such structural features were insufficient in *Severino* to overcome the absence of an express for-cause removal provision, then surely the features of the EEOC fail as well.

The lesson from this pattern of statutes establishing multi-member boards is not that Congress intends to protect board members from removal whenever it creates a multi-member board with partisan balance, staggered terms, and a holdover clause.  Rather, the lesson is that "[w]hen Congress wants to depart from the default of at-will removability and instead furnish for-cause protection, it knows how to do so." *Braidwood*, slip op. at 19; *see also*, *e.g.*, *Ysleta Del Sur Pueblo v. Texas*, 596 U.S. 685, 704 (2022) (noting that "Congress knows exactly how to" enact a type of provision and declining to read that provision into a statute that did not include the provision); *P.J.E.S. ex rel. Escobar Francisco v. Wolf*, 502 F. Supp. 3d 492, 514 (D.D.C. 2020) ("the Supreme Court routinely points to other statutes as evidence that Congress knows how to legislate in particular ways" (citation omitted)).  After all, "as [the Supreme Court] ha[s] explained many times before, '[n]o statute pursues a single policy at all costs, and [courts] are not free to rewrite this statute (or any other) as if it did.'"  *Advocate Christ Med. Ctr. v. Kennedy*, 145 S. Ct. 1262, 1274 (2025) (quoting *Bartenwerfer v. Buckley*, 598 U.S. 69, 81 (2023)).  It would violate that principle to assume that because Congress established the EEOC with some features that one

---

that fact further undermines Plaintiff's assertion that Congress established the EEOC "as an independent agency" with "removal protections for its Commissioners."  Compl. ¶¶ 46, 47.

might characterize as conferring a degree of independence, Congress must have intended to include a different provision to advance that purpose that it did not enact into the statutory text.

**3.**     The EEOC's functions also do not signify Congressional intent to shield commissioners from removal.  Rather, the EEOC's functions are primarily executive, which supports the conclusion that Congress conferred removal authority on the head of the Executive Branch.  The EEOC's most significant function is investigating and enforcing violations of employment discrimination laws, including by filing civil enforcement actions seeking monetary or injunctive relief for private sector employees, and adjudicating claims of federal sector employees and some state and local employees.  *See*, *e.g.*, 42 U.S.C. §§ 2000e-5(f)-(k), 2000e-8, 2000e-16c.  Exercising "enforcement authority" to seek significant relief "against private parties on behalf of the United States in federal court" is "a quintessentially executive power."  *Seila Law LLC*, 591 U.S. at 219.  Similarly, "the authority to bring the coercive power of the state" and seek such relief "through administrative adjudications and civil actions" is a significant executive authority.  *Id.* at 219-20; *cf. id.* at 219 (the power "to initiate criminal investigations" is a "core executive power").  The EEOC also "advise[s] personnel in and components of the Executive Branch" on policies and practices to comply with employment discrimination laws, which is a "purely executive function."  *Severino*, 71 F.4th at 1048 (citation omitted); *see* 42 U.S.C. § 2000e-14 (empowering the EEOC to "develop[] and implement[] agreements, policies and practices" across "the various departments, agencies and branches of the Federal Government responsible for the implementation and enforcement of equal employment opportunity legislation, orders, and policies"); 29 C.F.R. § 1614.102 (providing that federal agencies shall maintain programs to promote compliance with equal employment opportunity laws in compliance with EEOC directives, and the EEOC "will review agency programs from time to time to ascertain whether

they are in compliance"). As further explained below, because the EEOC exercises substantial executive power, not only should the Court not infer implied removal restrictions, but such removal restrictions would be unconstitutional even if Congress had enacted them. *See infra*, pp. 24-32.

Investigating and enforcing violations of civil rights laws is not a function that by its nature must be performed by officials insulated from removal. To the contrary, similar functions are performed by civil rights offices and divisions in cabinet departments throughout the Executive Branch, whose leaders are removable at will.[15] No one doubts that those functions are inherently executive. Indeed, Plaintiff alleges that before she arrived at the EEOC, she became "a civil rights and equal employment opportunity expert" and "worked to combat illegal discrimination and promote compliance with civil rights laws" through her experience at the civil rights offices of the Department of Justice and Department of Health and Human Services. Compl. ¶ 27. Her own experience refutes the notion that civil rights enforcement is "operationally incompatible with at-will Presidential removal." *Severino*, 71 F.4th at 1048.

4.    Plaintiff argues that EEOC commissioners have implied removal protections because the EEOC performs purportedly "quasi-legislative functions" such as issuing guidance and "quasi-judicial functions" such as adjudicating federal sector and Rehabilitation Act claims. Compl. ¶ 47. This argument fails for several reasons. First, as described above, *see supra*, pp. 21-

---

[15] *See, e.g.*, Department of Justice, Civil Rights Division, https://www.justice.gov/crt (last visited June 26, 2025); Department of Health and Human Services, Office for Civil Rights, About Us, https://www.hhs.gov/ocr/about-us/index.html (last visited June 26, 2025); Department of Education, Office for Civil Rights (OCR), https://www.ed.gov/about/ed-offices/ocr (last visited June 26, 2025); Department of Housing and Urban Development, Office of Fair Housing and Equal Opportunity, https://www.hud.gov/stat/fheo/rights-obligations (last visited June 26, 2025); Department of Labor, Civil Rights Center, About Us, https://www.dol.gov/agencies/oasam/centers-offices/civil-rights-center/about (last visited June 26, 2025).

22, much of the EEOC's most significant activity, such as investigation and enforcement, is in the traditional heartland of executive power.

Second, even when executive agencies like the EEOC engage in activities such as rulemaking or adjudication that resemble legislative or judicial activity, "[t]hese activities take 'legislative' and 'judicial' forms, but they are exercises of—indeed, under our constitutional structure they *must be* exercises of—the 'executive Power.'" *City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290, 304 n.4 (2013) (quoting U.S. Const. art. II, § 1, cl. 1). For example, the Supreme Court in *Seila Law* considered the Consumer Financial Protection Bureau's "authority to promulgate binding rules fleshing out . . . federal statutes" and to "unilaterally issue final decisions awarding legal and equitable relief in administrative adjudications," *Seila Law*, 591 U.S. at 218-19, as indications that the CFPB possessed sufficient executive power that its director must be removable at will.[16]

Finally, Plaintiff's argument is inconsistent with the rule that Congress must speak clearly to insulate presidential appointees from removal. Virtually every executive agency with any statutory authority performs some functions such as rulemaking or adjudication that one might describe as quasi-legislative or quasi-judicial. Yet "Congress must make it clear in a statute if it wishes to restrict the President's removal power." *Severino*, 71 F.4th at 1044; *see also Collins*,

---

[16] Congress also imposed some limits on the EEOC's rulemaking and adjudicative authority. For example, for private sector claims under Title VII, the EEOC has authority only to issue "suitable procedural regulations," 42 U.S.C. § 2000e-12(a), and thus, as Plaintiff acknowledges, the EEOC is limited to issuing nonbinding "guidance" on the substance of Title VII's private sector provisions, rather than binding rules, Compl. ¶ 47.a. As Plaintiff also acknowledges, the EEOC's adjudicative authority is limited to "adjudicating federal government employees' discrimination claims and claims involving employment under the Rehabilitation Act." *Id.* ¶ 47.b. Therefore, for most private sector claims, EEOC cannot adjudicate but can enforce through civil actions "on behalf of the United States in federal court," which is "a quintessentially executive power." *Seila Law*, 591 U.S. at 219.

594 U.S. at 250 ("a statute must contain plain language to take . . . away" President's "power to remove at will executive officers" (quoting *Shurtleff*, 189 U.S. at 316)).  It cannot be and is not the law that Congress clearly imposes nontextual removal protections by conferring on the agency the authority to engage in rulemaking, adjudication, or other activities that a litigant may describe as quasi-legislative or quasi-judicial.

### C.    The Court Should Reject Plaintiff's Statutory Interpretation Under the Constitutional Avoidance Canon

The constitutional avoidance canon further counsels against Plaintiff's entreaty to read into Title VII an implied removal restriction.  Under the constitutional avoidance canon, courts may "interpret[] statutes to avoid deciding difficult constitutional questions where the text fairly admits of a less problematic construction."  *Jud. Watch v. U.S. Secret Serv.*, 726 F.3d 208, 226 (D.C. Cir. 2013) (quoting *Pub. Citizen v. U.S. Dep't of Just.*, 491 U.S. 440, 455 (1989)).  As shown below, Plaintiff's reading not only would create "difficult constitutional questions," but it would violate Article II's vesting of the executive authority in the President.  *See infra*, pp. 24-32.  And the statute's text fairly admits of a construction in which the President may remove EEOC commissioners at will.  Indeed, that is the best reading of the text, which empowers the President to appoint commissioners and contains no language restricting the President's removal authority. The Court should apply the text Congress actually enacted, rather than the atextual removal restriction Plaintiff asks this Court to insert judicially into the statute.  Doing so would avoid the constitutional question whether such a removal restriction would comport with Article II.

## II.    The Removal Restrictions Plaintiff Seeks to Read Into Title VII Would Be Unconstitutional

**1.**    Article II of the Constitution provides that "the 'executive Power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'"  *Seila Law*, 591 U.S. at 203 (quoting U.S. Const. art. II, § 1, cl. 1; *id*. § 3).  To discharge those responsibilities,

the President "as a general matter" has "authority to remove those who assist him in carrying out his duties." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 513-14 (2010). "Without such power, the President could not be held fully accountable for discharging his own responsibilities; the buck would stop somewhere else." *Id.* at 514. Since EEOC commissioners serve in the Executive Branch and wield executive authority, the President has inherent authority under Article II to remove them at will. Any contrary provision would infringe on the Executive's ability to supervise the execution of the law and would thus be unconstitutional. *See Myers*, 272 U.S. at 163-64 (Article II of the Constitution "grants to the President the executive power of the government-i.e., the general administrative control of those executing the laws, including the power of appointment and removal of executive officers").

Plaintiff acknowledges that she publicly sought to use her office to obstruct the President's policies for how to execute the nation's employment discrimination laws, but that only underscores that the EEOC exercises substantial executive power, such that its leaders must be accountable to the President. On the day of his inauguration, the President issued executive orders setting forth his policies and priorities on issues relating to gender and diversity, equity, and inclusion. *See* Compl. ¶ 28 (citing Ending Radical and Wasteful Government DEI Programs and Preferencing, Exec. Order No. 14,151, 90 Fed. Reg. 8339 (2025); Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government, Exec. Order No. 14,168, 90 Fed. Reg. 8615 (2025)). Yet Plaintiff alleges that the President "*purported* to adopt positions of the federal government on issues that affect discrimination in the workplace." *Id.* (emphasis added). Her implication is that the President cannot set policies on executing federal employment discrimination laws, and that only the EEOC commissioners can wield this executive power. Embodying this view, she and two other commissioners (then comprising a majority of the EEOC)

issued a statement opposing the President's executive orders, *id.* ¶ 29, expressing a view directly opposed to the President's on how employment discrimination laws should be interpreted and enforced, *id.* ¶ 30, and pledging that "the agency will continue" to enforce federal employment discrimination laws in ways at odds with the President's policies and priorities as set forth in his executive orders, *id.* ¶ 31. In sum, Plaintiff's view is that when it comes to execution of federal employment discrimination laws, "[t]he buck" does not "stop[] with the President"; rather, "the buck . . . stop[s] somewhere else," with the commissioners of the EEOC. *Free Enter. Fund*, 561 U.S. at 493, 514. Such a position fundamentally twists the vision of the Framers, who chose to vest all of the executive power in the President and charge him with the sole responsibility to take care that the laws are faithfully executed. U.S. Const. art. II, § 1, cl. 1; *id.* § 3.

      **2.**      The Supreme Court has "recognized only two exceptions to the President's unrestricted removal power." *Seila Law*, 591 U.S. at 204; *see also Wilcox*, 145 S. Ct. at 1415 ("Because the Constitution vests the executive power in the President, he may remove without cause executive officers who exercise that power on his behalf, subject to narrow exceptions recognized by our precedents." (citation omitted)). First, in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), the Court held that Congress could "give for-cause removal protections to a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power." *Seila Law*, 591 U.S. at 216. Second, the Supreme Court has held that "Congress could provide tenure protections to certain inferior officers with narrowly defined duties." *Id.* at 204.

      The second exception plainly does not apply to EEOC commissioners, because EEOC commissioners are principal officers, not inferior officers. "Generally speaking, the term 'inferior officer' connotes a relationship with some higher ranking officer or officers below the President:

Whether one is an 'inferior' officer depends on whether he has a superior." *Edmond v. United States*, 520 U.S. 651, 662 (1997); *accord Braidwood*, slip op. at 9.  EEOC commissioners lead a freestanding agency that is not part of any other department, the EEOC, and are not subordinate to anyone in the Executive Branch other than the President.  *See* 42 U.S.C. § 2000e-4(a) (EEOC "shall be composed of five members"); EEOC, *EEOC Organizational Structure* (2024), https://www.eeoc.gov/eeoc-organizational-structure.    They are thus undoubtedly principal officers.

**3.**     Plaintiff appears to invoke the first exception, exemplified by *Humphrey's Executor*.  Yet this exception is "narrow," *Wilcox*, 145 S. Ct. at 1415, and does not encompass the leaders of an agency such as the EEOC with significant executive power.  The Supreme Court explained that this exception is limited to "multimember expert agencies that do not wield substantial executive power." *Seila Law*, 591 U.S. at 218; *see also Wilcox*, 145 S. Ct. at 1415 (staying injunction reinstating removed members of NLRB and MSPB because "the Government is likely to show that both the NLRB and MSPB exercise considerable executive power").  The EEOC exercises significant executive power that places it far beyond the limits of the narrow *Humphrey's Executor* exception.

The EEOC wields significant law enforcement authority to investigate and enforce violations of employment discrimination laws that apply to most private-sector and government applicants, employees and employers throughout the country.  It receives tens of thousands of private-sector charges of discrimination per year, 88,531 in the most recent fiscal year.  2024 Annual Report 12.  It has wide authority to investigate those charges, including by issuing subpoenas and filing actions in court to enforce those subpoenas.  *See* 42 U.S.C. §§ 2000e-8, 2000e-9; 29 U.S.C. § 161; 29 C.F.R. § 1601.16(d); EEOC, *EEOC Office of General Counsel*

*Litigation Services to the Public* § A.2 (May 21, 2024), https://www.eeoc.gov/eeoc-office-general-counsel-litigation-services-public.  The EEOC frequently engages in conciliation and mediation of employment discrimination charges, which results in the voluntary resolution of thousands of claims annually for large amounts of money.[17]  When voluntary resolution is unsuccessful, the EEOC can enforce employment discrimination laws in private sector cases, and in some public sector cases against state and local governments, by sending its own lawyers (not lawyers from the Department of Justice) into federal court to bring civil enforcement lawsuits, and can seek monetary relief and equitable relief such as reinstatement, hiring of an employee or applicant, or enjoining a respondent from engaging in an unlawful employment practice.  42 U.S.C. § 2000e-5(f)-(g).  The EEOC also regularly supports private plaintiffs in employment discrimination cases by filing amicus briefs (again, by the EEOC's own lawyers, not the Department of Justice) in federal district courts or federal courts of appeals.  *See* 2024 Annual Report 44-45 (EEOC filed 39 amicus briefs in federal district courts and appellate courts in fiscal year 2024).

In federal sector cases, the EEOC has the authority to adjudicate employment discrimination claims directly.  *See* 42 U.S.C. § 2000e-16(b).  The EEOC can issue orders binding on other federal agencies in such cases, ordering relief such as reinstatement, hiring of an employee or applicant, backpay, directing the agency to provide notifications of rights and assurances to all employees, and directing the agency to take corrective or preventive measures and commit to cease engaging in the type of unlawful employment practice at issue in the future.  42 U.S.C. § 2000e-

---

[17] *See* 42 U.S.C. § 2000e-5(b) (if EEOC determines that a charge of discrimination is supported by reasonable cause, "the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion"); 2024 Annual Report 12 (in fiscal year 2024, EEOC successfully resolved 8,543 private sector mediations to secure $243.2 million in relief and conducted 147 federal sector mediations resulting in almost $4.2 million in relief).

16(b); 29 C.F.R. § 1614.501(a), (b).  The EEOC's orders in federal sector cases are "mandatory and binding on the agency."  29 C.F.R. § 1614.502(a).  If an agency fails to comply with such an order, the EEOC can issue an order to show cause to the head of the agency and request appearance before the EEOC to explain the agency's noncompliance.  *Id.* § 1614.503.  If the agency still does not comply, the complainant can file a civil action in federal court to enforce the EEOC's order. *Id.*  Through a combination of binding orders and voluntary resolutions, the EEOC resolved 6,679 federal sector hearing requests and secured $181.4 million in relief for federal employees and applicants in fiscal year 2024.  2024 Annual Report 12.  The EEOC also has authority to investigate federal employment discrimination claims against many state and local government employers, and in some cases, to order binding relief on such claims.  *See supra*, p. 9.

The EEOC's litany of authority shows that it "is hardly a mere legislative or judicial aid," *Seila Law*, 591 U.S. at 218, as the Supreme Court in *Humphrey's Executor* concluded that the Federal Trade Commission was in 1935.  The power to seek significant relief "against private parties on behalf of the United States in federal court," including monetary relief and injunctive relief regarding private employers' employment practices, is "a quintessentially executive power." *Id.* at 219.

**4.**   That the EEOC wields some of its authority through the mechanisms of adjudication and rulemaking does not change the fact that is exercising executive power. "Agencies make rules . . . and conduct adjudications . . . and have done so since the beginning of the Republic.  These activities take 'legislative' and 'judicial' forms, but they are exercises of— indeed, under our constitutional structure they *must be* exercises of—the 'executive Power.'"  *City of Arlington*, 569 U.S. at 304 n.4 (quoting U.S. Const. art. II, § 1 cl. 1); *accord Seila Law*, 591 U.S. at 216 n.2.  The Supreme Court has pointed to an agency's authority to "unilaterally issue final

decisions awarding legal and equitable relief in administrative adjudications" as demonstrating its significant executive power.  *Seila Law*, 591 U.S. at 219.  The EEOC not only has such authority in federal sector cases, but that authority includes the power to direct federal agencies to change their employment practices going forward, which extends to all "executive agencies as defined in [5 U.S.C. § 105]," 42 U.S.C. § 2000e-16(a).  The EEOC thus not only exercises executive power but wields significant authority over the management of the entire Executive Branch.  Furthermore, the EEOC has authority to promulgate binding regulations — procedural regulations for some statutes, 42 U.S.C. § 2000e-12(a) ("suitable procedural regulations" for Title VII), and substantive regulations for other statutes.[18]  "[I]nterpreting a law enacted by Congress to implement the legislative mandate is the very essence of 'execution' of the law."  *Collins*, 594 U.S. at 254 (quoting *Bowsher v. Synar*, 478 U.S. 714, 733 (1986)).

**5.**     The Supreme Court's recent decision in *Wilcox* confirms that the EEOC possesses sufficient executive power that its commissioners must be removable at will.  *Wilcox* concerned the NLRB and MSPB, which unlike the EEOC, are established by statutes expressly providing that its leaders can be removed only for cause.  *See* 29 U.S.C. § 153(a); 5 U.S.C. § 1202(d).  The Supreme Court nonetheless stayed the district court's injunctions reinstating removed members of the NLRB and MSPB, because "the Government is likely to show that both the NLRB and MSPB exercise considerable executive power."  *Wilcox*, 145 S. Ct. at 1415.

---

[18] *See* 42 U.S.C. § 12116 ("the Commission shall issue regulations . . . to carry out" Title I of the ADA); 29 C.F.R. pt. 1630 (EEOC's ADA regulations); 29 U.S.C. § 628 ("the Equal Employment Opportunity Commission may issue such rules and regulations as it may consider necessary or appropriate for carrying out [the ADEA], and may establish such reasonable exemptions to and from any or all provisions of this chapter as it may find necessary and proper in the public interest."); 29 C.F.R. pts. 1625-1627 (EEOC's ADEA regulations); 42 U.S.C. § 2000gg-3(a) ("the Commission shall issue regulations in an accessible format … to carry out [the PWFA]"); 29 C.F.R. pt. 1635 (EEOC's PWFA regulations)

The EEOC exercises executive power in ways similar to both the NLRB and MSPB.  The MSPB is charged with adjudicating federal employees' claims of unlawful employment practices under federal civil service laws.  5 U.S.C. § 1204.  The EEOC likewise adjudicates federal employees' claims of unlawful employment practices under federal employment discrimination laws.  42 U.S.C. § 2000e-16.  The EEOC's functions as to federal employees are so similar to the MSPB's functions that the EEOC has promulgated regulations and procedures on the handling of "mixed case complaint[s]" and "mixed case appeal[s]" by federal employees that implicate both the employment discrimination laws administered by the EEOC and the civil service laws administered by the MSPB.  *See* 29 C.F.R. § 1614.302; EEOC, Federal Sector Management Directive, Chapter 4: Procedures for Related Processes, https://www.eeoc.gov/federal-sector/management-directive/chapter-4-procedures-related-processes (last visited June 26, 2025).

The EEOC's powers also closely resemble the NLRB's powers in many respects.  The NLRB implements and enforces statues governing the relationship between private sector employees and employers, specifically statutes involving unions and collective bargaining.  *See generally* 29 U.S.C. §§ 151-169.  The EEOC similarly implements and enforces statutes governing the relationship between private sector employees and employers, specifically those involving employment discrimination.  *See*, *e.g.*, 42 U.S.C. § 2000e-5; 29 U.S.C. § 626; 42 U.S.C. § 12117.  Like the NLRB, the EEOC has broad investigative authority.  In fact, Title VII directly incorporates a section of the National Labor Relations Act to give the EEOC the same investigatory powers as the NLRB within their respective purviews.  *See* 42 U.S.C. § 2000e-9; 29 U.S.C. § 161.  Like the NLRB, the EEOC has authority to prevent certain unlawful practices by employers.  *See* 29 U.S.C. § 160; 42 U.S.C. §§ 2000e-5, 2000e-16, 12117.  Like the NLRB, the EEOC has authority to promulgate regulations to carry out some of the statutes it administers.  *See* 29 U.S.C.

§ 156; 42 U.S.C. § 12116.  Like the NLRB, the EEOC facilitates voluntary resolutions of disputes between employers and employees.  *See* 29 U.S.C. § 160(k); NLRB, *What We Do: Facilitate Settlements*, https://www.nlrb.gov/about-nlrb/what-we-do/facilitate-settlements (last visited June 26, 2025); 42 U.S.C. § 2000e-5(b).

Given the similarities between the EEOC and the MSPB and NLRB, the Supreme Court's conclusion that "the Government is likely to show that both the NLRB and MSPB exercise considerable executive power," *Wilcox*, 145 S. Ct. at 1415, strongly suggests that the Supreme Court would ultimately conclude that the EEOC likewise exercises considerable executive power in a way that places it beyond the narrow *Humphrey's Executor* exception.

## III.    Plaintiff Lacks a Cause of Action

Plaintiff's singular claim suffers from another fundamental flaw: it lacks a cause of action.  *See Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (claims typically require a private cause of action).  Plaintiff's only claim is that her removal was an "Ultra Vires Action in violation of Title VII of the Civil Rights of Act of 1964, 42 U.S.C. § 2000e-4."  Compl., Claim for Relief.  But Title VII does not create a private cause of action for EEOC commissioners to challenge an unlawful removal.  Plaintiff does not suggest otherwise.  Instead, she relies on an "[u]ltra [v]ires" equitable statutory claim.  *Id.*  Such claims are highly disfavored, however, "[b]ecause ultra vires review could become an easy end-run around the limitations of . . . judicial-review statutes . . . ." *Nuclear Regul. Comm'n*, 2025 WL 1698781, at *9.  As a result, a statutory ultra vires claim "applies only when an agency has taken action entirely 'in excess of its delegated powers,'" and "'contrary to a *specific prohibition*' in a statute."  *Id.* (emphasis in original) (quoting *Bhd. of Ry. & Steamship Clerks v. Ass'n for Benefit of Non-Contract Emps.*, 380 U.S. 650, 660 (1965)).  Thus, the Supreme Court recognized an ultra vires claim "'is essentially a Hail Mary pass—and in court as in football, the attempt rarely succeeds.'"  *Id.* (quoting *Nyunt*, 589 F.3d and 449 (D.C. Cir. 2009)).

Plaintiff's claim falls well short of the end zone. There is no "*specific prohibition*" against the removal of an EEOC commissioner in Title VII. *Id.* (citation omitted). As explained, there is no express removal provision anywhere in the statute. *See supra*, pp. 14-16. This is why Plaintiff must lean on purported "features" of the EEOC to argue for an implicit for-cause removal restriction. Such arguments are insufficient to meet the high bar set for an ultra vires claim in violation of a statute that does not otherwise provide a cause of action. *Nuclear Regul. Comm'n*, 2025 WL 1698781, at *9. Absent a valid cause of action, Plaintiff's claim must be dismissed.

\*       \*       \*

The EEOC exercises considerable executive power, including investigating and enforcing employment discrimination statutes that affect the vast majority of private and public employers and employees. Under our Constitution, leaders of an agency that wields such power must be accountable to the President through at-will removal power. Congress conferred that removal power on the President by empowering him to appoint EEOC commissioners and declining to enact any removal restrictions. But to the extent that this Court concludes (incorrectly) that Congress implicitly granted removal protection to EEOC commissioners, that protection would violate Article II. And in any event, Plaintiff lacks a cause of action and fails to state an ultra vires claim.

## CONCLUSION

For the foregoing reasons, the Court should grant this Motion and dismiss the Complaint for failure to state a claim.

Dated:  June 30, 2025

Respectfully Submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General
Federal Programs Branch

TIBERIUS DAVIS
Counsel to the Assistant Attorney General
Civil Division

CHRISTOPHER R. HALL
Assistant Director, Federal Programs Branch

*/s/ Jeremy S.B. Newman*
JEREMY S.B. NEWMAN
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 532-3114
Fax: (202) 616-8470
Email: jeremy.s.newman@usdoj.gov

*Attorneys for Defendants*