**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

―――――――――――――――――――――
                                                    )
JOCELYN SAMUELS,                                    )
                                                    )
                    Plaintiff,                      )
                                                    )
            v.                                      )        Civil Action No. 25-1069 (TSC)
                                                    )
DONALD J. TRUMP, in his Official                    )
Capacity as President of the                        )
United States, *et al.*,                            )
                                                    )
                    Defendants.                     )
―――――――――――――――――――――            )

**REPLY MEMORANDUM IN SUPPORT OF
<u>DEFENDANTS' MOTION TO DISMISS COMPLAINT</u>**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 2

I.    Title VII Empowers the President to Remove EEOC Commissioners at Will................... 2

    A.    Recent Case Law Confirms that the Court Should Not Read Atextual
        Removal Restrictions into Title VII......................................................................... 2

    B.    The EEOC's Structure and Functions Do Not Support Removal
        Restrictions ......................................................................................... 7

II.   For-Cause Removal Restrictions on EEOC Commissioners Would Violate Article
    II.......................................................................................................... 12

    A.    Plaintiff Erroneously Disregards Appellate Decisions Staying Many of the
        Authorities on Which She Principally Relies ........................................................ 12

    B.    The EEOC Exercises Considerable Executive Power ........................................... 15

III.  Plaintiff Cannot Bring an Ultra Vires Cause of Action .................................................. 22

CONCLUSION.................................................................................................................. 23

# TABLE OF AUTHORITIES

**Cases**

*Advocate Christ Med. Ctr. v. Kennedy*,
  145 S. Ct. 1262 (2025) ................................................................ 8

*Bartenwerfer v. Buckley*,
  598 U.S. 69 (2023) ..................................................................... 8

*Bd. of Governors of Fed. Rsrv. Sys. v. MCorp Fin., Inc.*,
  502 U.S. 32 (1991) ..................................................................... 23

*Bhd. of Ry. & Steamship Clerks v. Ass'n for Benefit of Non-Contract Emps.*,
  380 U.S. 650 (1965) ................................................................... 22

*Boyle v. Trump*,
  --- F. Supp. 3d ----, 2025 WL 1677099 (D. Md. June 13, 2025) ............................................ 13

*Buckley v. Valeo*,
  424 U.S. 1 (1976) ....................................................................... 18

*City of Arlington v. FCC*,
  569 U.S. 290 (2013) ............................................................... 10, 21

\* *Collins v. Yellen*,
  594 U.S. 220 (2021) ........................................................... *passim*

*FEC v. NRA Political Victory Fund*,
  6 F.3d 821 (D.C. Cir. 1993) ......................................................... 6

*Free Enterprise Fund v. Public Co. Accounting Oversight Board*,
  561 U.S. 477 (2010) .................................................................. 6

*Grundmann v. Trump*,
  770 F. Supp. 3d 166 (D.D.C. 2025) ................................................ 13

*Grundmann v. Trump*,
  No. 25-5165, 2025 WL 1840641 (D.C. Cir. July 3, 2025) ..................................... 14

*Harper v. Bessent*,
  No. 25-01294 (AHA), 2025 WL 2049207 (D.D.C. July 22, 2025) ........................... 6, 8, 11, 13

*Harper v. Bessent*,
  No. 25-5268 (D.C. Cir. July 25, 2025).............................................. 8, 14

*Harris v. Bessent*,
  775 F. Supp. 3d 164 (D.D.C. 2025) ................................................ 13

*Harris v. Bessent,*
No. 25-5037, 2025 WL 980278 (D.C. Cir. Mar. 28, 2025),
*vacated on reconsideration en banc,* 2025 WL 1021435 (D.C. Cir. Apr. 7, 2025) ................. 16

*Humphrey's Executor v. United States,*
295 U.S. 602 (1935) ................................................................................................ 14, 18, 19

*Jarkesy v. SEC,*
34 F.4th 446 (5th Cir. 2022),
*aff'd on other grounds,* 603 U.S. 109 (2024) .......................................................................... 6

*Jud. Watch, Inc. v. U.S. Secret Serv.,*
726 F.3d 208 (D.C. Cir. 2013) .................................................................................................. 11

\* *Kennedy v. Braidwood Mgmt., Inc.,*
145 S. Ct. 2427 (2025) ..................................................................................................... *passim*

*LeBlanc v. U.S. Priv. & Civil Liberties Oversight Bd.,*
--- F. Supp. 3d ---, 2025 WL 1454010 (D.D.C. May 21, 2025),
*appeal filed,* No. 25-5197 (D.C. Cir. May 29, 2025) ......................................................... 4, 13

\* *LeBlanc v. U.S. Priv. & Civil Liberties Oversight Bd.,*
No. 25-5197, 2025 WL 1840591 (D.C. Cir. July 1, 2025) ................................................. 4, 14

*LeBlanc v. U.S. Priv. & Civil Liberties Oversight Bd.,*
No. 25-5197 (D.C. Cir. July 18, 2025) ....................................................................................... 4

\* *Nuclear Regul. Comm'n v. Texas,*
605 U.S. 665 (2025) ................................................................................................... 1, 22, 23

*Nyunt v. Chairman, Broad. Bd. of Governors,*
589 F.3d 445 (D.C. Cir. 2009) ................................................................................................. 23

*Perlmutter v. Blanche,*
No. 1:25-cv-1659-TJK, 2025 WL 2159197 (D.D.C. July 30, 2025),
*appeal filed,* No. 25-5285 (D.C. Cir. Aug. 5, 2025) .............................................................. 15

\* *Seila Law LLC v. CFPB,*
591 U.S. 197 (2020) ......................................................................................................... *passim*

\* *Severino v. Biden,*
71 F.4th 1038 (D.C. Cir. 2023) ....................................................................................... 6, 8, 11

\* *Shurtleff v. United States,*
189 U.S. 311 (1903) ......................................................................................................... *passim*

*Slaughter v. Trump,*
--- F. Supp. 3d ----, 2025 WL 1984396 (D.D.C. July 17, 2025) ............................................ 13

*Slaughter v. Trump,*
No. 25-5261 (D.C. Cir. July 21, 2025) ..................................................... 14

* *Trump v. Boyle,*
606 U.S. ----, 2025 WL 2056889 (July 23, 2025) ...................................... 12, 13, 14

* *Trump v. Wilcox,*
145 S. Ct. 1415 (2025) ............................................................... *passim*

*Wiener v. United States*,
357 U.S. 349 (1958) ................................................................. 2, 3, 5

*Wilcox v. Trump,*
775 F. Supp. 3d 215 (D.D.C. 2025) ......................................................... 13, 22

**U.S. Constitution**

U.S. Const. art. II, § 1, cl. 1 .............................................................. 10

U.S. Const. art. III ......................................................................... 10

**Statutes**

5 U.S.C. § 1203 ............................................................................ 19

5 U.S.C. § 1204 ............................................................................. 9

8 U.S.C. § 1103 ............................................................................. 6

15 U.S.C. §§ 2051-2090 ..................................................................... 13

28 U.S.C. § 516 ............................................................................ 18

29 U.S.C. § 153 ............................................................................ 19

29 U.S.C. § 161 ............................................................................ 10

29 U.S.C. § 628 ............................................................................ 20

42 U.S.C. § 1981a .......................................................................... 18

* 42 U.S.C. § 2000e-4 ................................................................ *passim*

42 U.S.C. § 2000e-5 .................................................................. 10, 18, 21

42 U.S.C. § 2000e-8 ........................................................................ 10

42 U.S.C. § 2000e-9 ........................................................................ 10

42 U.S.C. § 2000e-12 ................................................................................................ 20

42 U.S.C. § 2000e-16 ................................................................................................ 17

**Regulations**

29 C.F.R. § 1614.501 ................................................................................................ 17

29 C.F.R. § 1614.502 ................................................................................................ 17

29 C.F.R. § 1614.503 ................................................................................................ 17

29 C.F.R. § 1695.2 .................................................................................................... 20

**Other Authorities**

Cathy A. Harris's Opp'n to Appl. for a Stay Pending Appeal and for an Administrative Stay,
*Bessent v. Harris*, No. 24A966, 2025 WL 1127728 (U.S. filed Apr. 15, 2025) ...................... 19

Code of Federal Regulations,
https://www.ecfr.gov ........................................................................................... 10-11

Comptroller General Decision B-167015,
1974 WL 7487 (Comp. Gen. Sep. 19, 1974) .................................................... 20, 21

Congressionally Mandated Reports,
https://www.govinfo.gov/app/collection/cmr ............................................................ 11

EEOC, *EEOC Coordination of Federal Government Equal Employment Opportunity*,
https://www.eeoc.gov/federal-sector/eeoc-coordination-federal-government-equal-
employment-opportunity ........................................................................................... 17

EEOC, *Formal Opinion Letters*,
https://www.eeoc.gov/formal-opinion-letters ............................................................ 20

EEOC, *Resolution Concerning the Commission's Authority to Commence or Intervene in
Litigation and the Commission's Interest in Information Concerning Appeals*,
https://www.eeoc.gov/resolution-concerning-commissions-authority-commence-or-intervene-
litigation-and-commissions-0 .................................................................................... 21

EEOC, *Strategic Enforcement Plan Fiscal Years 2024-2028*,
https://www.eeoc.gov/strategic-enforcement-plan-fiscal-years-2024-2028 ........................... 20

Resp. of Gwynne A. Wilcox in Opp'n to the Appl. for a Stay,
*Trump v. Wilcox*, No. 24A966, 2025 WL 1146413 (U.S. filed Apr. 15, 2025) ...................... 19

## INTRODUCTION

Plaintiff Joceyln Samuels's claim that President Donald J. Trump wrongfully removed her as a commissioner of the Equal Employment Opportunity Commission (EEOC) runs up against a number of formidable obstacles. Congress enacted no language in Title VII protecting EEOC commissioners from removal, *see* 42 U.S.C. § 2000e-4, and Article II of the Constitution empowers the President to remove principal officers who exercise substantial executive power, *see Seila Law LLC v. CFPB*, 591 U.S. 197, 218 (2020). Adding to her difficulties, at the end of the Supreme Court's recent term, the Court issued decisions holding that "Congress must use 'very clear and explicit language'" to restrict removal of an executive officer, *Kennedy v. Braidwood Mgmt., Inc.*, 145 S. Ct. 2427, 2448 (2025) (quoting *Shurtleff v. United States*, 189 U.S. 311, 315 (1903)), and that litigants cannot bring a nonstatutory ultra vires claim (as Plaintiff seeks to do here) without alleging that "an agency has taken action . . . contrary to a *specific prohibition* in a statute," *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681 (2025) (citation omitted). Plaintiff relies primarily on a series of recent district court decisions reinstating principal officers removed by President Trump. But every one of those decisions has been stayed by the Supreme Court or the D.C. Circuit. One of those stay rulings explained that the Supreme Court would "likely" conclude "that both the [National Labor Relations Board] and [Merit Systems Protection Board] exercise considerable executive power," *Trump v. Wilcox*, 145 S. Ct. 1415, 1415 (2025), two agencies that bear striking resemblance to the EEOC in authority and function.

Given these obstacles, it is no surprise that Plaintiff fails to state a claim. Plaintiff's arguments cannot change the fact that Title VII does not protect commissioners from at-will removal. If it did, the statute would violate Article II because the EEOC has substantial executive power to implement federal employment discrimination laws. And Plaintiff fails to meet the stringent requirements for a nonstatutory ultra vires claim. The Court should dismiss this lawsuit.

1

## ARGUMENT

I.    **Title VII Empowers the President to Remove EEOC Commissioners at Will**

A.    **Recent Case Law Confirms that the Court Should Not Read Atextual Removal Restrictions into Title VII**

Congress did not enact a textual restriction on removal of EEOC commissioners.  Plaintiff does not dispute this.  Instead, she asks this Court to imply a for-cause restriction that Congress did not include in statutory text.  *See* Mem. in Supp. of Defs.' Mot. to Dismiss Compl. 14-16, ECF No. 24-1 ("Mem."); Pl. Jocelyn Samuels's Opp'n to Defs.' Mot. to Dismiss Compl. 3, ECF No. 27 ("Opp'n") (arguing that removal restrictions should be "inferred").  Plaintiff criticizes Defendants for arguing "that if Congress had intended a removal limitation it would have said so in the statute."  Opp'n 17.  Yet this commonsense conclusion originates not from Defendants, but from the Supreme Court:  "When Congress wants to depart from the default of at-will removability and instead furnish for-cause protection, it knows how to do so," but the Court would not "read a for-cause removal restriction into a statute that does not explicitly provide for one."  *Braidwood*, 145 S. Ct. at 2448 (quoting *Shurtleff*, 189 U.S. at 315).  Recent decisions of the Supreme Court and the D.C. Circuit establish that a statute giving the President power to appoint an officer in an Executive Branch agency carries with it the incident power of at-will removal unless the statute contains a clear and explicit removal restriction.  Courts may not infer such removal restrictions that Congress did not explicitly enact into statutory text.

In *Collins v. Yellen*, 594 U.S. 220 (2021), the Supreme Court set forth the general rule that removal restrictions must be stated in plain language:  "[W]e generally presume that the President holds the power to remove at will executive officers and that a statute must contain 'plain language to take [that power] away.'"  *Id.* at 250 (quoting *Shurtleff*, 189 U.S. at 316).  In a footnote, *Collins* acknowledged that in *Wiener v. United States*, 357 U.S. 349 (1958), the Supreme Court inferred

removal restrictions for the judges on the War Claims Commission, a specialized temporary tribunal created to compensate victims of foreign enemies in World War II. *Collins*, 594 U.S. at 250 n.18. But *Collins* explained that this was based on the narrow rationale that "the War Claims Commission was an adjudicatory body" with "a unique need for 'absolute freedom from Executive interference.'" *Id.* (quoting *Wiener*, 357 U.S. at 353).

Earlier this year, in *Braidwood*, the Supreme Court underscored that removal restrictions must be explicit. *Braidwood* reaffirmed "that to 'take away' the power of at-will removal from an appointing officer, Congress must use 'very clear and explicit language.' '[M]ere inference or implication' does not suffice." 145 S. Ct. at 2448 (quoting *Shurtleff*, 189 U.S. at 315).

Plaintiff tries to distinguish *Braidwood* because it involved the authority of a principal officer (the Secretary of Health and Human Services) to remove an inferior officer (a member of the U.S. Preventive Services Task Force), rather than the President's authority to remove a presidential appointee, *see* Opp'n 20-21, but the Court's reasoning did not turn on that distinction. Instead, it generally discussed "the power of at-will removal" by "an appointing officer," and it relied on a case, *Shurtleff v. United States*, about the President's authority to remove a presidential appointee. *Braidwood*, 145 S. Ct. at 2448. If anything, the President's authority to remove a principal officer would be even greater. Plaintiff also argues that *Braidwood* is inapposite because "the Supreme Court did not even mention *Wiener*," which Plaintiff describes as "the leading case" for implying atextual removal restrictions in multi-member boards. Opp'n 21-22. However, the Supreme Court's omission of *Wiener* is damning to Plaintiff's position. The Supreme Court saw no need to mention *Wiener* because in *Collins*, the Supreme Court had already cabined *Wiener* to the narrow circumstance of a specialized tribunal with a "unique need for 'absolute freedom from Executive interference.'" *Collins*, 594 U.S. at 250 n.18 (quoting *Wiener*, 357 U.S. at 353).

*Braidwood* reaffirmed *Collins*'s holding, derived from *Shurtleff*, that the general rule is that removal restrictions must be explicitly stated.

Indeed, that is how a D.C. Circuit panel recently read *Collins* and *Braidwood*. *See LeBlanc v. U.S. Priv. & Civil Liberties Oversight Bd.*, No. 25-5197, 2025 WL 1840591 (D.C. Cir. July 1, 2025). In *LeBlanc*, the district court reinstated members of a board removed by the President, even though the statutory text contained no removal restriction, holding that the board's structure and function supported recognizing an implicit removal restriction. *See LeBlanc v. U.S. Priv. & Civil Liberties Oversight Bd.*, --- F. Supp. 3d. ---, 2025 WL 1454010, at *11-20 (D.D.C. May 21, 2025), *appeal filed*, No. 25-5197 (D.C. Cir. May 29, 2025). The D.C. Circuit stayed the district court's order reinstating the members, explaining that "a statute 'must use "very clear and explicit language"' to restrict the President's removal power." *LeBlanc*, 2025 WL 1840591, at *1 (quoting *Braidwood*, 145 S. Ct. at 2448). The panel further explained that the Supreme Court "has 'read a removal restriction into' the governing statute . . . *only for* officials serving on an 'adjudicatory body' with 'a unique need for "absolute freedom from Executive interference."'" *Id.* (quoting *Collins*, 594 U.S. at 250 n.18) (emphasis added). *LeBlanc* thus confirms that the requirement of explicit statutory language to restrict the President's removal power is the general rule, and *Wiener* represents a very narrow exception. Though *LeBlanc* was a panel order on a stay motion, the full D.C. Circuit denied en banc reconsideration, with no noted dissents, *see* Order, *LeBlanc v. U.S. Priv. & Civil Liberties Oversight Bd.*, No. 25-5197 (D.C. Cir. July 18, 2025), suggesting that the full D.C. Circuit had no concerns with the panel's explication of relevant law.

These recent decisions demonstrate that Title VII authorizes presidential removal of EEOC commissioners. Plaintiff does not and cannot contend that Title VII "use[s] 'very clear and explicit language'" "to 'take away' the power of at-will removal." *Braidwood*, 145 S. Ct. at 2448 (quoting

*Shurtleff*, 189 U.S. at 315). The EEOC is also not a strictly "adjudicatory body" with "a unique need for 'absolute freedom from Executive interference.'" *Collins*, 594 U.S. at 250 n.18 (quoting *Wiener*, 357 U.S. at 353). It is true that EEOC conducts adjudications, but it also conducts other core executive functions such as investigating and enforcing violations of law and promulgating regulations. *See generally* Mem. 4-11. The EEOC does not have "a unique need for 'absolute freedom from Executive interference.'" *Collins*, 594 U.S. at 250 n.18 (quoting *Wiener*, 357 U.S. at 353). Unlike the temporary War Claims Commission in *Wiener*, which Congress created to review a fixed set of claims and deliberately insulated from ongoing executive influence, the EEOC is a permanent agency whose functions are not strictly limited to adjudication and whose structure gives the President continuing authority to designate appointees. This ongoing presidential oversight is incompatible with the kind of absolute independence that the Court concluded justified an implied removal restriction in *Wiener*. Indeed, Plaintiff concedes that Title VII contains a variety of mechanisms that enable to the President to exercise significant influence over the EEOC, including designating the Chair, selecting the General Counsel, and nominating a new commissioner each year. Compl. ¶ 25, ECF No. 3.[1]

Plaintiff incorrectly argues that "*Wiener* controls" and supports implicit removal restrictions "for principal officers who exercise adjudicatory functions." Opp'n 22. But most executive agencies have some adjudicatory functions. For example, the Department of Justice conducts many adjudications in immigration matters, and the Attorney General has statutory authority to review the adjudications of Immigration Judges or the Board of Immigration Appeals.

---

[1] By contrast, the War Claims Commission was a temporary tribunal, such that the statute establishing it envisioned that the original members would continue to serve until the Commission wound up its affairs. *See Wiener*, 357 U.S. at 350 ("[t]his limit on the Commission's life was the mode by which the tenure of the Commissioners was defined").

8 U.S.C. § 1103(g)(2).  Yet no one would contend that courts should infer implied restrictions on the President's authority to remove the Attorney General.  Rather, *Wiener* is limited to its particular facts of a specialized tribunal designed by statute to have absolute independence from Executive Branch influence.

Plaintiff argues that *Severino v. Biden*, 71 F.4th 1038 (D.C. Cir. 2023), is "controlling authority" for the proposition that courts may infer atextual removal restrictions based on a nebulous structure and function test.  Opp'n 22 n.3.  But in *Severino*, the D.C. Circuit *refused* to infer a removal restriction, 71 F.4th at 1047-49, and held that "Congress must make it clear in a statute if it wishes to restrict the President's removal power," *id.* at 1044.  To the extent *Severino* discussed hypothetical scenarios in which it might be appropriate to infer removal restrictions, such musings are dicta.  But the D.C. Circuit has *never* held that any officer benefits from implied restrictions on presidential removal.  Not once.[2]  The recent decisions in *Collins*, *Braidwood*, and *LeBlanc* confirm that this Court should not do so here.

---

[2] Plaintiff cites (Opp'n 16) *FEC v. NRA Political Victory Fund*, 6 F.3d 821 (D.C. Cir. 1993), but in that case the court merely stated in passing that "[w]e think the [FEC] is likely correct" that FEC commissioners can only be removed for good cause, *id.* at 826.  Plaintiff also cites *Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 561 U.S. 477 (2010), but in that case, the Supreme Court merely noted the parties' agreement that SEC commissioners could be removed only for cause and "decide[d] the case with that understanding," *id.* at 487; *see also Jarkesy v. SEC*, 34 F.4th 446, 464 (5th Cir. 2022) (citing *Free Enterprise Fund* and operating under similar understanding that SEC commissioners could be removed only for cause), *aff'd on other grounds*, 603 U.S. 109 (2024).  Plaintiff also cited *Harper v. Bessent*, No. 25-01294 (AHA), 2025 WL 2049207 (D.D.C. July 22, 2025), which held that National Credit Union Administration members benefit from implied removal restrictions.  Yet as explained below, *see infra*, pp. 8-9, the reasoning in *Harper* is unpersuasive, and the ruling has already been administratively stayed by the D.C. Circuit.

**B.      The EEOC's Structure and Functions Do Not Support Removal Restrictions**

Even if this Court agreed with Plaintiff that it should consider the EEOC's structure and function in deciding whether to infer atextual removal restrictions, the EEOC's structure and function would not support doing so.

**1.**      As to structure, EEOC's status as a multimember board with staggered terms, partisan balance, and a holdover clause does not show that Congress intended to protect EEOC commissioners from removal.  Mem. 18-21.  Quite the opposite.  As Defendants showed and Plaintiff does not dispute, Congress frequently pairs such structural features with an explicit for-cause removal restriction, but also frequently enacts such structural features without a for-cause removal provision.  *Id.* at 19.  This pattern demonstrates that "[w]hen Congress wants to depart from the default of at-will removability and instead furnish for-cause protection, it knows how to do so." *Braidwood*, 145 S. Ct. at 2448.

Plaintiff's contrary arguments are unpersuasive.  Plaintiff argues that the partisan balance requirement, that "not more than three [EEOC commissioners] shall be members of the same political party," 42 U.S.C. § 2000e-4(a), "is incompatible with at-will removal."  Opp'n 16.  Not so.  Congress regularly creates boards with partisan balance requirements without enacting removal restrictions.  *See* Mem. 19 (collecting examples).  That makes perfect sense because they address distinct issues.  Removal restrictions address whether and under what condition the President can remove an existing member.  Partisan balance requirements address who is eligible to fill a vacancy.  Plaintiff further argues that the EEOC's "bipartisan nature could be obliterated" if the President had at-will removal authority.  Opp'n 17.  But nothing about the partisan balance provision requires the EEOC to have at least one Democrat and at least one Republican at all times.  It merely requires that no more than three commissioners serving at one time can be members of the same party.

Plaintiff also argues that staggered terms promote independence, and a holdover clause "is consistent with independence." *Id.* But the D.C. Circuit in *Severino* held that these same features did not imply for-cause removal restrictions. 71 F.4th at 1046, 1049. And Plaintiff has no response to the point that "[the Supreme Court] ha[s] explained many times before" that "[n]o statute pursues a single policy at all costs, and [courts] are not free to rewrite this statute (or any other) as if it did." *Advocate Christ Med. Ctr. v. Kennedy*, 145 S. Ct. 1262, 1274 (2025) (quoting *Bartenwerfer v. Buckley*, 598 U.S. 69, 81 (2023)); Mem. 20. Congress may well have determined that partisan balance, staggered terms, and a holdover clause were sufficient to confer the amount of independence on EEOC that Congress desired. This Court cannot and should not rewrite the statute to confer a greater degree of independence than Congress chose.

Finally, Plaintiff points to the district court's decision in *Harper*, 2025 WL 2049207, which looked to similar structural features to hold that members of the NCUA Board had implied removal protections. The government respectfully disagrees with the district court's ruling, which has already been administratively stayed by the D.C. Circuit. *See* Order, *Harper v. Bessent*, No. 25-5268 (D.C. Cir. July 25, 2025). *Harper* relied in part on legislative history unique to the NCUA, in which Congress removed language stating that the NCUA's leader served "at the pleasure of the President," after a President controversially removed an NCUA leader. 2025 WL 2049207, at *4 (citation omitted). Yet in concluding that "[t]he NCUA Board's structure accordingly indicates that Congress restricted the President's removal power," *id.* at *5, the court seemed to endorse a broad rule that all partisan balanced multimember boards with staggered terms have removal protections, regardless of whether or not Congress enacted such protections. That is fundamentally inconsistent with the Supreme Court's requirement that "Congress must use 'very clear and

explicit language'" to enact removal restrictions.  *Braidwood*, 145 S. Ct. at 2448 (quoting *Shurtleff*, 189 U.S. at 315).

**2.**      Likewise, the EEOC's functions do not support judicial insertion of an atextual removal restriction.  The EEOC's primary function of investigating and enforcing violations of federal employment discrimination statutes is executive.  Mem. 21-22.  The fact that the EEOC, like most agencies, exercises some of its authority through the familiar administrative mechanisms of rulemaking and adjudication does not change the fact that it is exercising executive power. Mem. 23; *Seila Law*, 591 U.S. at 216 n.2.

Plaintiff's contrary arguments are unavailing.  Plaintiff argues that the EEOC's function of "adjudicat[ing] certain federal sector employment cases where a federal agency is the defending party" "necessitates independence from the President."  Opp'n 19.  That argument would necessarily imply that members of the Merit Systems Protection Board ("MSPB") must have protection from removal, since the MSPB adjudicates claims under civil service laws by federal employees against the federal government.  *See* 5 U.S.C. § 1204.  Yet in *Trump v. Wilcox*, 145 S. Ct. 1415 (2025), the Supreme Court held that it would likely conclude that "the . . . MSPB exercise[s] considerable executive power," such that the explicit for-cause removal protections for MSPB members were unconstitutional.  *Id.* at 1415.  And unlike the MSPB, whose authority is limited to federal employees, the EEOC has significant authority to enforce the rights of private and even state and local government employees under federal statutes.  *See* Mem. 4-6.

Plaintiff also argues that EEOC commissioners must be protected from removal because the EEOC "serv[es] as a 'judicial aid' in the charge process," arguing that the steps that the EEOC takes in handling charges of discrimination up until filing civil litigation "mimic[] what judges do."  Opp'n 19 (citation omitted).  This argument fails on many levels.  In the charge process for

private employees, EEOC's pre-litigation functions are to "make an investigation" of a charge, 42

U.S.C. § 2000e-5(b), including by issuing subpoenas, *id.* §§ 2000e-8, 2000e-9; 29 U.S.C. § 161,

make a preliminary determination of whether "there is . . . reasonable cause to believe that the

charge is true," 42 U.S.C. § 2000e-5(b), and if so, "endeavor to eliminate any such alleged

unlawful employment practice by informal methods of conference, conciliation, and persuasion,"

*id.* Such functions bear no resemblance to the tasks of a judge, which are to adjudicate cases and

controversies that are filed in court. *See generally* U.S. Const. art. III. And the EEOC's power to

file civil enforcement actions to seek relief "against private parties on behalf of the United States

in federal court" is "a quintessentially executive power." *Seila Law*, 591 U.S. at 219. Plaintiff

also argues that commissioners must be protected from removal because the EEOC's conciliation

efforts can "substantially reduc[e] the number of discrimination claims that would otherwise have

to be handled in court." Opp'n 19. The same could be said about U.S. Attorneys, who substantially

reduce the number of criminal cases that go to trial by engaging in plea bargaining, yet they clearly

exercise substantial executive power and must be removable at will.

Plaintiff next argues that EEOC commissioners must have removal protections because

they perform purportedly "quasi-legislative functions" of prescribing rules and regulations and

submitting reports to Congress. *Id.* at 20. Yet the Supreme Court has explained that even though

agency rulemaking and adjudication "take 'legislative' and 'judicial' forms, . . . they are exercises

of—indeed, under our constitutional structure they *must be* exercises of—the 'executive Power.'"

*City of Arlington v. FCC*, 569 U.S. 290, 304 n.4 (2013) (quoting U.S. Const. art. II, § 1, cl. 1).

One need only look at the names of the titles of the Code of Federal Regulations (which include

the name of cabinet departments like "Agriculture," "Energy," "Labor," "Education," and

"Transportation") to ascertain that virtually all agencies promulgate regulations. *See* Code of

Federal Regulations, https://www.ecfr.gov (last visited Aug. 8, 2025). Similarly, Congress requires virtually all agencies to submit regular reports. *See generally* Congressionally Mandated Reports, https://www.govinfo.gov/app/collection/cmr (last visited Aug. 8, 2025) (collecting recent congressionally mandated reports, organized by agency). These are routine characteristics of nearly all Executive Branch agencies, not exceptional circumstances that justify upsetting "the background presumption that the President may remove anyone he appoints." *Severino*, 71 F.4th at 1044.

Nothing about the EEOC's functions make it "operationally incompatible with at-will Presidential removal." *Id.* at 1047. The EEOC is fundamentally a civil law enforcement agency that investigates and enforces violations of federal statutes. Plaintiff again cites *Harper*, which held that the NCUA must have implied removal restrictions because it exercises purportedly "quasi-judicial" functions of "conducting formal administrative proceedings" and purportedly "quasi-legislative" functions of "prescrib[ing] rules and regulations" and "submit[ting] a yearly report to Congress and the President summarizing the operations of the NCUA." 2025 WL 2049207, at *6. But virtually all federal agencies conduct adjudications, promulgate rules, and issue reports to Congress. The argument that these functions necessitate recognizing an implied removal restriction cannot be squared with the general rule that "a statute must contain 'plain language to take . . . away'" the President's "power to remove at will executive officers." *Collins*, 594 U.S. at 250 (quoting *Shurtleff*, 189 U.S. at 316).[3]

---

[3] The constitutional avoidance canon further supports reading Title VII in accordance with its plain terms, rather than inserting an atextual removal provision, which would avoid the constitutional question of whether such a provision would be constitutional. Mem. 24. Plaintiff argues that the Court must apply a structure and function test to determine whether it should imply a removal restriction. Opp'n 22 n.3. But if the Court thinks the statutory question is at all close, such that "the text fairly admits" of the government's construction, *Jud. Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 226 (D.C. Cir. 2013) (citation omitted), the Court can and should apply the

*    *    *

The bottom line is this: the default rule is that the appointing officer can remove the appointee, especially when the appointer is the President.  If Congress wants to deviate from this rule, it must be explicit.  In the wake of *Humphrey's Executor*, Congress knew how to enact express for cause removal provisions, as it did for the FTC.  Yet years later, Congress was silent on the removal of EEOC commissioners in Title VII.  As both the Supreme Court and D.C. Circuit have recently and repeatedly confirmed, that means the President can remove EEOC commissioners at will.  So Samuels's claim is doomed.

## II.    For-Cause Removal Restrictions on EEOC Commissioners Would Violate Article II

### A.    Plaintiff Erroneously Disregards Appellate Decisions Staying Many of the Authorities on Which She Principally Relies

Because the EEOC exercises considerable executive power, if Congress had enacted a for-cause removal provision for EEOC commissioners, it would violate Article II.  *See* Mem. 24-32. Before addressing Plaintiff's contrary arguments in detail, it is helpful to consider the most recent developments in the prevailing legal landscape.  The Supreme Court stayed a ruling reinstating removed members of the Merit Systems Protection Board (MSPB) and National Labor Relations Board (NLRB), holding that the government was likely to succeed because it was "likely to show that both the NLRB and MSPB exercise considerable executive power."  *Wilcox*, 145 S. Ct. at 1415.  The Supreme Court also stayed a ruling reinstating removed commissioners of the Consumer Product Safety Commission (CPSC), explaining that the matter was "squarely controlled" by *Wilcox*, because the CPSC "exercises executive power in a similar manner as the [NLRB]."  *Trump v. Boyle*, 606 U.S. ----, 2025 WL 2056889 (July 23, 2025).  Though interim

---

avoidance canon to adopt that construction and avoid a constitutional question about the President's Article II removal authority.

decisions, the Supreme Court made clear that "they inform how a court should exercise its equitable discretion in like cases." *Id.*

In light of these rulings, the Supreme Court would likely hold that the EEOC similarly exercises considerable executive power, such that removal protections would violate Article II. That is particularly the case because in adjudicating employment claims of federal employees and enforcing laws regulating private employment relationships, the EEOC exercises executive power in a manner very similar to the MSPB and NLRB. *See* Mem. 30-32.[4]  Indeed, the EEOC is far more similar to the MSPB and NLRB in authority and function than is the CPSC, which regulates the safety of consumer products, *see generally* 15 U.S.C. §§ 2051-2090, yet the Supreme Court considered the CPSC to be similar enough for *Boyle* to be controlled by *Wilcox*.  The Court should accordingly approach with great skepticism Plaintiff's contention that the Constitution would permit protecting EEOC commissioners from at-will removal.

Plaintiff relies extensively on a series of district court decisions reinstating principal officers removed by President Trump.[5]  Plaintiff designates most of these rulings as authorities on which she principally relies with an asterisk in her Table of Authorities.  Yet every single one has been stayed by the Supreme Court or the D.C. Circuit.  *See Wilcox*, 145 S. Ct. 1415 (staying orders reinstating members of MSPB and NLRB); *Boyle*, 2025 WL 2056889 (staying order reinstating

---

[4] Plaintiff does not dispute that "the EEOC is like the NLRB and MSPB in certain respects."  Opp'n 25 n.4.  Plaintiff states that a different result may be appropriate for the EEOC because "many of the EEOC's functions differ from those of the NLRB and MSPB," *id.*, but Plaintiff does not say what those differences are or explain why they are constitutionally significant.

[5] *See* Opp'n 2 (citing *Harris v. Bessent*, 775 F. Supp. 3d 164 (D.D.C. 2025); *Wilcox v. Trump*, 775 F. Supp. 3d 215 (D.D.C. 2025); *Grundmann v. Trump*, 770 F. Supp. 3d 166 (D.D.C. 2025); *LeBlanc v. U.S. Priv. & Civil Liberties Oversight Bd.*, --- F. Supp. 3d ----, 2025 WL 1454010 (D.D.C. May 21, 2025); *Boyle v. Trump*, --- F. Supp. 3d ----, 2025 WL 1677099 (D. Md. June 13, 2025); *Slaughter v. Trump*, --- F. Supp. 3d ----, 2025 WL 1984396 (D.D.C. July 17, 2025); *Harper v. Bessent*, No. 25-01294 (AHA), 2025 WL 2049207 (D.D.C. July 22, 2025)).

members of CPSC); *Grundmann v. Trump*, No. 25-5165, 2025 WL 1840641 (D.C. Cir. July 3, 2025) (staying order reinstating removed member of the Federal Labor Relations Authority); *LeBlanc*, 2025 WL 1840591 (staying order reinstating removed members of PCLOB); *cf.* Order, *Slaughter v. Trump*, No. 25-5261 (D.C. Cir. July 21, 2025) (administratively staying order reinstating removed commissioner of Federal Trade Commission); Order, *Harper v. Bessent*, No. 25-5268 (D.C. Cir. July 25, 2025) (administratively staying order reinstating removed members of NCUA Board).  In all of these cases except *Slaughter* and *Harper* (where the D.C. Circuit has entered an administrative stay and is currently considering whether to enter a longer stay), the Supreme Court or D.C. Circuit has issued an opinion explaining that the government was likely to succeed on the merits.

Plaintiff's approach would have this Court disregard that weight of recent authority in "like cases."  *See Boyle*, 2025 WL 2056889.  Plaintiff instead ignores some of these stay decisions and tries to dismiss others in footnotes.  *See* Opp'n 15 nn.1, 2, 25 n.4 (addressing *Wilcox* and *Boyle*). But these stay decisions should play a significant role in how the Court views this case.  *See Boyle*, 2025 WL 2056889.  Plaintiff's arguments depend on giving the broadest possible reading to *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), and *Wiener*.  Yet these stay rulings build on the Supreme Court's rulings in *Seila Law*, 591 U.S. at 215-19, and *Collins*, 594 U.S. at 250-53, to signify that *Humphrey's Executor* and *Wiener* should be given a narrow application. *See*, *e.g.*, *Wilcox*, 145 S. Ct. at 1415 (only "narrow exceptions" exist to the rule that the President "may remove without cause executive officers who exercise [executive] power on his behalf"); *LeBlanc*, 2025 WL 1840591, at *1 (*Humphrey's Executor* represents a "narrow exception" to the rule that principal officers "must serve at the President's pleasure," and *Wiener* supports implied removal restrictions "only for officials serving on an 'adjudicatory body' with 'a unique need for

14

absolute freedom from Executive interference'" (citation omitted)).  Plaintiff asks this Court to rely heavily on district court decisions against the government rather than appellate rulings staying those district court decisions.  But "this Court would have to blind itself to [the Supreme Court and D.C. Circuit stay decisions] to assign the weight to [the district court cases reinstating principal officers] that [Plaintiff] urges." *Perlmutter v. Blanche*, No. 1:25-cv-1659-TJK, 2025 WL 2159197, at *5 (D.D.C. July 30, 2025), *appeal filed*, No. 25-5285 (D.C. Cir. Aug. 5, 2025).  This Court should not blind itself in such a manner.

### B.    The EEOC Exercises Considerable Executive Power

**1.**    Plaintiff does not dispute the accuracy of Defendants' explication of the EEOC's authorities.  Among other things, the EEOC implements statutes protecting most private and public sector employees from discrimination on a variety of bases; it has authority to investigate claims of discrimination by private employees and bring civil enforcement actions; it adjudicates claims of discrimination against federal employees and can issue binding orders for other federal agencies to hire or reinstate employees or change their general employment practices; and it regularly exercises these powers, handling tens of thousands of claims per year in a way that results in hundreds of millions of dollars of relief per year for affected employees.  *See* Mem. 4-11, 27-29.

Plaintiff struggles in vain to explain why this does not constitute the exercise of considerable executive power.[6]  Plaintiff first argues that the EEOC has a similar structure to the 1935 FTC whose removal restrictions were upheld in *Humphrey's Executor*, in that it is a multi-member commission with partisan balance and staggered terms.  Opp'n 23-25.  That may be true,

---

[6] The Supreme Court has variously used the phrases "any executive power," *Seila Law*, 591 U.S. at 216, "substantial executive power," *id.* at 218, and "considerable executive power," *Wilcox*, 145 S. Ct. at 1415, in describing the limits of the *Humphrey's Executor* exception.  The Court need not determine the precise limits of the exception in this case because the EEOC's significant executive power easily exceeds any of these possible standards.

but the *Humphrey's Executor* exception does not extend to "multimember expert agencies" if they "wield substantial executive power." *Seila Law*, 591 U.S. at 218. That is why, in *Wilcox*, the Supreme Court concluded that removal protections were likely unconstitutional for the NLRB and MSPB, even though both are structured as multimember commissions with partisan balance, because the Court was likely to conclude that both agencies "exercise considerable executive power." *Wilcox*, 145 S. Ct. at 1415. The same is true for the EEOC.

      **2.** Plaintiff next argues that the EEOC's authority to adjudicate federal employee discrimination claims is merely "quasi-judicial" and not executive. Opp'n 25-26. Plaintiff compares the EEOC to the MSPB, a body whose primary function is adjudicating federal employee claims under civil service laws, and Plaintiff cites the *dissenting* opinion of a D.C. Circuit judge who argued that the MSPB's adjudicatory function did not constitute executive power. *Id.* at 26 (citing *Harris v. Bessent*, No. 25-5037, 2025 WL 980278, at *30 (D.C. Cir. Mar. 28, 2025) (Millett, J., dissenting), *vacated on reconsideration en banc*, 2025 WL 1021435 (D.C. Cir. Apr. 7, 2025)). But the Supreme Court disagreed, explaining that it was "likely" to conclude that the "MSPB exercise[s] considerable executive power." *Wilcox*, 145 S. Ct. at 1415. That is unsurprising, given that in *Seila Law*, the Supreme Court viewed the authority to "issue final decisions awarding legal and equitable relief in administrative adjudications" to be an important executive power. 591 U.S. at 219. Thus, while Plaintiff is correct that the EEOC's authority to adjudicate federal employee claims is similar to the MSPB's, that comparison cuts against her position.

      Plaintiff wrongly discounts the EEOC's authority to issue binding orders in federal employee cases, focusing on the fact that lawsuits to enforce the EEOC's orders must be filed by the complainant, rather than the EEOC. Opp'n 26. But the EEOC has statutory authority "to enforce" the statutory prohibition on unlawful discrimination in federal employment "through

16

appropriate remedies, including reinstatement or hiring of employees with or without back pay" and has authority to "issue such rules, regulations, orders and instructions" to implement that authority.  42 U.S.C. § 2000e-16(b).  It can order intrusive relief such as ordering the agency to take "corrective, curative or preventive action" to ensure that the agency does not discriminate in a similar way in the future.  29 C.F.R. § 1614.501(a)(2).  Its orders awarding relief for federal employee discrimination claims are "mandatory and binding on the agency," and "subject to judicial enforcement."  *Id.* § 1614.502(a).  The fact that such judicial enforcement is pursued by the aggrieved complainant, rather than the EEOC itself, *id.* § 1614.503(g), does not detract from the EEOC's significant authority to issue binding orders on other federal agencies.

Plaintiff similarly minimizes the EEOC's authority to set employment discrimination policy for the entire Executive Branch, describing the EEOC has having "an advisory role to federal agencies to assist them in complying with equal employment opportunity laws."  Opp'n 33.  But the EEOC annually "review[s]" and decides whether to "approv[e]" plans that each agency "shall submit" to comply with equal opportunity laws, and agency heads "shall comply with such rules, regulations, orders, and instructions" of the EEOC.  42 U.S.C. § 2000e-16(b).  As the EEOC describes it, it "has responsibility for enforcing all Federal [equal employment opportunity] laws and the duty to coordinate and lead the Federal government's effort to eradicate workplace discrimination."  EEOC, *EEOC Coordination of Federal Government Equal Employment Opportunity*,  https://www.eeoc.gov/federal-sector/eeoc-coordination-federal-government-equal-employment-opportunity (last visited Aug. 8, 2025).  This significant authority over internal management of the Executive Branch alone constitutes considerable executive power.

**3.**    Plaintiff next argues that the EEOC's authority to investigate charges of discrimination in private sector cases, pursue conciliation and mediation, and file civil enforcement

actions are quasi-judicial, or in any event constitute no more executive power than was considered insubstantial in *Humphrey's Executor*. Opp'n 27-29. That position cannot be squared with *Seila Law*, which held that an agency's "enforcement authority" to "seek daunting" relief "against private parties on behalf of the United States in federal court" was "a quintessentially executive power not considered in *Humphrey's Executor*." 591 U.S. at 219; *accord Collins*, 594 U.S. at 230 (considering the Federal Housing Finance Agency's "broad investigative and enforcement authority to ensure compliance with [statutory] standards" as an important executive power).[7] Furthermore, Plaintiff's argument that the EEOC possesses no greater authority than the 1935 FTC in *Humphrey's Executor* fails for two reasons. First, the 1935 FTC's litigation authority was limited to seeking enforcement of orders to cease and desist unfair methods of competition. *See Humphrey's Executor*, 295 U.S. at 620-21. By contrast, the EEOC has far broader authority to seek compensatory and punitive damages and preliminary or permanent injunctive relief, including reinstatement or hiring of employees with back pay. *See* 42 U.S.C. § 2000e-5(g)(1); *id.* § 1981a(a). Second, in reading *Humphrey's Executor*, "what matters is the set of powers the Court considered as the basis for its decision, not any latent powers that the agency may have had not alluded to by the Court." *Seila Law*, 591 U.S. at 219 n.4. "Rightly or wrongly, the [*Humphrey's Executor*] Court viewed the FTC (as it existed in 1935) as exercising 'no part of the executive

---

[7] Plaintiff questions why it is significant that the EEOC has litigation authority to send its own lawyers into court. Opp'n 31. But the Supreme Court has long recognized that "conducting civil litigation in the courts of the United States for vindicating public rights" must be discharged "only by" executive branch officers under Article II. *Buckley v. Valeo*, 424 U.S. 1, 140 (1976). Recognizing the importance of litigation authority to the exercise of executive power, Congress generally centralized the government's litigation authority in "the Department of Justice, under the direction of the Attorney General." 28 U.S.C. § 516. The EEOC's authority to send its own lawyers into court, including federal appellate courts, to set forth the position of the United States concerning matters within the EEOC's purview accordingly constitutes significant executive power.

power.'" *Id.* at 215 (quoting *Humphrey's Executor*, 295 U.S. at 628). Plaintiff cannot expand the reach of *Humphrey's Executor* by arguing that the 1935 FTC in fact exercised greater power than the *Humphrey's Executor* court appreciated.

      **4.**     Plaintiff also argues that removal protection for commissioners is permissible because any executive power possessed by the EEOC is exercised by the Chair and General Counsel, not the commissioners. Opp'n 3, 29-30. The Supreme Court rejected such an approach in *Wilcox*. Like the EEOC, the MSPB has a Chair, designated by the President, who serves as the body's chief executive and administrative officer. *Compare* 5 U.S.C. § 1203(a), *with* 42 U.S.C. § 2000e-4(a). In opposing a stay of the injunction reinstating her, former MSPB member Cathy Harris argued that "the President may designate the [MSPB's] chairman, affording him a measure of control over the Board." Cathy A. Harris's Opp'n to Appl. for a Stay Pending Appeal and for an Administrative Stay, *Bessent v. Harris*, No. 24A966, 2025 WL 1127728, at *14 (U.S. filed Apr. 15, 2025). Like the EEOC, the NLRB has a General Counsel, removable by the President, who is charged with litigating on the agency's behalf. *Compare* 29 U.S.C. § 153(d), *with* 42 U.S.C. § 2000e-4(b). In opposing a stay, former NLRB member Gwynne Wilcox argued that this structure supported upholding removal restrictions on NLRB members. Resp. of Gwynne A. Wilcox in Opp'n to the Appl. for a Stay, *Trump v. Wilcox*, No. 24A966, 2025 WL 1146413, at *6-9, *31 (U.S. filed Apr. 15, 2025). Yet the Supreme Court granted the stay by focusing on the powers of the NLRB and MSPB as a whole, explaining that "[t]he stay reflects our judgment that the Government is likely to show that *both the NLRB and MSPB* exercise considerable executive power," *Wilcox*, 145 S. Ct. at 1415 (emphasis added), rather than parsing how authority is divided within the NLRB and MSPB.

In any event, Plaintiff understates the authority of EEOC commissioners vis-à-vis the Chair and General Counsel. Every significant regulatory action is decided by majority vote of the commissioners, including but not limited to promulgating regulations,[8] issuing significant guidance,[9] issuing opinion letters,[10] approving significant expenditures,[11] establishing new field offices or changing the coverage of existing field offices,[12] and issuing a Strategic Enforcement Plan.[13] The Chair is "responsible *on behalf of the Commission* for the administrative operations of the Commission," 42 U.S.C. § 2000e-4(a) (emphasis added), and as such, exercises her

---

[8] *See*, *e.g.*, 42 U.S.C. § 2000e-12(a) ("[t]he Commission shall have authority from time to time to issue, amend, or rescind suitable procedural regulations to carry out the provisions of" Title VII); 29 U.S.C. § 628 ("the Equal Employment Opportunity Commission may issue such rules and regulations as it may consider necessary or appropriate for carrying out" the ADEA).

[9] *See*, *e.g.*, 42 U.S.C. § 2000e-4(g)(3) ("[t]he Commission shall have power . . . to furnish to persons subject to this subchapter such technical assistance as they may request to further their compliance with this subchapter or an order issued thereunder"); 29 C.F.R. § 1695.2(d) ("If the guidance document sets forth the Commission's position on a legal principle for the first time or changes the Commission's legal position on any issue, the Commission must approve the guidance document by majority vote. Any significant guidance or guidance that is otherwise subject to notice and comment procedures must be approved by a Commission vote.").

[10] *See*, *e.g.*, 42 U.S.C. § 2000e-12(b) (providing defense to liability for good faith reliance "on any written interpretation or opinion of the Commission"); EEOC, *Formal Opinion Letters*, https://www.eeoc.gov/formal-opinion-letters (last visited Aug. 11, 2025) ("A formal opinion letter is approved by a vote of the Commission and is signed by the Commission's Legal Counsel on behalf of and as approved by the Commission.").

[11] *See*, *e.g.*, Comptroller General Decision B-167015, 1974 WL 7487, at *10 (Comp. Gen. Sep. 19, 1974) ("the full Commission has authority to establish reasonable standards to govern contracts and other uses of funds, including requirements for Commission approval of transactions of a certain nature or amount").

[12] *See*, *e.g.*, 42 U.S.C. § 2000e-4(f) ("The Commission may establish such regional or State offices as it deems necessary . . . ."); Comptroller General Decision B-167015, 1974 WL 7487, at *8.

[13] *See*, *e.g.*, EEOC, *Strategic Enforcement Plan Fiscal Years 2024-2028*, https://www.eeoc.gov/strategic-enforcement-plan-fiscal-years-2024-2028 (last visited Aug. 11, 2025) ("This Strategic Enforcement Plan was approved by the Commission on September 18, 2023, by a 3-2 vote. Modification requires a vote of the Commission.").

administrative authority to advance the policies of the Commission as determined by regulatory actions of the Commission decided by majority vote.[14]

The Commission likewise has authority to "prescribe" the "duties" of the General Counsel. 42 U.S.C. § 2000e-4(b)(1).  Although the General Counsel is "responsib[le] for the conduct of litigation" under Title VII, *id.*, the statute empowers "the Commission" to "bring a civil action" to enforce Title VII, *id.* § 2000e-5(f)(1).  The EEOC has therefore determined that a majority of the Commission must vote to approve certain significant litigation matters, while delegating to the General Counsel the authority to initiate other litigation.[15]  Plaintiff is therefore wrong to contend that the EEOC's executive functions "are performed primarily by the Chair of the Commission and its General Counsel," Opp'n 3, such that the commissioners play no role in such functions.

**5.**     Plaintiff argues that the EEOC's authority to promulgate binding regulations is "quasi-legislative," not executive.  Opp'n 31-33.  But in *Seila Law*, the Supreme Court concluded that "rulemaking . . . authority," or the authority to "issue final regulations," 591 U.S. at 203, 225, constituted significant executive power.   That is because "even though the activities of administrative agencies 'take "legislative" and "judicial" forms,' 'they are exercises of—indeed, under our constitutional structure they *must be* exercises of—the "executive Power."'"  *Id.* at 216 n.2 (quoting *Arlington*, 569 U.S. at 304 n.4).[16]  Plaintiff disputes the notion that promulgating

---

[14] *See*, *e.g.*, Comptroller General Decision B-167015, 1974 WL 7487, at *2 ("Where the Commission has set the policy in a particular matter designed to implement most effectively the principles of the Title VII (of the Civil Rights Act), it is the Chairman's responsibility through the staff of the Commission to use the special skills and expertise of the staff to see that these aims are properly carried out.").

[15] *See* EEOC, *Resolution Concerning the Commission's Authority to Commence or Intervene in Litigation and the Commission's Interest in Information Concerning Appeals*, https://www.eeoc.gov/resolution-concerning-commissions-authority-commence-or-intervene-litigation-and-commissions-0 (last visited Aug. 11, 2025).

[16] Plaintiff discounts *Arlington* because it was a case about whether to grant deference to an agency interpretation, not whether removal restrictions were constitutional.  Opp'n 34-35.  But in *Seila*

binding regulations is executive power, citing the district court's decision in *Wilcox*, which reinstated a removed member of the NLRB. *See* Opp'n 35 (citing *Wilcox*, 775 F. Supp. 3d at 228 n.11). But the Supreme Court stayed that ruling, concluding that it was "likely" to conclude that "the NLRB . . . exercise[s] considerable executive power." *Wilcox*, 145 S. Ct. at 1415. That Plaintiff urges this Court to follow a district court decision rather than the Supreme Court ruling staying that decision perfectly encapsulates how out of step Plaintiff's arguments are with current Supreme Court doctrine.

## III.    Plaintiff Cannot Bring an Ultra Vires Cause of Action

Title VII did not confer a cause of action on Plaintiff to challenge her removal, and Plaintiff does not contend otherwise. Mem. 32; Opp'n 35-36. The Supreme Court's recent ruling in *Nuclear Regulatory Commission v. Texas*, 605 U.S. 665 (2025), establishes that Plaintiff cannot bring a nonstatutory ultra vires cause of action. Mem. 32-33. Plaintiff attempts to distinguish *Nuclear Regulatory Commission v. Texas*, noting that the ultra vires claim failed in part because the plaintiffs "had an alternative path to judicial review." 605 U.S. at 682. But the Supreme Court did not hold that a party could bring an ultra vires claim whenever there is no alternative path to judicial review. To the contrary, it held that ultra vires review (1) "applies only when an agency has taken action entirely 'in excess of its delegated powers and contrary to a *specific prohibition*' in a statute," *id.* at 681 (quoting *Bhd. of Ry. & Steamship Clerks v. Ass'n for Benefit of Non-Contract Emps.*, 380 U.S. 650, 660 (1965)), and (2) "[u]ltra vires review is also unavailable if . . . a statutory review scheme provides aggrieved persons 'with a meaningful and adequate

---

*Law*, a removal case, the Supreme Court endorsed *Arlington*'s articulation of executive power, and pointed to the CFPB's rulemaking and adjudicative authorities as prime examples of the agency's executive power. *See Seila Law*, 591 U.S. at 216 n.2, 219, 225.

opportunity for judicial review,'" *id.* (quoting *Bd. of Governors of Fed. Rsrv. Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991)).  Either circumstance dooms an ultra vires claim.

Plaintiff has no response to the point that she could not have suffered from an action contrary to a specific prohibition in a statute, Mem. 33, where the gravamen of her claim is that the Court should infer a prohibition on removal that is not contained in statutory text.  Plaintiff cites a series of recent district court decisions that have approved ultra vires claims by those challenging their removal as principal officers.  Opp'n 36.  But some of those rulings predate *Nuclear Regulatory Commission v. Texas*, and again, all of them have been stayed by higher courts. Because she does not challenge an action that violates a specific statutory prohibition, her ultra vires "Hail Mary pass" fails.  *Nuclear Regul. Comm'n*, 605 U.S. at 681 (quoting *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009)).

## CONCLUSION

For the foregoing reasons and the reasons stated in Defendants' opening Memorandum, the Court should grant this Motion and dismiss the Complaint for failure to state a claim.

Dated:  August 11, 2025                    Respectfully Submitted,


                                           BRETT A. SHUMATE
                                           Assistant Attorney General
                                           Civil Division

                                           ERIC J. HAMILTON
                                           Deputy Assistant Attorney General
                                           Federal Programs Branch

                                           TIBERIUS DAVIS
                                           Counsel to the Assistant Attorney General
                                           Civil Division

                                           CHRISTOPHER R. HALL
                                           Assistant Director, Federal Programs Branch

                                           */s/ Jeremy S.B. Newman*
                                           JEREMY S.B. NEWMAN
                                           Trial Attorney
                                           United States Department of Justice
                                           Civil Division, Federal Programs Branch
                                           1100 L Street, N.W.
                                           Washington, DC 20005
                                           Tel: (202) 532-3114
                                           Fax: (202) 616-8470
                                           Email: jeremy.s.newman@usdoj.gov

                                           *Attorneys for Defendants*